# Exhibit C
# (All Other Superior Court Documents)

Includes—
Civil Actions Branch Information Sheet, Initial Order, Notice to Court (and Ex. 1 to Pls.'
Compl.), Summonses, Affs. of Service, and Initial Hearing Notices

# Superior Court of the District of Columbia

CIVIL DIVISION - CIVIL ACTIONS BRANCH

INFORMATION SHEET

| | |
|---|---|
| Marquez Antonio Jackson, et al. | Case Number: 2025-CAB-000601 |
| Plaintiff(s) | |
| vs | Date: January 31, 2025 |
| District of Columbia, et al. | ☑ One of the defendants is being sued |
| Defendant(s) | in their official capacity. |

| Name: *(Please Print)* | Relationship to Lawsuit |
|---|---|
| Kristen M. Mack | ☑ Attorney for Plaintiff |
| Firm Name: | ☐ Self (Pro Se) |
| Hansel Law, PC | ☐ Other: _____ |
| Telephone No.: (301) 461-1040    DC Bar No.: 90008006 | |

TYPE OF CASE:  ☐ Non-Jury   ☑ 6 Person Jury   ☐ 12 Person Jury

Demand: $_____   Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____   Judge: _____   Calendar #: _____

Case No.: _____   Judge: _____   Calendar #: _____

---

NATURE OF SUIT:   *(Check One Box Only)*

**CONTRACT**
- ☐ Breach of Contract
- ☐ Breach of Warranty
- ☐ Condo/Homeowner Assn. Fees
- ☐ Contract Enforcement
- ☐ Negotiable Instrument

**COLLECTION/INS. SUB**
- ☐ Debt Collection
- ☐ Insurance Subrogation
- ☐ Motion/Application for Judgment by Confession
- ☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
- ☐ Breach of Contract
- ☐ Discrimination
- ☐ Wage Claim
- ☐ Whistle Blower
- ☐ Wrongful Termination

---

**REAL PROPERTY**
- ☐ Condo/Homeowner Assn. Foreclosure
- ☐ Declaratory Judgment
- ☐ Drug Related Nuisance Abatement
- ☐ Ejectment
- ☐ Eminent Domain
- ☐ Interpleader
- ☐ Other
- ☐ Quiet Title
- ☐ Specific Performance

- ☐ **FRIENDLY SUIT**
- ☐ **HOUSING CODE REGULATIONS**
- ☐ **QUI TAM**
- ☐ **STRUCTURED SETTLEMENTS**

---

**ADMINISTRATIVE PROCEEDINGS**
- ☐ Administrative Search Warrant
- ☐ App. for Entry of Jgt. Defaulted Compensation Benefits
- ☐ Enter Administrative Order as Judgment
- ☐ Libel of Information
- ☐ Master Meter
- ☐ Petition Other

- ☐ Release Mechanics Lien
- ☐ Request for Subpoena

**MALPRACTICE**
- ☐ Medical – Other
- ☐ Wrongful Death

**AGENCY APPEAL**
- ☐ Dangerous Animal Determination
- ☐ DCPS Residency Appeal
- ☐ Merit Personnel Act (OEA)
- ☐ Merit Personnel Act (OHR)
- ☐ Other Agency Appeal

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

# Information Sheet, Continued

**CIVIL ASSET FORFEITURE**
- ☐ Currency
- ☐ Other
- ☐ Real Property
- ☐ Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**
- ☐ Birth Certificate Amendment
- ☐ Death Certificate Amendment
- ☐ Gender Amendment
- ☐ Name Change

**TORT**
- ☐ Abuse of Process
- ☐ Assault/Battery
- ☐ Conversion
- ☐ False Arrest/Malicious Prosecution
- ☐ Libel/Slander/Defamation
- ☐ Personal Injury
- ☐ Toxic Mass
- ☑ Wrongful Death (Non-Medical Malpractice)

**GENERAL CIVIL**
- ☐ Accounting
- ☐ Deceit (Misrepresentation)
- ☐ Fraud
- ☐ Invasion of Privacy
- ☐ Lead Paint
- ☐ Legal Malpractice
- ☐ Motion/Application Regarding Arbitration Award
- ☐ Other - General Civil

- ☐ Product Liability
- ☐ Request for Liquidation
- ☐ Writ of Replevin
- ☐ Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**
- ☐ Asbestos

**MORTGAGE FORECLOSURE**
- ☐ Non-Residential
- ☐ Residential

**STATUTORY CLAIM**
- ☐ Anti – SLAPP
- ☐ Consumer Protection Act
- ☐ Exploitation of Vulnerable Adult
- ☐ Freedom of Information Act (FOIA)
- ☐ Other

**TAX SALE FORECLOSURE**
- ☐ Tax Sale Annual
- ☐ Tax Sale Bid Off

**VEHICLE**
- ☐ Personal Injury
- ☐ Property Damage

☐ **TRAFFIC ADJUDICATION APPEAL**

☐ **REQUEST FOR FOREIGN JUDGMENT**

January 31, 2025

_____          _____
Filer/Attorney's Signature                    Date

**Superior Court of the District of Columbia**
**Civil Division - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**

**202-879-1133 | www.dccourts.gov**

**Case Number:** 2025-CAB-000601

**Case Style:** Marquez Antonio Parker et al. v. District of Columbia et al.

### INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 05/16/2025 | 9:30 AM | Remote Courtroom 219 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Ebony M Scott. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated above, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order.  Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Milton C. Lee, Jr.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) When you are ready, click "Join Meeting".

3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.

**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

2) Enter the Webex Meeting ID listed above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here
   https://www.webex.com/learn/best-practices.html.

2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.

3) For case questions, call the Civil Actions Branch Clerk's Office at 202-879-1133.

4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩን የጽሀፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ፦

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ፦

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

   Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.
- You can also find the list of legal services providers at www.dccourts.gov/services/represent-yourself by clicking on the link that says, "List of Legal Service Providers for Those Seeking an Attorney or Legal Advice".
- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.
- Witnesses: tell the judge if you want a witness to testify at your hearing.
- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.

## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

   Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.
- You can also find the list of legal services providers at www.dccourts.gov/services/represent-yourself by clicking on the link that says, "List of Legal Service

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## Tips for the Hearing

- Join the hearing a few minutes early!
- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.
- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.
- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).
- Speak slowly and clearly so everyone hears what you are saying.
- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.
- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.
- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.
- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.
- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them

Advice".

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

know that you are having technical issues.

## Special Tips for Video Hearings
### (Click here for more information)

- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.



The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**



**The remote site locations are:**



If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**.  If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.

2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.

3. Materials for notetaking, including pen and paper.

**\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call:  **202-879-1900**
Email:  DCCourtsRemoteSites@dcsc.gov



Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de **lunes a viernes, de 8:30 am a 4:00 pm**.

**Los centros de acceso remoto son:**



Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto.** Si necesita adaptaciones especiales, como un intérprete para la audiencia, llame

**al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

eFiled
2/4/2025 3:31:13 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

**MARQUEZ ANTONIO JACKSON**, *et al.*,

  *Plaintiffs*,

 v.

**DISTRICT OF COLUMBIA**, *et al.*

  *Defendants*.

Case No. 2025-CAB-000601

## NOTICE TO COURT (PRAECIPE)
## ATTACHING EXHIBIT 1 TO PLAINTIFFS' COMPLAINT

Dear Clerk:

   The Envelope size limitations for Electronic Filing prevented Plaintiffs from being able to attach Exhibit 1 to Plaintiffs' Complaint at the time of filing. As such, please find Exhibit 1 to Plaintiffs' Complaint attached hereto.

      Respectfully submitted,

      HANSEL LAW, P.C.

      */s/ Kristen Mack*

      Cary J. Hansel (Bar. No. 465242)
      Kristen M. Mack (Bar. No. 90008006)
      2514 North Charles Street
      Baltimore, MD 21218
      Tel: (301) 461-1040
      Fax: (443) 451-8606
      cary@hansellaw.com
      kmack@hansellaw.com

 

**METROPOLITAN POLICE DEPARTMENT**
Internal Affairs Bureau
Internal Affairs Division

## MEMORANDUM

**TO:**     Director
          Disciplinary Review Division

**THRU:**   Assistant Chief
          Internal Affairs Bureau *Tasha Bryant* 2/8/24

**THRU:**   Commander
          Internal Affairs Division *John Katsen* 2/8/2024

**THRU:**   Captain
          Internal Affairs Division

**THRU:**   Lieutenant
          Internal Affairs Division

**DATE:**   January 26, 2024

**SUBJECT:** Final Investigative Report Concerning the In-Custody Death of Mr.
          Marquez Parker in the Second District Cellblock and the Actions (Failure
          to Aid) of Detective Grade II ▮▮▮▮▮▮ of the Criminal Investigations
          Division (CID); ▮▮▮▮▮▮▮▮▮ **CCN: 23-017-894**

### CHRONOLOGICAL NARRATIVE

On February 2, 2023, Detective ▮▮▮▮▮ was assigned to the Second District
Detective's Unit (2DDU) for the day work tour from 07:00 hours to 15:30 hours. He was
dressed in plain-clothes (court ready attire), and because of his assignment, not
equipped with a body-worn camera (BWC). **(Attachment 1)**

On February 2, 2023, the United States Marshals Service's (USMS) Capitol Area
Regional Fugitive Task Force[1] (CARFTF) surveilled a residence at 3806 Ellis Street,
Capitol Heights, Maryland 20743, during their investigation to locate Mr. Marquez
Antonio Parker. Mr. Parker was located as he traveled into the District of Columbia with
his significant other, Ms. ▮▮▮▮▮▮ inside of her Dodge Durango[2]. Mr. Parker was

---

[1] As defined in General Order 702.01: CARFTF is comprised of U.S. Marshals, MPD detectives, and members of participating
agencies. CARFTF operates within the Washington area and is assigned to track and apprehend individuals wanted for murder,
assault with intent to kill (AWIK), sex-related offenses, wanted subjects residing outside of the District of Columbia, and any other
arrests as directed by the Criminal Investigations Division (CID) commander.
[2] The Durango was registered in Maryland under 8FE9668 to Ms. ▮▮▮

known to have an active fully extraditable arrest warrant (2002CRWSLD2593) issued by the Honorable Judge Juliet McKenna of the Superior Court of the District of Columbia. The warrant charged Mr. Parker for a "Kidnapping While Armed" that occurred in the Second District on July 27, 2022. The event was documented under Central Complaint Number (CCN) 22-107-181. **(Attachment 2)**

Approximately 06:42 hours, CARFTF members conducted a traffic stop of Ms. ████ and Mr. Parker at Randle Circle and Minnesota Avenue, Southeast. CARFTF members ordered Mr. Parker out of the vehicle.[3] MPD Detective ████ of CARFTF placed a single handcuff strand on Mr. Parker's right wrist while he was still seated in the Dodge. Detective ████ assisted Mr. Parker out of the vehicle and told him to get on the ground, where Detective ████ applied the second handcuff strand to Mr. Parker's left wrist. Mr. Parker was cooperative, and no reportable force was used during his apprehension. (████ BWC 1, 00:00:31, 06:43:54)

United States Department of Homeland Security (DHS) Agent ████ a member of CARFTF, commenced a search of Mr. Parker in the roadway of Randall Circle, Southeast. His search entailed the removal of Mr. Parker's belt, laces, and items contained within Mr. Parker's pant pockets. (████ BWC, 04:33, 06:46:25) Mr. Parker's jacket, hooded sweater, hat, and shoes were never searched. DHS Agent ████ and USMS Deputy United States Marshal (DUSM) Michael Lynch maintained physical control of Mr. Parker awaiting the arrival of a uniformed MPD member for prisoner transport.

Approximately 06:44 hours, (████ BWC, 00:04:40 06:46:30) Mr. Parker made a spontaneous utterance, stating, "My dog is in the glove compartment." A subsequent search of the vehicle located a loaded P80 9mm handgun with no serial number, inside the glovebox.[4]

Approximately 07:05 hours, MPD Sixth District Officer ████ a single-officer unit with call sign Wagon 61, arrived on scene in transport van #969. Officer ████ then searched Mr. Parker.[5] When Officer ████ arrived at the stop location, he took custody of Mr. Parker from Agent ████ and DUSM Lynch. Officer ████ stated to Mr. Parker, "It looks like you have already search, but I got to search you again before I put you aboard." (████ BWC, 00:09:24, 07:04:58)

Officer ████ then searched Mr. Parker. (████ BWC, 00:10:48, 07:06:22) Officer ████ search of Mr. Parker entailed the patting, but not the entering of his outer jacket pockets and rear pant pockets. Mr. Parker's front pant pockets were turned inside-out and visible. Officer ████ inserted his hands into the front pocket of Mr.



---

3 MPD and the USMS operate with a Memorandum of Understanding (MOU) in place that governs the use of MPD's BWCs during CARFTF operations. Based on the MOU, the MPD CARFTF members did not have BWC violations related to this incident.
4 A pistol was located within the Dodge after Mr. Parker's arrest. The pistol was seized by ATF Agent ████ a member of CARFTF, and forensically processed by the United States Secret Service at their facility. The weapon was never in the possession of MPD. The NIBIN report is listed in the miscellaneous portion of the case jacket.
5 The investigation of Officer ████ field search of Mr. Parker, Officer ████ full custody search of Mr. Parker, Officers ████ and ████ prisoner/cellblock checks and Sergeant ████ supervision of the station and cellblock, and Captain ████ failure to inspect the cellblock was completed under cover ████

Parker's hooded sweater and rubbed his right hand across the rear of Mr. Parker's jacket to frisk underneath. Officer ███████ used both hands to frisk Mr. Parker's left leg. Lastly, he felt the top of Mr. Parker's hat. All items of Mr. Parker's clothing remained on his body. There was no reportable force used by Officer ███████ during his interaction with Mr. Parker.

Mr. Parker was placed in the transport van and seated on bench closest to the partition's door. After Officer ███████ loosened and double-locked Mr. Parker's handcuffs, he raised the safety bar into place. (███████ BWC, 00:11:33, 07:07:07) Approximately 07:18 hours, Officer ███████ departed the scene and transported Mr. Parker to the Second District station.[6] Approximately 07:56 hours, Officer ███████ arrived at the Second District station in the sally port. (███████ BWC, 00:21:41, 07:17:15) There were no unusual events during the transport process.

Approximately 08:00 hours, Officer ███████ stopped in the sally port and patted down Mr. Parker once more. (███████ BWC, 01:05:23, 08:00:57) Officer ███████ then escorted Mr. Parker inside the Second District cellblock vestibule where Officer ███████ joined them. That morning, Officers ███████ and ███████ were both assigned to the Second District station and cellblock. Officer ███████ was also assigned to the station, but in a limited-duty capacity. Officer ███████ briefed Officers ███████ and ███████ about Mr. Parker's arrest by CARFTF in the Sixth District.

Officer ███████ searched the pockets of Mr. Parker's outer coat and the pockets of his hooded sweater. Officer ███████ located a small brown plastic bag in the left front pocket of the hooded sweater and continued the search. Officer ███████ asked Mr. Parker, "Are you sick, injured, or need to go to the hospital?" Mr. Parker shook his head indicating no. (███████ BWC Video 1, 02:04, 08:01:30) (███████ BWC, 01:05:23, 08:00:57) The search continued with the search of the front and rear pockets of Mr. Parker's pants.

Officer ███████ asked Mr. Parker about the plastic bag found in his jacket. Mr. Parker identified it as "funnel" and then clarified, "It's just tobacco." (███████ BWC, 01:06:22, 08:01:58) Mr. Parker insisted he no longer had use for the item and stated, "It's trash I don't want it." (███████ BWC, 01:07:33, 08:02:38) Officer ███████ discarded the item into the trashcan. Officer ███████ informed Officer ███████ that Mr. Parker would be placed in the middle cell (cell #3), but they all remained in the vestibule at that point.

Officer ███████ transferred custody of Mr. Parker to Officer ███████ and she escorted him to cell #3. (███████ BWC 1, 04:21, 08:03:46) Officer ███████ entered the cellblock and started preparing the Livescan device for Mr. Parker's booking. (███████ BWC 1, 02:22, 08:04:07) Officer ███████ stopped at the entrance to cell #3 and conducted a pat down of Mr. Parker's upper body, which entailed only the manipulation of his outer jacket. (███████ BWC 1, 04:35, 08:04:01) Officer ███████ walked over to cell #3 and requested Officer ███████ to remove the shackles from Mr. Parker's ankles. (███████ BWC Video 1, 02:47, 08:04:30) Officer ███████ removed Mr. Parker's shackles and handcuffs then Officer

---

6 Mr. Parker was transported to the Second District because his arrest warrant was for an offense that occurred within the Second District and authored by a member of the Second District Detective's Unit.



████ placed Mr. Parker into cell #3. ( ████ BWC 1, 04:22, 08:03:50) All three members left the cellblock hallway. Shortly after, Officer ████ departed the Second District. A full custody search of Mr. Parker was never done.

Approximately 08:08 hours, Officer ████ retrieved a female prisoner from the isolation cell and returned her to the custody of a United States Secret Service Uniform Division officer for transport. The prisoner occupancy of the cellblock was Mr. Parker and one female prisoner for a total of two. ( ████ BWC 1, 09:00, 08:08:26)

Approximately 08:13 hours, Mr. Parker asked Officer ████ if he could make a phone call to his girlfriend. Officer ████ escorted Mr. Parker to the cellblock office. Mr. Parker then used the phone to place a phone call to Ms. ████ which was approximately three minutes in duration. Portions of the conversation were audible on Officer ████ BWC, and Mr. Parker made statements such as, "I want you to be strong," "I'm always going to be with you," "My energy always going to be with you," and "You can't be weak, you always got to be strong." Ms. ████ repeatedly asked Mr. Parker to call her when he could. Mr. Parker replied, "I just told you baby it's an energy," and Ms. ████ responded, "I love you. Don't leave me." Mr. Parker began to cry and stated, "Go ahead, man." ( ████ BWC 1, 16:50, 08:16:15) Mr. Parker ended the call and was visibly crying.

Officers ████ and ████ continued the prisoner processing of Mr. Parker by taking his mugshots and fingerprints. The officers instructed Mr. Parker to remove his outer jacket and hat, to which he complied. ( ████ BWC 1, 16:50, 08:19:23) Officer ████ informed Officers ████ and ████ that MPD Detective ████ would be responding to the cellblock because he needed to interview Mr. Parker. Officers ████ and ████ explained this to Mr. Parker, and Mr. Parker was adamant he did not wish to be interviewed. ( ████ BWC 1, 25:50, 08:25:16)

Once the booking was completed, Mr. Parker put his jacket and hat back on. Mr. Parker appeared normal and even chuckled at the compliments made by the officers of his clothing style. Mr. Parker washed his hands and face in the cellblock bathroom. Mr. Parker asked for toilet paper, and was provided a roll by Officer ████ Mr. Parker asked for wipes to clean the cell. ( ████ BWC 1, 26:40, 08:26:06).

Approximately 08:27 hours, Officer ████ escorted Mr. Parker back to cell #3. Mr. Parker's person and his clothing was never searched before he was returned to his cell. Mr. Parker entered the cell and requested items to clean the toilet seat. Officer ████ provided Mr. Parker with a non-disinfectant moistened wipe. Approximately 08:28 hours, Officer ████ removed the female prisoner from cell #2 since Mr. Parker now occupied the adjoining cell. ( ████ BWC 1, 30:19, 08:29:45) Officers ████ and ████ exited the cellblock together at 08:31 hours.

Approximately 08:32 hours, Mr. Parker covered the CCTV camera inside cell #3 with toilet paper after he hung his jacket on the cell bars (2D Cell 3 CCTV, 00:32:34). Officer ████ asked USSSUD Officer ████ to accompany her to Mr. Parker's cell. The officers went to cell #3, and Officer ████ directed Mr. Parker to remove the

items, which was not done immediately. The interaction occurred three minutes after the camera was covered and lasted less than a minute.[7] Both officers exited the cellblock afterward. (2D Cell Hallway CCTV, 00:35:11) Officer ██████ later reported during her Internal Affairs Division (IAD) interview, that Mr. Parker advised he wanted privacy while he relieved himself in the toilet, and he was seated on the toilet at the time.

Approximately 08:34 hours, Officer ██████ re-entered the cellblock and started working at the Livescan computer. Approximately 08:36 hours, Mr. Parker removed the toilet tissue and clothing. Mr. Parker appeared to blow his nose into a tissue he held in his hands and placed one of his jackets back on. (2D Cell 3 CCTV, 00:36:17) After a couple of minutes, Mr. Parker put on his second jacket. Officer ██████ retrieved two cups of liquid from the cellblock window. She delivered one to Mr. Parker and placed it on the shelf of the door for cell #3 before she exited the cellblock. Mr. Parker never drank from the cup and it remained on the shelf.

Officers ██████ and ██████ returned to their desks in the station area and appeared to handle administrative tasks as they ate. There were no MPD members in the cellblock.

Approximately 08:39 hours, in the 2DDU suite, Detective ████ initiated the Axon Capture video recording feature for a 2DDU interview room and entered the room afterward to place a piece of paper on the table. (2D – Interview Room B titled "kidnapping", 00:19, 09:39:28)

Approximately 08:39 hours, in the Second District's cellblock, Mr. Parker became unsteady, teetering back and forth, as he stood next to the cell's bed and he scratched at his hands and wrists. (2D Cell 3 CCTV, 00:39:19) Mr. Parker leaned on the bed, and at 08:40 hours, collapsed backward. (2D Cell 3 CCTV, 00:40:56) Mr. Parker's right foot remained in view of the camera as it dangled from the edge of the lower bunk bed and slowly slid farther down the edge of the bunk. Mr. Parker's right foot remained there until it was later moved. Due to the position of the cell's CCTV camera, the majority of Mr. Parker's body was not visible above the lower portion of his right leg.

Mr. Parker's right foot moved side to side as it hung from the lower bunk. His right foot/leg started to slide farther down the bunk along the edge. The heel of his right foot appear to be held in place by the lower bunk's raised edge as it leaned to the left. (2D Cell 3 CCTV, 00:41:23)

Approximately 08:41 hours, Detective ████ and Special Agent ██████ ████ of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) responded to the cellblock to gather Mr. Parker for an interview. Officer ██████ explained in her IAD interview that she informed Detective ████ that Mr. Parker was cooperative, but did not wish to speak with detectives. Officer ██████ handed Detective ████ the cell's door key and swiped her MPD identification card to allow Detective ████ and Agent ██████ into the cellblock. Detective ████ and Agent ████ walked to cell #3. They discovered Mr. Parker supine

---

7 There is no BWC footage of this interaction. ██████████ was generated for the BWC violation.

on the floor of cell #3 parallel the cell's bunk with his feet toward the cell's door and his head pointed to the wall. (2D Cell 3 CCTV, 00:42:21) In his IAD interview, Detective ███ explained that Mr. Parker's right hand was under his head as if to prop it up. He believed Mr. Parker was asleep.

Agent ███ stood next to Detective ███ as Detective ███ knocked on the cell door with his hand. Mr. Parker's right foot/leg moved slightly side to side as Detective ███ knocked. (2D Cell 3 CCTV, 00:42:21) (2D Cell Hallway CCTV, 00:42:15) In his IAD interview, Detective ███ explained that as he called out to Mr. Parker, Mr. Parker was moving his entire body and appeared to be repositioning himself. Detective ███ believed Mr. Parker was either very asleep or purposefully ignoring them.

After approximately a minute elapsed, Detective ███ unlocked and opened the cell door. Detective ███ partially entered the cell while Agent ███ remained in the hallway. Detective ███ first grabbed Mr. Parker's right foot/leg then shook it for approximately ten seconds. In the CCTV footage, it is unclear if Mr. Parker was moving his leg in conjunction with Detective ███ movements, but there is no pronounced response. Mr. Parker's right foot/leg remained on the bunk's edge. Detective ███ stepped out of the cell and back into the hallway with Agent ███ (2D Cell 3 CCTV, 00:43:27) (2D Cell Hallway CCTV, 00:43:27) Detective ███ and Agent ███ stood outside of cell #3 looking inward toward Mr. Parker for approximately seventy (70) seconds. They appeared to have dialogue between themselves, but the CCTV camera system was not capable of capturing sound.

Detective ███ re-entered the cell and appeared to move Mr. Parker's right foot/leg from the bunk's edge to the floor. Detective ███ then shook Mr. Parker's right foot/leg for approximately twenty (20) seconds. (2D Cell 3 CCTV, 00:44:54) (2D Cell Hallway CCTV, 00:44:54) It is unclear if Mr. Parker moved in conjunction with Detective ███ movements. There was no pronounced response from Mr. Parker. Mr. Parker's right foot moved slightly for approximately two minutes after Detective ███ backed away from Mr. Parker. (2D Cell 3 CCTV, 00:44:59)

Detective ███ exited the cell and went back into the hallway with Agent ███ where they both continued to look inward toward Mr. Parker for approximately ten seconds. Detective ███ then closed and locked the cell door. Detective ███ and Agent ███ walked away from the cell back to cellblock vestibule's station window. (2D Cell 3 CCTV, 00:45:26) (2D Cell Hallway CCTV, 00:45:26)

In his IAD interview, Detective ███ explained that he and Agent ███ could see Mr. Parker's chest rising and lowering, which knew Mr. Parker was breathing. He grabbed Mr. Parker's leg in an effort to wake him, but Mr. Parker pulled his own leg away. He wanted Mr. Parker to verbalize his refusal to speak with them and believed Mr. Parker was most likely ignoring them. Mr. Parker never opened his eyes or verbalized anything. Detective ███ explained that he did not recall grabbing Mr. Parker's leg a second time. Detective ███ stated Mr. Parker did not show any signs of medical distress, make any unusual noises, and did not appear to be in an abnormal physical state. Detective



███ did not take additional steps to assess Mr. Parker for the need of first aid or medical intervention, provide first aid or summon medical attention for him.

Approximately 08:44 hours, Detective ███ left the cellblock corridor with Agent ███ and both spoke with Officer ███ at the cellblock's vestibule window to the main station. (2D Cell Hallway CCTV, 00:45:41) (2D Cellblock Intake CCTV, 00:45:47)

In his IAD interview, Detective ███ explained he informed Officer ███ that Mr. Parker was not responsive to them and requested that he be notified whenever Mr. Parker would be readied for transport to court so another attempt at an interview could be made. Detective ███ stated he never informed the cellblock members that Mr. Parker was laying on the floor on his back.

In her IAD interview Officer ███ reported that Detective ███ stated to her that Mr. Parker "Didn't respond" when they asked him if he wished to be interviewed. Officer ███ stated neither Detective ███ nor Agent ███ conveyed that Mr. Parker was unresponsive in a medical sense or unresponsive on the cell's floor. Detective ███ comment gave her the impression Mr. Parker just did not want to talk to the detectives. She informed them that Mr. Parker was recently fingerprinted and cooperative.

While Detective ███ spoke to Officer ███ Agent ███ walked back to cell #3 alone and peered through the cell door at Mr. Parker. Agent ███ immediately turned around and exited the cellblock corridor back toward the vestibule. (2D Cell Hallway CCTV, 00:47:18) (2D Cellblock Intake, 00:47:22) It is unclear why Agent ███ walked back to the cell or what his observations were at that time.[8]

In his IAD interview, Detective ███ did not recall Agent ███ walking back to Mr. Parker's cell alone. He stated they both agreed that Mr. Parker was either asleep or ignoring them, so they would try again later. Detective ███ explained that he would document their efforts in the RMS case section in the event that Mr. Parker was transported to court without them being informed.

Approximately 08:46 hours, Detective ███ and Agent ███ exited the cellblock together.

Approximately 09:08 hours, Officer ███ escorted another prisoner, Mr. ███ ███ to cell #1, which is the cell before cell #3. Officer ███ did not walk up to or past cell #3 and did not make any statements regarding Mr. Parker. (███ BWC 2, 08:20, 09:14:44).

Approximately 09:15 hours, Detective ███ authored a case note in the Report Management System (RMS) under CCN 22-107-181 regarding his interaction with Mr. Parker. The case note reads verbatim: **(Attachment 3)**

---

8 The ATF denied MPD's request to speak with Agent ███ and the written statement provided about his interaction with Mr. Parker does not address his walk back to cell #3 alone.

"On 02-02-2023, S-1(Parker, Marquez) was placed under arrest for Kidnapping while armed & CPWL. S-1 was transported to MPD's Second District where he was processed and a video recorded custodial interrogation was conducted (Log#). On 02-02-2023 at approximately 0839 hours MPD Detective ███ and ATF Agent ███ started recording and made their way down to the Second District Cellblock area to retrieve S-1 and take him to 2DDU interview room.

Prior to attempting to take S-1 out of his cell Detective ███ asked the station crew personnel about S-1's mental state. The station crew advised that they had just finished live-scanning S-1, so he was cooperative and non-combative.

Detective ███ and Agent ███ went into the cellblock area and observed that S-1 was lying on his back in the cell acting as if he was in a daze with his eyes closed. Detective ███ could see that S-1 was seemingly conscious, due to his chest inhaling & exhaling, however S-1 when prompted by Detective ███ showed no signs reacting or communicating with Detective ███

Detective ███ called out to S-1, by name several times, and went as far as opening the cell and shaking S-1's leg several times to confirm S-1 was alive. S-1 moved around several times, but at no point at time acknowledged Detective ███ presence.

Due to S-1 not giving a verbal response when asked if he would like to speak to Detective ███ Detective ███ decided that another attempt would be made to interview S-1 at a later time.

At 0839 hours the recording of 2DDU's interview room was ended."

The Card Access Events log for the Second District's station and cellblock denoted that Officer ███ exited the cellblock with her MPD identification card at 09:18 hours followed by Officer ███ at 09:21 hours. No one entered the cellblock area for approximately the next hour, until 10:15 hours. **(Attachment 4)**

Approximately 10:15 hours, Officer ███ entered the cellblock and spoke with other prisoners. She did not approach cell #3. (███ BWC 3, 02:15, 10:15:41)

Approximately 10:25 hours, Officer ███ interacted with Mr. ███ at cell #1, when she observed Mr. Parker laying on the floor of cell #3. Officer ███ banged the cell door keys on the bars of cell #3 and stated, "Hey, Marquez, Marquez." Officer ███ asked, "What's he doing?" and Officer ███ replied, "Just laying on the floor." Officer ███ then escorted Mr. ███ into the cellblock office. (███ BWC 3, 12:23, 10:25:49)

Approximately 10:27 hours, Officer ███ walked to the cellblock office and stated, "Delo ███ he don't look good to me." Officer ███ and Officer ███ placed Mr. ███ back into cell #1. Officer ███ entered cell #3 and observed that Mr. Parker was not breathing. (███ BWC 3, 14:42, 10:28:08)

Officer ████ used her police radio to immediately request District of Columbia Fire and Emergency Medical Services (DCFEMS) to respond for a prisoner who was unconscious and not breathing. (████ BWC 3, 13:40, 10:27:06) (████ BWC 4, 04:27, 10:28:11) Mr. Parker appeared unconscious with his outermost jacket unzipped and his right arm near parallel with his body and his left arm extended outward.

Officer ████ activated the cellblock's duress alarm. Numerous members responded to the cellblock. Officer ████ retrieved the AED and members affixed it to Mr. Parker's chest, but the AED advised no shock. Officer ████ administered a dose of Narcan to Mr. Parker, with no apparent effect. Members initiated CPR with use of the one-way breath mask, and continued until DCFEMS arrived at 10:37 hours and took over medical treatment. (████ BWC 3, 15:41, 10:29:07)

In his IAD interview, Detective ████ explained that he and Agent ████ were in the Second District's report writing room, located on the basement level, assisting with the arrest narrative. While there, he overheard officers requesting assistance with a prisoner and it was not until 2DDU Detective ████ came to get him that he was aware the assistance call was related to Mr. Parker.

Approximately 10:58 hours, Detective ████ who had responded to the station, waved to Captain ████ the Second District Watch Commander, to come over to him. The two left the station area to speak in the hallway. The following conversation took place: (████ BWC, 25:09, 10:58:55)

> **Captain ████** "What's up?"
>
> **Detective ████** "That's the Agent. Me and him. I guess he got brought in for the warrant."
>
> **Captain ████** "Yeah. Yeah."
>
> **Detective ████** "We tried to interview him. He flat up ignored us. Didn't want to talk." (Captain ████ pointed over his shoulder toward the cellblock after Detective ████ comment.)
>
> **Detective ████** "Yeah." (Detective ████ raised his hand and pointed in the direction of the cellblock as he answered Captain ████
>
> **Captain ████** "But nothing seemed out of the ordinary or anything like that?"
>
> **Detective ████** (Detective ████ raised his arms from his side as he explained) "No, so. He was ignoring us. I went in there. I'm shaking him." (Detective ████ demonstrated how he shook Mr. Parker by waving his right hand in a side to side fashion)
>
> **Detective ████** "Like, 'Bro you going to talk to me? You going to talk to me?'

So I come back out, and I am like, 'When was the last time you all spoke to him?' They were like, 'We just live scanned him.' He's actively ignoring us. He won't talk to us. I was like, 'Do me a favor. When you all go back inside let me know...'"

**Captain** ▮ "What time was this?"

**Detective** ▮ "I can go check my...cause I actually did a supplement."

**Captain** ▮ "Okay, let's standby. Because when the Agents [IAD] get here I am sure that's information he going to need so standby."

**Captain** ▮ "Alright, I appreciate it." (Captain ▮ pointed toward Agent ▮ who was nearby but on the phone, as he asked Detective ▮ a question.)

**Captain** ▮ "And these guys brought him in?"

**Detective** ▮ "Task Force."

Detective ▮ Captain ▮ and Agent ▮ relocated to the station near the cellblock window, and the following conversation took place: ( ▮ BWC, 27:09, 11:00:55)

**Captain** ▮ "Do you have a card by chance?"

**Agent** ▮ "Yeah." (Agent ▮ supplied his information to Captain ▮

**Agent** ▮ "So ▮ and the other Marshal transported him here. I am on the Task Force, but I am with ATF. I was here to just get the gun, interview the dude, and bounce. So, I didn't have any interaction with him until."

**Captain** ▮ "Okay. What time did you interact with him or thereabouts?"

**Agent** ▮ "What time did we go in? It was like eight-ish." (Agent ▮ is out of view, but appeared to be asking Detective ▮ the question.)

**Detective** ▮ "Like I said, I do remember because, right after we told the station we are going to go downstairs and get the supplement."

**Agent** ▮ "It was not long after he was brought in, but I think it was around eight o' clock."

**Captain** ▮ "Did you all put him in the box and record him?"

**Detective** ▮ "No, we tried to come down here to get him to talk to us, to

bring him upstairs."

**Captain** ███████ "And that was around eight o' clock this morning? Because that is when he came in. He came in right around there. Internal Affairs will be here and they'll chat it up."

DCFEMS determined that Mr. Parker displayed no signs consistent with life, and he was pronounced deceased on the scene remotely by Dr. ███████████ of the United Medical Center (UMC) at 11:08 hours. The Office of the Chief Medical Examiner (OCME) responded to the scene to collect Mr. Parker's remains. The Department of Forensic Sciences (DFS) responded to process the scene.

Mr. Parker's arrest was processed under CCN 22-107-181 by Officer ██████████ of the Second District. **(See Attachment 2)**

On February 2, 2023, Agent ████████ of the IAD completed a Death Report in RMS under CCN: 23-017-894. Agent ████ also completed a Police Department (PD) Form 120, Death Report, in reference to this incident. **(Attachment 5)**

On February 2, 2023, Agent ████████ of the IAD notified Mr. Parker's son, Mr. Marquez Jackson, and his mother, Ms. Jewel Parker, of his death.

On February 2, 2023, Agent David ████████ of the IAD generated Incident Summary (IS) number 23-000384 in reference to this investigation. **(Attachment 6)**

On February 2, 2023, Agent ████████ served Detective ████ a PD 77 (Notice of Revocation/Restoration and Change in Duty Status), placing him in a non-contact duty status. **(Attachment 7)**

On February 2, 2023, Agent ████████ of the IAD notified Assistant United States Attorney (AUSA) Michael Truscott of the United States Attorney's Office (USAO) for the District of Columbia of this incident. **(Attachment 8)**

On February 2, 2023, Officers ████ ████ ████ and ████ each submitted a Police Department (PD) Form 42, Injury or Illness Report, related to their involvement in a critical incident. Sergeant ████████ certified each of the PD 42s submitted. **(Attachment 9)**

On February 3, 2023, Agent ████████ attended the autopsy of Mr. Parker at the OCME. Dr. ███████████ conducted the autopsy, and advised Mr. Parker had only liquid in his stomach and injuries consistent with CPR. Dr. ████ advised nothing was found in Mr. Porter's clothing. **(Attachment 10)**

On April 27, 2023, the OCME forwarded the completed autopsy report, to include the toxicology report, to the MPD. Dr. ████ determined Mr. Parker's cause of death to be

the result of, "Combined toxic effects of Cocaine, Fentanyl, Fluorofentanyl, and Heroin." Mr. Parker's manner of death was ruled an accident. **(See Attachment 10)**

On October 10, 2023, AUSA Truscott forwarded a Letter of Declination which informed the IAD that the USAO declined criminal prosecution of the involved law enforcement members. **(See Attachment 8)**

## LEAD INVESTIGATOR

Agent ▮▮▮▮▮ of the IAD was assigned as the lead investigator for this investigation.

## MEMBER INVOLVED

**Detective** ▮▮▮▮▮
Agency:                              Metropolitan Police Department
Duty & Uniform Status:    On-duty, plain clothes
Personal:                          Black, Male, 42 years old
Badge:                              ▮▮▮▮
CAD:
Assignment:                      Second District Detective's Unit
Hire Date:                          May 31, 2005
Current Duty Status:        Non-Contact ،

## DECEDENT

Name:                    Mr. Marquez Antonio Parker
DOB:                      March 14, 1978 (44 years old)
Personal:              Black Male
Height/Weight:    5'8", 140 lbs.
Address:                3806 Ellis Street
                            Capitol Heights, Maryland
Impairment:          Cocaine and Opiate intoxication

Violations that led to Police Contact: (Active arrest warrant for first two violations)

Kidnapping                                                              DC Code § 22-2001
Assault with A Dangerous Weapon                          DC Code § 22-402
Carrying a Pistol without a License (at time of stop)    DC Code § 22-4504

Previous Criminal History:

March 6, 2009        Arrested in DC, for Uniformed Controlled Substances Act (UCSA) –
                            Possession of Cocaine, UCSA Possession with the Intent to
                            Distribute Phencyclidine (PCP), Carrying a Pistol without a License,
                            and Bail Reform Act (BRA). Mr. Parker was convicted of several

related charges at trial in the Superior Court of the District of Columbia under docket number 2009 CF2 005303.

October 14, 1998   Arrested in DC, for Assault with a Dangerous Weapon. The case was filed Superior Court of the District of Columbia under docket number 1998 FEL 007419, but later dismissed.

February 18, 1998   Arrested in DC, for UCSA Possession with the Intent to Distribute Crack Cocaine, Carrying a Pistol without a License. Mr. Parker plead guilty to related charges in the Superior Court of the District of Columbia under docket number 1998 FEL 001263.

December 15, 1996   Arrested in DC, for UCSA Possession with the Intent to Distribute Crack Cocaine, Carrying a Pistol without a License. Case not filed.

### NEXT OF KIN

On February 2, 2023, approximately 15:57 hours, Agents ▇▇▇ and ▇▇ notified the decedent's son, Marquez Jackson, and mother, Jewel Parker, of Mr. Parker's death at the Prince George's County, Criminal Investigation Division in Upper Marlboro, MD.[9] **(Attachment 11)**

Mr. Parker's family was advised the cause and manner of death is being investigated by the IAD and his body would be transported to the OCME for an autopsy.

The decedent's family were unaware of any known medical or health issues.

Next of Kin Notification:         Ms. Jewel Parker
                                  723 Bald Eagle Lane
                                  Lusby, Maryland
                                  (202) 262-4658

                                  Mr. Marquez Jackson
                                  5114 East Capitol Street, Northeast
                                  Washington, DC
                                  (202) 931-8291

### INJURIES/AUTOPSY

On February 2, 2023, Mr. Parker was pronounced deceased remotely in the Second District cellblock by Dr. ▇▇ of UMC at 11:08 hours. There was no ligature affixed to Mr. Parker and no obvious sign of bleeding or trauma to the body.

On February 3, 2023, Agent ▇▇▇ attended the autopsy of Mr. Parker at the OCME. Dr. ▇▇ conducted the autopsy, and advised Mr. Parker had only liquid in his

---

9 Agents ▇▇ and ▇▇ met Mr. Parker's family at this location at their request.

stomach and injuries consistent with CPR. Dr. ███ advised nothing was found in Mr. Parker's clothing.

On February 28, 2023, after toxicology testing of Mr. Parker's fluids, Dr. ███ later determined Mr. Parker's cause of death to be the result of, "Combined toxic effects of Cocaine, Fentanyl, Fluorofentanyl, and Heroin." Mr. Parker's manner of death was ruled an accident. **(See Attachment 10)**

**Doctor** ███                              **DC Office of the Chief Medical Examiner**

On October 18, 2023, Agent ███ conducted a recorded interview with Deputy Medical Examiner, Doctor ███ of the District of Columbia Office of the Chief Medical Examiner (OCME). The following is a synopsis of the interview: **(See Attachment 10)**

Doctor ███ performed the autopsy of Mr. Parker on February 3, 2023. Mr. Parker died from the result of, "Combined toxic effects of Cocaine, Fentanyl, Fluorofentanyl, and Heroin." His manner of death was ruled to be an accident. Based on the "half-life" of certain drugs it could be discerned how recently he had ingested them. In the case of Cocaine, the chemistry panel would detect the substance in blood but not necessarily provide a time frame for how recently it was ingested; whereas, Heroin, on average, is present in the body for two to six minutes after ingestion before the body metabolizes it into 6-Acetylmorphine, a metabolite specific to Heroin. As a result, Heroin itself is not detected in toxicology because it metabolizes so quickly. 6-Acetylmorphine was present in Mr. Parker's blood, which can be present up to an hour in the blood stream before breaking down. Based on the presence of 6-Acetylmorphine, it was likely that Mr. Parker had consumed Heroin within an hour of his death.

Detective ███ case note from his interaction with Mr. Parker was read by Agent ███ to Doctor ███ According to Doctor ███ Detective ███ observation, "Mr. Parker was seemingly conscious due to his chest inhaling and exhaling," was possible given the timeline of Mr. Parker's collapse then discovery. She stated Mr. Parker may not have displayed signs consistent with an opioid overdose because of the presence of Cocaine in his body counteracting with the Heroin. The stimulant effect of Cocaine and the depressant effect of opioids typically causes seizure-like activity, which could cause involuntary body movement.

There was nothing unusual noted during Mr. Parker's autopsy.

On November 22, 2023, Agent ███ conducted a supplemental recorded interview with Deputy Medical Examiner, Doctor ███ of the OCME. The following is synopsis of the interview:

Agent ███ informed Doctor ███ of what Detective ███ reported about Mr. Parker. Specifically, she was informed that Detective ███ believed Mr. Parker was sleeping since he was moving his body while Detective ███ called out to him and he pulled his leg away from Detective ███ as well.

Doctor ▇ stated what Detective ▇ described was possible. Based on the presence of three opiates in Mr. Parker's blood, which are depressants, Mr. Parker would not have displayed any signs of medical distress such as pain or heavy breathing. Mr. Parker would have presented as being sleepy, drowsy, or "full on asleep." Doctor ▇ was asked to clarify her previous statements about Cocaine related seizure-like activity. She stated seizure-like activity, not an actual seizure, may have been possible. She was not definitive in stating that one had or would have occurred.

She was asked about how soon the outward symptoms of opiate use would appear after being ingested. The method by which the opiate was ingested would determine how soon it would occur. Taking pills orally would take hours to take effect since it must first be digested in the stomach before it can be absorbed. Intravenous use is the fastest depending on the dosage, and can be obvious within seconds because it is delivered directly into the bloodstream. An intermediate absorption method is nasal or rectal administration, which is faster than oral but not as fast as intravenous methods. Swabs of the nasal and rectal cavities are not typically done by the OCME.

Doctor ▇ was asked about how Mr. Parker likely would have presented outwardly in the time Detective ▇ interacted with him. Since Mr. Parker had three different types of depressants in his system, he would have presented in a more depressant state with some stimulant effects from Cocaine. Additionally, if Mr. Parker had spoken, his speech would have been slurred and he would have been "nodding off."

Narcan was created to counteract Heroin, specifically. With Fentanyl being about 100 times more potent than Heroin, Narcan does not always work to reverse the effects. Mr. Parker had both Fentanyl and Fluorofentanyl in his system. If Mr. Parker had been administered Narcan, it might not have worked. FEMS always administers it because it is worth a try. The amount of Cocaine that induces an overdose is different per person and it is unknown if the Cocaine alone would have been fatal. Its presence would have still impacted Mr. Parker's health.

## DESCRIPTION OF SCENE

The incident occurred inside of the Second District station's cellblock, inside male cell #3.

## INVOLVED MEMBER STATEMENT

**Detective** ▇▇▇                                  **Second District Detective's Unit**

On October 24, 2023, Agent ▇ conducted a recorded interview with Detective ▇ at the IAD. Agent ▇ and DC Police Union Representative Chief Shop Steward Adam ▇ were also present. The following is a synopsis of the interview: **(Attachment 12)**

Detective ▇ had never met Mr. Parker before nor performed any investigative case

work before the case that brought Mr. Parker to the Second District on February 2, 2023. When Mr. Parker was arrested, Detective ▮▮▮▮▮▮▮ the assigned case detective, had already ended his midnight tour. The day work detectives were working when Mr. Parker was arrested, which meant one of them needed to handle the custodial interview of Mr. Parker.

To prepare for the interview, he reviewed the case because of the many felony charges and components involved with the interstate kidnapping case and charges for the recently discovered gun that morning. He further spoke with ATF Agent ▮▮▮ who was present at the Second District to participate in the interview. It was unclear how Agent ▮▮▮ became involved with Mr. Parker exactly but he believed it was because of the discovery of the gun.

He set up the interview room by first starting the recording and headed downstairs to the cellblock to retrieve Mr. Parker. He would only get prisoners from the cellblock when the arresting officer or cellblock members would not bring the person upstairs. He does not wear a body worn camera and did not consider having a member equipped with one present before speaking with Mr. Parker.

Once at the cellblock, he and ATF Agent ▮▮▮ spoke with Officer ▮▮▮ who explained that Mr. Parker expressed he did not wish to talk to a detective, but was cooperative. Officer ▮▮▮ did not elaborate on why Mr. Parker did not wish to speak to a detective. He asked Officer ▮▮▮ if Mr. Parker was aggressive, angry, drunk or under the influence of anything. Officer ▮▮▮ stated Mr. Parker was not combative and was cooperative with the station personnel. He and Agent ▮▮▮ were let into the cellblock by someone else, but he could not recall by whom exactly.

He did not recall if any other prisoners were present in the cellblock when they entered. They found Mr. Parker laying on his back parallel to the bunk, with his right hand under his head. Mr. Parker's feet were pointed toward the cell's door while his head was pointed toward the back wall. He believed Mr. Parker was asleep or in a daze. Mr. Parker was in the cell alone. He described the daze as, "Eyes closed…Daze is pretty much just out of it. Sleeping."

He banged on the cell's door with his hand and called out Mr. Parker's name multiple times. He believed the banging was loud enough to wake someone and Mr. Parker was moving around slowly as if he were asleep. When asked about any responses given by Mr. Parker to the noise and calling of his name, he explained, "The occasional movement of his body. I mean, nothing like a wave at me or anything like that." Mr. Parker never spoke and never made any noises. Mr. Parker's chest was rising and lowering, which affirmed to him and Agent ▮▮▮ that Mr. Parker was breathing. Mr. Parker did not appear to be having breathing trouble. He and Agent ▮▮▮ conferred and believed Mr. Parker was pretending to be asleep and/or ignoring them, which he found to be rude and annoying.

He further explained, "I believe he's just being passive aggressive. Like there's people

that will tell you vehemently, I don't want to talk to you. And there's other people that just kind of don't want to come off a, I guess, aggressively. So some people are more passive in how they tell you no. So I just took it as, you don't want to talk to me, but instead of just saying that or being rude, you're just pretending like you're sleeping. So that way we don't have to talk."

He thought Mr. Parker's unserved sentence from his previous prison term motivated Mr. Parker's refusal to speak. In his experience, he believed people view detectives as not helpful to their interests as opposed to officers who simply do the prisoner processing.

He could not recall if Mr. Parker was wearing a coat. He answered, "No," when asked if Mr. Parker was observed foaming at the mouth or had saliva secreting from his mouth. If he thought or observed Mr. Parker to be in medical distress, he would have requested medical attention for him.

The case note he wrote that morning was presented to Detective ▇▇▇ He read it before being asked any questions (00:19:30 mark). He wanted to clarify his remarks in his note. First, he read, "Prior to attempting to take S-1 out of his cell, Detective ▇▇▇ asked the station crew personnel about S-1's mental state. The station crew advised that they had just finished Livescanning S-1, so he was cooperative and non-combative." He had remarked earlier in the interview that he requested the station personnel to contact him when they were going to Livescan Mr. Parker, but meant instead to say when the personnel were preparing Mr. Parker for transport. That was why he titled the supplement as his first attempt, so that it would document that Mr. Parker was afforded the opportunity to provide a statement. He and Agent ▇▇▇ agreed Mr. Parker should still be taken to the interview room to make a more formal refusal to make a statement. He explained further that his remarks about Mr. Parker's behavior during Livescanning was meant to explain the difference in Mr. Parker's reaction to him when he visited cell #3.

Since there was no response from Mr. Parker, he opened the cell door and grabbed Mr. Parker's leg from the floor. He shook Mr. Parker's leg but Mr. Parker pulled it away more than once. It confirmed to him that Mr. Parker was ignoring him and pretending to be asleep. He grabbed Mr. Parker's leg with the intention of getting a reaction from him.

He and Agent ▇▇▇ agreed to try and speak with Mr. Parker later due to the lack of responsiveness from Mr. Parker. They were still at Mr. Parker's cell when they discussed Mr. Parker's behavior. Agent ▇▇▇ gave him the impression that he agreed Mr. Parker was ignoring them.

In his experience, eighteen years overall with at least eight as a detective, most people are direct with not wishing to speak with him by verbalizing their refusal or requesting to speak with their lawyer. He previously spent time as a station clerk while in the Seventh District. On occasion, he would find prisoners asleep on the floor of the cell and, "Generally, they are sleeping, so we do not bother them until it is time to wake them up." (00:40:00 mark) He did not find it strange that Mr. Parker did not wake up. He had been

previously informed that Mr. Parker was cooperative, so he did not believe there was anything wrong with him.

He had experience as an officer responding to calls for service such as a "Person Down." Mr. Parker was different because in those instances, there was usually someone reporting their observations about the subject that required assistance or the subject was unresponsive in every way. He was asked about whether he has attempted to rouse a person that was unresponsive before. He could not recall a specific time when he had done that because DCFEMS were usually on-scene.

Before they left the cellblock, he informed Officer ███████ that Mr. Parker ignored them and when they attempt to Livescan him, to let him know. He did not explain to the station personnel that Mr. Parker was on the floor since he did not appear to be in trouble. He was not aware that Agent ███████ had walked back to Mr. Parker's cell himself. He and Agent ███████ never had any further conversations about their interaction with Mr. Parker.

Afterward, he went back to his office to write a case note in the event that the interview with Mr. Parker did not happen later. He and Agent ███████ then met with the processing officer to assist with the arrest report. While in the report writing room, they overheard on the police radio officers in need of assistance in the cellblock, which he believed was related to another prisoner, not Mr. Parker. Detective ███████ came to him on the report writing room and informed him that the assistance call may be related to Mr. Parker. He and Agent ███████ went to the cellblock and noticed DCFEMS and many other MPD members in the station area. He was informed by Captain ███████ that Mr. Parker was having a medical emergency. He explained to Captain ███████ that they tried to interview Mr. Parker a couple hours prior and he was fine, but ignored them. Captain ███████ informed them that IAD would be handling the investigation next. Agent ███████ left the station for another appointment.

Detective ████ wanted a verbal response from Mr. Parker and took into account that Mr. Parker may have been tired and did not want to be disturbed at that moment. He had no reason to believe Mr. Parker was under the influence of anything unless he was a day time drinker because Mr. Parker had been driving when stopped.

## POLICE WITNESS STATEMENTS

**Special Agent** ███████ ██████          **United States Department of Justice, ATF**

On February 3, 2023, SA ████ was not present when the IAD arrived. The ATF's Office of Professional Responsibility and Security Operations (OPRSO) informed MPD's IAD that SA ████ would not be providing a statement while the matter was under referral. On October 27, 2023, Special Agent in Charge (SAC) ███████████ of the Washington Field Division, provided MPD's IAD with a redacted page of SA ███████ Report of Investigation and denied the IAD's request to interview SA ████ as a

████████

witness in this matter. The following is the verbatim text: **(Attachment 13)**[10]

"SUMMARY OF EVENT:

ARREST WARRANT EXECUTION: On February 2, 2023, members of the United States Marshals Service (USMS) Capital Area Regional Fugitive Task Force (CARFTF) conducted an arrest warrant operation in the Washington, D.C. area.

NARRATIVE:

5.    SA ███████ met with MPD Detective ████████ SA ██████ was to conduct an interview of PARKER with Detective ████ At approximately 0835 hours, SA ██████ and Detective █████ proceeded to the holding cells to contact PARKER. For further on the encounter with PARKER within the cellblock, see Detective ███████ narrative within MPD CCN #22107181. At no time during SA ████████ brief interaction with PARKER did SA █████ observe any signs of medical distress from PARKER."

**Captain** ███████                                    **Second District**[11]

On February 10, 2023, Agent ██ conducted a recorded interview of Captain ██████ at the Second District. The following is a synopsis of the interview: **(Attachment 14)**

Captain ██████ was a patrol captain assigned to the Second District, and on February 2, 2023, he was the Watch Commander for the day work tour of duty. Typically, before the start of his tour he will inspect the station and cellblock. On February 2, 2023, however, because he was not yet in uniform he did not enter the cellblock, but recalled there were two prisoners already there.

That morning, he became busy with an investigation assigned to him and had not made it back to the cellblock for an inspection. He and Captain ██████ were in the captains' office when an alarm sounded for the station. When he arrived to the cellblock he observed Sergeant ██████ supervising the lifesaving efforts performed by Officers ████████████ Jake Coletti, ██████████ and ██████ He noted that Sergeant ██████ is the administrative sergeant, Officers ██████ and ██████ were assigned to the station's cellblock, and Officer ██████ was on over time and came to the station to assist with the alarm. The members were performing CPR on Mr. Parker who was on the floor.

He made notifications to his chain of command and necessary department resources about the incident. As he gathered information, he learned Mr. Parker was taken into

---

10 SA ██████ signed and dated the document on March 2, 2023. Only one page of the two page document was provided to MPD's IAD with any information beyond the quoted text blacked out.
11 Captain ██████ was assigned to the Second District when this incident occurred. Since April 9, 2023, he has been assigned to Special Operations Division (SOD).

custody in the Sixth District approximately 07:00 hours, in relation to an armed kidnapping. Mr. Parker was transported to the Second District for a custodial interview, and arrived approximately 08:00 hours.

While in the station area, Detective ███ initiated a conversation with him. Detective ███ was cooperative during their conversation. Detective ███ explained that he tried to speak with Mr. Parker, but Mr. Parker was unresponsive. He believed Detective ███ motioned that he tried a sternum rub upon Mr. Parker because of him being unresponsive. Captain ███ terminated the conversation with Detective ███ and told him to standby for IAD.

He could not recall if Detective ███ used the exact term "unresponsive" to describe Mr. Parker. He had an extensive medical background prior to joining the MPD and his interpretation of the events described by Detective ███ were a red flag. The need to perform a sternum rub would suggest there was some diminished responsiveness that must be acted upon. He was not present when Detective ███ interacted with Mr. Parker, but believed Mr. Parker was in medical distress based upon the events as described to him.

Agent ███ spoke with Captain ███ as well and provided his contact information. Agent ███ related that he was there to interview Mr. Parker but could not stay on-scene. As far as he knew, neither Detective ███ nor Agent ███ interviewed Mr. Parker. He continued with his notifications, scene management, and sequestered the involved members until IAD arrived to relieve him.

He has been at the Second District for six months. Sergeant ███ was the assigned station sergeant until her recent transfer to Patrol Services North. Sergeant ███ and the midnight sergeant were tasked with filling in as the station sergeants. Sergeant ███ was on her first or second day in the assignment. The Second District captains share the administrative responsibilities of the district, and Lieutenant ███ more directly handled the administrative duties of the district. He recalled Commander Duncan Bedlion sending an email that detailed Sergeant ███ to the station.

He is not aware if either Sergeant ███ or the midnight sergeant had any experience with working in or supervising a station or received any such training. He has previously served as a station sergeant and relied on the general orders as his guide to manage the station. To his knowledge, neither sergeant expressed any reluctance or sought guidance about their new duties. He expected the station sergeants to be present and handle any supervisory matters of the station within their abilities. Given that Sergeant ███ is on limited duty, her abilities are modified, but still include being interactive in her supervision of the personnel as well as the operations of the station.

**Captain** ███ ███                                                           **Second District**[12]

On March 1, 2023, Agent ███ conducted a recorded interview with Captain ███ at the Second District. The following is a synopsis of the interview: **(Attachment 15)**

On February 2, 2023, she was on-duty, but not as the Watch Commander, which was assigned to Captain ███ She was at her desk when the station's alarm began to sound and headed down to the cellblock.

Once in the cellblock, she observed several MPD members performing CPR on an unconscious male. There were ample people assisting with the CPR efforts and Captain ███ had already taken over as the incident commander. She began to gather information about Mr. Parker. She learned that Mr. Parker had been arrested by CARFTF for an outstanding arrest warrant and later transported to the Second District, arriving approximately 08:00 hours. She did not recall any conversations about the timeline of Mr. Parker's custody. At some point, she spoke with Officer ███ about what happened in regard to Mr. Parker. Officer ███ explained that she went to check upon a different prisoner and observed Mr. Parker had covered the cell's camera. Later, Officer ███ discovered Mr. Parker not moving/unconscious in his cell.

Also present in the station area were USSSUD officers, MPD Detective ███ and an agent from CARFTF. She did not speak with any of the additional people about their roles. She did check with the involved members about their well-being since they were involved in a critical incident.

In January 2023, not long after being transferred to the Second District, Commander Duncan Bedlion spoke with her and Captain ███ Commander Bedlion explained that they would be the only captains for the time being and would share the administrative responsibilities of the element. She supervised Lieutenant ███ who was in charge of the administrative aspects of the element to include the cellblock. A few weeks later, the station sergeant was transferred, which required Sergeants Christina ███ and Denise ███ to be detailed to the station. The detail assignments occurred days before the February 2, 2023, incident.

**Lieutenant** ███                                                  **Second District Detective's Unit**

On February 9, 2023, Agent ███ conducted a telephone recorded interview of Lieutenant ███ The following is a synopsis of the interview: **(Attachment 16)**

On February 2, 2023, she was the lieutenant in charge of the Second District Detective's Unit, but attended training at 1015 Half Street, Southeast, that day.

Approximately 07:00 hours that morning, Sergeant ███ called to inform her that Mr. Parker was taken into custody in the Sixth District. Sergeant ███ advised Mr.

---

12 Captain ███ was assigned to the Second District when this incident occurred. On November 17, 2023, she was promoted to Commander of the Second District.

███

Parker would be transported to the Second District, and a custodial interview of him needed to be arranged as well as prisoner processing. 2DDU Detective ███ had obtained an arrest warrant for Mr. Parker in regard to an armed kidnapping which occurred in the Second District.

Detective ███ was originally notified of the arrest by Sergeant ███ and would have completed the necessary tasks, but she and Detective ███ both worked the midnight tour. The detectives were leaving for the day by the time Mr. Parker had been arrested. She next contacted Senior Sergeant ███ whom was acting in her absence, and informed him of the needed processing and interview tasks. Senior Sergeant ███ advised Detective ███ a day work detective, would handle Mr. Parker's arrest.

Approximately 08:30 hours, she contacted Detective ███ by phone. He explained that a Special Agent from the ATF would be part of the interview since Mr. Parker was arrested with a pistol in his possession. To the best of her belief, Detective ███ had not yet spoken with Mr. Parker.

Approximately 11:00 hours, Captain ███ informed her that Mr. Parker had attempted suicide. That was her first notification of any issues with Mr. Parker. Afterward she contacted the assigned AUSA to explain that Mr. Parker had attempted suicide, but it was not until later in the evening that she learned Mr. Parker was deceased. She was never given an update about Mr. Parker's interview or his condition during the event.

She was informed by Captain ███ that Detective ███ had been revoked after he and the ATF agent entered Mr. Parker's cell, and did not recall being given additional information beyond that. Captain ███ inquired why ATF was present and she contacted Sergeant ███ for clarity. Sergeant ███ explained that the ATF agent was a member of CARFTF. Outside agencies normally use MPD facilities to conduct their interviews, but in this case it was rare for an outside agency being present for an interview. ATF's presence was not improper.

**Senior Police Sergeant** ███                    **Second District Detective's Unit**

On February 9, 2023, Agent ███ conducted a telephone recorded interview with Senior Sergeant ███ Sergeant ███ chose not to have DC Police Union representation. The following is a synopsis of the interview: **(Attachment 17)**

Senior Sergeant ███ is currently a senior police sergeant assigned to the Second District Detective's Unit, and on February 2, 2023, he was the acting lieutenant.

That morning, approximately 10:00 hours, he was at a crime briefing when Commander John Haines informed him of a prisoner death in the Second District's cellblock. He remained at the briefing and returned to the Second District at approximately 12:00 hours.

He recalled being informed about Mr. Parker's arrest in the Sixth District and that he was being transported to the 2DDU. Detective ████ had left for the day and Detective ██ would be responsible for processing Mr. Parker. He did not receive any updates about the investigative efforts in regard to Mr. Parker since he was prepping for the briefing. His only direct involvement with the case was to obtain information about the case and arrest which was provided for a press release. He ensured that another detective closed out the case with an arrest, and approved the report.

**Detective** ████████                            **Second District Detective's Unit**[13]

On February 9, 2023, Agent ██ conducted a telephone recorded interview of Detective ████ Detective ████ chose not to have DC Police Union representation. The following is a synopsis of the interview: **(Attachment 18)**

Detective ████ was previously a detective assigned to the Second District's Detective's Unit, and on February 2, 2023, she was working the day work tour of duty.

During the morning of February 2, 2023, she became aware of a recently arrested suspect being transported to the Second District. The midnight detectives were unable to handle the processing and a day work detective was assigned to the arrest. At the time, she did not know Mr. Parker was the arrestee. It was decided amongst the day work detectives who would handle the processing, and Detective ████ took the initiative.

She was in the detective's office when she heard an alarm sounding from the station and a radio request for an ambulance. She went downstairs to the station. Based on the information she overheard on the radio and in the station area, she believed Mr. Parker was the unconscious prisoner that needed an ambulance. Detective ████ and the ATF agent were in the report writing room, one more level down, and she went there to inform them of the cellblock incident. They all headed upstairs to the station afterward.

At the time the alarm sounded, she did not recall seeing Detective ████ in the detective's office, and believed he was speaking with the processing officer downstairs. Approximately 08:00 hours, the processing officer, Detective ████ and the ATF agent were in the office to discuss the processing of Mr. Parker. Afterward, Detective ████ and the processing officer went downstairs. She recalled seeing Detective ████ at his desk, but could not recall what time that was or when he re-entered the office. Her desk is in the corner with an obscured view. Detective ████ remarked something to the effect that he was waiting because Mr. Parker was not ready to talk and he would check on him later. She did not recall what time that may have been but thought before 09:00 hours. She did not know if Detective ████ ever made contact with Mr. Parker again.

She and Detective ████ conversed later that evening about Mr. Parker. He informed her that he had been placed on non-contact because he went into the cell to check on Mr. Parker in reference to a custodial interview. They did not speak more about Mr. Parker.

---

13 On April 8, 2023, Detective ████ retired from service with the MPD.

**Lieutenant** █████████████                                    **Second District**

On March 1, 2023, Agent ████ conducted a recorded interview of Lieutenant ██████ at the Second District. The following is a synopsis of the interview: **(Attachment 19)**

Sometime in January 2023, the assigned station sergeant, Sergeant ███████████ was detailed to Patrol Services North. As a result of the detail, Commander Bedlion and he decided to use the two limited duty sergeants as a way to provide supervision to the station. Sergeant ██████ was detailed to midnights and Sergeant ██████ to day work. Their new roles would require them to provide supervision to station members in addition to their patrol supervisory duties that were not directly law enforcement in nature. The new duties would not exceed the limitations of desk work for both sergeants, in accordance with their PFC restrictions.

On January 24, 2023, Lieutenant ██████ notified Sergeants ██████ and ██████ by email of when they were expected to take up their new assignment. Further, the email explained that they were not exclusively the station supervisors; however, their physical office space was to be in the station. Their office contained a working computer and should have had the ability to access MPD's CCTV system.

He had previously visited the station and observed Sergeant ██████ actively in her role and she never expressed any concerns. He expected the sergeants to be present in the station, monitor the station personnel by walking around or physically observing them completing their tasks, take note of any unattended responsibilities, and ensuring members are properly dressed. On at least one occasion, he brought to Sergeant ██████ attention that a limited duty officer in the station was not properly attired. In terms of the cellblock, the sergeants of the station should ensure prisoners are being live scanned and processed accordingly, monitor or observe the process of prisoners to ensure quality control or if there are any improvements needed.

It was his expectation that both sergeants familiarize themselves with the orders governing the station supervisor duties as well as the station operations. Likewise, they could have asked him, Sergeant ████ the admin staff, their peers and Sergeant ██████ to gather information about their new roles. He was not aware of either sergeant seeking assistance from their peers about the new roles. There were no concerns brought to him by either sergeant about their new assignments. In particular, Sergeant ██████ never expressed any concerns, asked for assistance, or conveyed that she was not adequately trained for her new role.

The civilian staff have limitations upon their roles to assist the sworn members, but those are generally related to interactions with prisoners or the cellblock. They are expected to assist in accordance with their roles as customer service representatives. He is aware that the station personnel have expressed a desire to have more people to be assigned to the station. The station is properly staffed unless someone is on leave, and then back filled accordingly. Limited duty members such as Officer ██████ can be used within their duty restrictions to assist in the station. On February 2, 2023, as far as

he was aware, the B.O.S.S chair, the metal detecting wand, and the cellblock office computer were functioning and present.

**Sergeant Denise** ▮▮▮▮▮                                    **Second District**

On February 2, 2023, Agents ▮▮▮ and ▮ conducted a recorded interview with Sergeant ▮▮▮ DC Police Union Chief Shop ▮▮▮ was present for the interview. The following is a synopsis of the interview: **(Attachment 20)**

Sergeant ▮▮▮ worked the day work tour of duty and conducted roll call for Thursday, February 2, 2023, and several previous days. Starting on Sunday, January 29, 2023, she was the new Station Sergeant. This was Sergeant ▮▮▮ second tour as the station sergeant, as she had been on her days off Monday, Tuesday and Wednesday. Sergeant ▮▮▮ did not apply for the position and was suddenly dropped into the assignment as a fill-in. Sergeant ▮▮▮ was never given any training for the position.

She is charged with supervising the officers assigned to the station which encompasses making sure the station is fully staffed, and handling any supervisory needs required of the station. Due to her limited duty status, she can only perform certain tasks.

Sergeant ▮▮▮ is aware that the members assigned to the cellblock perform checks every 15 minutes[14] and use CCTV monitors in the station area to view prisoners. She did not know how the cellblock members account for their checks and did not know there was a book to record them either. She stated she did not do anything to ensure the station officers performed the checks other than "leave my office and ensure they were supervising and doing their jobs." She is unable to see the CCTV monitor from her desk and periodically she will walk out of her office to view the monitor. The station officers more regularly view the CCTV monitors.

She is not allowed in the cellblock[15] because of her limited-duty status but will leave her office to make sure the officers are doing their jobs. She was never provided any information about any of the prisoners, such as their names or conditions. The cellblock was busy with numerous arrestees entering and departing the cellblock that morning. She did not observe a "white shirt" conduct an inspection of the cellblock during her tour. She was not aware of any detectives going into the cellblock during her tour. It was not until the audible station alarm sounded that she was aware there was a problem with Mr. Marquez Parker.

---

14 Sergeant ▮▮▮ was mistaken when she reported 15 minutes checks were required. General Order 201.23 requires 30 minute physical checks of prisoners unless the prisoner is deemed "high-risk," in which case checks will be conducted every ten minutes.

15 Sergeant ▮▮▮ Clinic Data Sheet stated she was limited to daytime shift, no rotating shift, and she was to avoid any duties which would have increased potential trauma or potential for physical confrontation. The data sheet was placed in the miscellaneous portion of the case jacket.

▮▮▮▮

Follow-up Interview

On March 2, 2023, Agent ███ conducted a recorded interview of Sergeant ████████ at the Second District. DC Police Union Representative ████████ was also present. The following is a synopsis of the interview:

Her previous witness statement made on February 2, 2023, was accurate to the best of her knowledge. A few clarifications were made before it was adopted as part of her overall statement.

On January 29, 2023, she began her new assignment as the Station Sergeant, which was meant to be temporary, due to her limited-duty status.[16] During the week of January 29, 2023, the department was fully activated and she helped officers with the transition to the new time keeping system. This task kept her out of the station area on her first official day. Following her days off Monday through Wednesday, she returned on February 2, 2023. She was not familiar with the station's duties or responsibilities prior to the assignment. The station duties were in addition to her existing duties as a patrol sergeant within the confines of her limited-duty capacity.

She has been employed with the department for eight years and was promoted to the rank of sergeant on June 10, 2022. Since being promoted, the majority of her time had been in a limited-duty capacity with approximately two months experience as a field sergeant while in a full duty capacity.

She had never worked in a station or cellblock in her previous years with the department. In none of her years on the department had she ever been assigned to the station or cellblock nor had she received specific training in either of those areas. During her time as an officer, she had made arrests and performed searches of prisoners. She was confident in her ability to perform prisoner searches as well as to discern if some aspect of the search or booking procedure was not done properly by another member. She was familiar with the typical layout of the cellblock area such as the office, the Livescan desk, the B.O.S.S. chair, and the presence of a metal detecting wand.

Based on her experience, prisoners are patted down, placed in the B.O.S.S. chair, "wanded", and booking information gathered from the arresting member as part of the prisoner intake process. That process remained the same for each of her arrests or transports of prisoners. It was her expectation that similar procedures were followed by the Second District's cellblock members. As a sergeant, if she had observed any of these steps not followed or completed she would have directly addressed them.

She was informed by Lieutenant ███ to be physically present in the station, but due to her limited-duty status she could not be in the cellblock. This was understood to

---

16 On January 24, 2023, Sergeant ███ was assigned the additional responsibilities of supervising the station and the related personnel.

mean that the members assigned to the station were under her direct supervision. None of the members assigned there had ever worked for or with her previously. Prior to her appointment to the station, Sergeant ███████ was the station sergeant and there was never a need for her to assist in the station. Sergeant ████ was detailed to Patrol Services North and she never had the opportunity to consult with Sergeant ████ before or after taking over.

On February 2, 2023, she conducted patrol roll call at 05:00 hours that morning and was being shadowed by another sergeant. After roll call, she completed the necessary administrative duties in the sergeants' office located in the basement of the Second District, which can take approximately two hours to complete. Afterward, she went upstairs to the station to check in with the members but was unsure of the exact time. The station members work eight hour tours and would have been relieving the midnight shift during day work roll call and do not attend rolls calls with patrol members.

Officers ████ ████ and ████ were in the station that morning as well as Civilian employee, Ms. ████ She and Sergeant ████ the midnight tour station sergeant, conversed about the status of the station, cellblock, and prisoners so that she could properly prepare the day's roll call assignments. She was informed of how many prisoners were in the cellblock; however, the exact status of the cellblock equipment, individual prisoners, or the station were not conveyed to her that morning by Officers ████ ████ ████ or ████ The cellblock was occupied by prisoners and she was not allowed to complete an inspection when she arrived. She could not recall her conversation with Sergeant ████ from February 2, 2023, but at least knew there were no deficiencies reported to her that would have impeded the full custody search of prisoners.

She was mostly in her office that morning, which is located in the station area. There was nothing significant that was reported prior to Mr. Parker's death. The cellblock entrance is next to her office and she observed the members going into and out of the cellblock. From her office, the cellblock's office where the B.O.S.S. chair and Livescan desk are located is not visible unless viewed from the cellblock's window ledge. When she walked around the station area she observed the members inside of the cellblock as they handled prisoners. It was her impression that the physical checks were being made of the prisoners but she never asked explicitly and believed they were performing their required duties. Since February 2, 2023, she learned that a ledger existed to record prisoner checks and tallies of the cellblock.

She was not aware that the cellblock was not checked for over an hour and that Mr. Parker was not physically checked upon for a lengthy duration of time. After Mr. Parker's discovery she did not have any conversations with Officers ████ and ████ about cellblock checks. There was a conversation with Officer ████ about what happened but she did not recall anything significant being related to her. Detective ████ and Agent ████ presence in the cellblock was not conveyed to her and she had not been aware of their visit. Members or police personnel not assigned to the station should make a station member, if not the station sergeant, aware of their

presence or intent to go into the cellblock as part of a proper accountability.

She was unaware of all the orders that pertained to the station and cellblock. In hindsight, she should have become better acquainted or prepared for her new role. Since Mr. Parker's death, she had read over all of the necessary orders for her assignment. She did not neglect to learn the role, but the day of Mr. Parker's death was her first full day in the station. Had the day gone without incident she would have been able to start the process of learning the duties and understanding the facility. She tried to become acclimated with the station members and likewise them with her as she learned concepts of being a supervisor. Her concerns about the new collateral duties were never expressed to her supervisors. Sergeant  was supposed to educate her on her new duties and provide guidance as it related to the station facility. Since February 2, 2023, she is updated regularly about the station.

**Officer** ████████          **Second District**

On February 2, 2023, Agents ████ and █ conducted a recorded interview with Officer ████ DC Police Union Chief Shop ████████ was present for the interview. The following is a synopsis of the interview: **(Attachment 21)**

Officer ████ worked the day work tour of duty and was assigned to the station. Officer ████ explained that she was assigned to work both the cellblock and station area duties. Officer ████ sat at a desk in the station and would enter the cellblock to perform duties such as Livescan, prisoner checks, etc., but no one sat in the cellblock office permanently. Officer ████ said cellblock duties would be her priority if there were prisoners. Officer ████ stated the procedure is to physically check on the prisoners every 10-15 minutes[17], and the station members take turns doing the checks.

Officer ████ recalled Mr. Parker being brought to the Second District, and described him as calm and cooperative. Officer ████ asked Mr. Parker if he was sick, injured, or needed to go to the hospital, and Mr. Parker replied no. Officer ████ stated the transporting officer searched Mr. Parker, and she searched him again.

Officer ████ recalled Mr. Parker asked to make a phone call to his girlfriend, and was allowed to do so from the Livescan office. Officer ████ recalled Mr. Parker told his girlfriend over the phone that he loved her, to be strong, and that he would always be with her. Officer ████ recalled the phone call lasted approximately 5 minutes, and he was crying after the call. Officer ████ stated Mr. Parker seemed "sad" after the call. Officer ████ did not hear Mr. Parker speak to any other prisoners.

Officer ████ did not recall what time Mr. Parker was placed in the cell, and stated there were prisoners "in and out" all morning. Officer ████ stated she conducted

---

17 Officer ████ was mistaken when she reported 10-15 minutes checks were required. General Order 201.23 requires 30 minute physical checks of prisoners unless the prisoner is deemed "high-risk," which will then be conducted every ten minutes.

physical checks after Mr. Parker was placed in the cell. She did not recall how many checks she performed but it was more than one. Officer ████ stated she did not recall the frequency of the checks she performed and again noted the station was busy. Officer ████ stated nothing stood out to her during her checks, and did not recall having any conversation with Mr. Parker after he made his phone call and placed him back in the cell. Officer ████ stated Mr. Parker was always standing up when she saw him, and she never observed anything that indicated he was sick or otherwise needed medical attention.

Officer ████ was made aware that Mr. Parker covered the cell camera with a tissue, and Officer ████ went to check on him, but she did not go back into the cellblock at that time. Officer ████ also recalled Mr. Parker asked for his cell to be cleaned, and asked for baby wipes. Officer ████ did not see Mr. Parker on the camera removing items from any orifice. She did not recall seeing Mr. Parker laying down at any point before she saw him laying down while handling with Mr. ████ another prisoner.

Officer ████ recalled Detective ████ and an ATF agent went into the cellblock to see if Mr. Parker wanted to be interviewed. Officer ████ learned this because Detective ████ asked her how Mr. Parker's demeanor was before they went into the cellblock, and she gave them a key to the cellblock. Officer ████ recalled Detective ████ told her that "they asked him if he wanted to speak, and he didn't respond." Officer ████ stated they did not convey Mr. Parker was unresponsive in a medical sense, and gave her the impression Mr. Parker just didn't want to talk to the detectives. Officer ████ stated she did not conduct a check after the detectives left because she had "just left out the cellblock" and Mr. Parker was talking with her. Officer ████ specified the conversation she referred to was when Mr. Parker asked for the tissue and wipes.

Officer ████ stated sometime later she went into the cellblock to retrieve another prisoner to Livescan. Officer ████ stated she observed Mr. Parker laying on the floor "peacefully," called his name but got no response, and she thought he was asleep. Officer ████ stated it was not unusual for someone to lay on the floor because some people think it is cleaner than the cellblock beds. Officer ████ removed the prisoner from the other cell and brought him to the Livescan office. Officer ████ came in and told Officer ████ that Mr. Parker, "didn't look good." Officer ████ placed the other prisoner back in the cell, went into cell #3, and Officer ████ stated Mr. Parker was not breathing. Officer ████ hit the alert button to summon more officers, called for DC FEMS, retrieved the AED, and retrieved her CPR mask to assist with CPR. Officer ████ also noted that an officer applied Narcan to Mr. Parker. Officer ████ stated she did not observe anything around Mr. Parker's neck, or any bleeding.

Officer ████ stated that from where her desk in the station is, the video monitor of CCTV cameras is behind her. Officer ████ stated she checks the monitor often. Officer ████ did not know how many times she checked the video monitor that day. Officer ████ stated she turns her BWC on when she does physical checks of prisoners, and then notates the check in the cellblock logbook. Officer ████ was provided a copy of the cellblock logbook from that day. Officer ████ stated the last

check listed, at 09:08, was not entered by her. Officer ▮▮▮▮ stated she wrote the checks noted at 0700 and 0800. Officer ▮▮▮▮ then stated she did not write down the checks she performed on Mr. Parker. Officer ▮▮▮▮ stated she was "working fast, moving fast," conducting different tasks, and she was going to write the checks down later. Officer ▮▮▮▮ stated she was "in and out" of the cellblock more than indicated by the logbook. Officer ▮▮▮▮ did not recall how much time passed from when she last interacted with Mr. Parker and when she found him on the floor.

Officer ▮▮▮▮ did not receive any information about Mr. Parker from CARFTF or Officer ▮▮▮▮ Officer ▮▮▮▮ did not provide Mr. Parker with any water or food, but believed Officer ▮▮▮▮ gave him water. Officer ▮▮▮▮ stated it is not unusual to not respond to officers when spoken to, because they are upset, asleep, or don't want to be bothered. Officer ▮▮▮▮ reiterated that she had no indication something was wrong with Mr. Parker, that he wanted to hurt himself, or that he needed medical attention, until he was found unresponsive.

<u>Follow-up Interview</u>

On March 2, 2023, Agent ▮▮ conducted a recorded interview of Officer ▮▮▮▮ at the IAD. DC Police Union Representative ▮▮▮▮ was also present. The following is a synopsis of the interview:

Her previous witness statement in regard to Mr. Parker's in-custody death is part of her overall statement. Her statement remained accurate to the best of her belief.

Prior to being detailed to the Second District's cellblock, she spent an estimated ten to twelve years assigned to the station with eight of those years being exclusive to the cellblock.

Initially, there was confusion about Mr. Parker's arrest and what needed to be done with him since Officer ▮▮▮▮ had little information. Mr. Parker appeared to have been searched already when he came into the cellblock. His pockets were turned inside-out and his laces had been removed. At that point, she only conducted a pat down of Mr. Parker for weapons. Officer ▮▮▮▮ initiated the search of Mr. Parker and she only requested that he remove the leg shackles from Mr. Parker. Officer ▮▮▮▮ searched Mr. Parker's pockets and located a bag of tobacco. She was not paying attention to Officer ▮▮▮▮ search. She conducted a second pat down of Mr. Parker before she placed him in cell #3 until his status could be determined.

Ordinarily, the cellblock members will remove the arrestee from the transport vehicle and ask the arrestee if they are sick or injured. This process was altered because Mr. Parker had been brought into the cellblock by Officer ▮▮▮▮

Mr. Parker was never placed on the B.O.S.S. chair or scanned with a metal detecting wand and his shoes were never removed. The chair is usually used to detect metal instead of the wand. The wand is normally in the shelf underneath the cellblock window,

outside of the cellblock. The chair, wand, and cellblock office computer were all operable that morning. As far as she knew, cell #3 had no deficiencies and was unused during the overnight hours.

There was confusion about Mr. Parker's arrest since it occurred in the Sixth District and Officer ▇▇▇▇ had limited information. With Mr. Parker already in the cellblock, it distracted her from the normal process. When Mr. Parker was being live scanned, she recalled looking at the B.O.S.S. chair and realized it had not been completed. She felt that the arrest process was too far along to complete a B.O.S.S. scan, and it was busy.

Thirty minute physical checks are done but fifteen minutes checks are done as a matter of habit because it has been successful in detecting issues. The ledger will always list the thirty minute intervals, which is updated when prisoners leave the cellblock. The ledger may have other entries as an update of the prisoner tally. On some occasions, checks are done by CCTV monitor in lieu of the physical check when the prisoners can be seen on the monitor. On February 2, 2023, it is unclear if any of the checks were done by CCTV or why it was unnoticed that Mr. Parker had collapsed.

When she returned from the detective's office, Officer ▇▇▇▇ explained Mr. Parker had placed tissue over the camera, which he removed. Mr. Parker's covering of the camera was not atypical behavior for some prisoners. Aside from a cup of water and toilet paper given to Mr. Parker by Officer ▇▇▇▇ she had given him wet wipes to clean the toilet.

Detective ▇▇ and Agent ▇▇ came to the station and asked about Mr. Parker's demeanor. She was unsure what time, but it was after Mr. Parker had been live scanned. Detective ▇▇ and Agent ▇▇ were unarmed and she scanned them into the cellblock. They came back to the cellblock's window and Detective ▇▇ stated, "He's not talking to me. Not even to at least say fuck off or fuck you." Detective ▇▇ was informed that Mr. Parker had previously mentioned he did not wish to speak to the investigators. At no time did either of them convey that Mr. Parker was in medical distress, appeared unwell, or needed an ambulance. There was no physical check made of Mr. Parker in the time immediately after Detective ▇▇ visited. There is not a need for other law enforcement officers to be escorted into the cellblock, but station members must be made aware for purposes of accountability.

When they placed Mr. ▇▇▇▇ into his cell, his behavior required more attention and Mr. Parker was not checked at that point. Later, Mr. ▇▇▇▇ was found covered in his own blood and again required more attention to be given to him. While removing Mr. ▇▇▇▇ she glanced into Mr. Parker's cell and he was observed laying on his back. Mr. Parker had been quiet and a physical check of him had not been done recently. Mr. Parker's hands were at his side, he was dressed heavily which made it more difficult to see if he was breathing, and he was unresponsive to her calls of his name. She believed he was asleep and he expressed that he did not wish to lay on the cell's bed earlier.

Officer ▇▇▇▇ noticed her check took too long and inquired what Mr. Parker was doing. Officer ▇▇▇▇ likely sensed something was wrong and checked Mr. Parker for herself.

▇▇▇▇

Officer ███████ noticed Mr. Parker was not breathing and the alarm was activated as well as a request made for DCFEMS.

Officer ████ assisted with the administrative aspects of booking since he was limited duty. There were three prisoners in different stages of the booking process which meant they were all busy completing administrative tasks at the same time for separate prisoners. Specifically, she was completing the NOI worksheet and assisted the detective's office with a more difficult booking of a prisoner, which further divided from the attention needed for the prisoners.

While DCFEMS assisted Mr. Parker, Sergeant ████ and Captain █████ attempted to discern what time he arrived at the Second District. Officer ████ began to check the ledger and his paperwork for an answer. She interrupted Officer ██████ response by accident and was unaware that she was asked any questions. It was not her intent to impede the investigation. Due to the gravity of the situation, she believed the members may have required legal or union representation present. She escorted Officer ██████ outside and she eventually broke down crying once away from the scene.

Prior to February 2, 2023, she believed Sergeant ███████ was assigned to the station for at least two weeks. She remembered Sergeant ██████ sought information about the station, but may have confused if these conversations were before she formally took over the station on February 2, 2023. Sergeant ████████ was new to the station, on limited duty, and unfamiliar with the operations of that aspect of the station. Since Mr. Parker's death, she asks for regular updates about the prisoners.

The shortage of full duty members in the station directly contributed to the lack of timely physical checks. Issues began to compound that morning and most of the prisoners that day were mental health consumers with the exception of Mr. Parker. To her, Mr. Parker was the least worrisome prisoner that day. He was the only prisoner that was sane, competent, calm, and cooperative. His behavior did not indicate there was a need for concern. He was communicative, interacted with officers, appeared sober, not aggressive, and steady.

**Officer** ████████████                                              **Second District**

On February 2, 2023, Agent ██████ and Agent ██ conducted a recorded interview with Officer ██████ DC Police Union Chief Shop ████████████ was present for the interview. The following is a synopsis of the interview: (Attachment 22)

Officer ██████ reported that she was working the 05:00-13:30 shift and she was assigned to the station and cellblock. Officer ██████ related that her work station was located inside of the station area. Officer █████ explained that when a prisoner was being housed in the cellblock, a member would conduct a physical check of the prisoners in their cells every fifteen[18] minutes.

---

18 Officer ██████ was mistaken when she reported 15 minutes checks were required. General Order 201.23 requires 30 minute physical checks of prisoners unless the prisoner is deemed "high-risk," which will then be conducted every ten minutes.

Officer ████ stated that upon starting her shift on February 2, 2023, she recalled there being three prisoners being held in the cellblock.

Officer ████ recalled that a prisoner (identified as Mr. Marquez Parker) was brought into the cellblock by a Sixth District transport wagon. Officer ████ related that she was standing in the cellblock area but she did not have any interactions with Mr. Parker, nor did she recall Mr. Parker making any statements. Officer ████ stated that Mr. Parker did not appear to be in any type of medical distress, nor did he mention needing medical attention. Officer ████ advised that her partner, Officer ████████ asked Mr. ████ if he needed medical attention prior to entering the cellblock.

Officer ████ explained Mr. Parker's demeanor as calm, cool, regular and he did not give any indications that he was a "high risk" prisoner. Officer ████ reported that Mr. Parker was then placed into cell #3.

Officer ████ reported that while Mr. Parker was being housed in the cellblock she performed "checks" on Mr. Parker but could not recall how many she performed. Officer ████ explained that the prisoner checks should occur in fifteen minute intervals and that the checks are documented in a logbook.

Officer ████ was then shown a copy of the cellblock log by Agent ████ and she acknowledged that the initials "AJ" indicated that she conducted the check. Officer ████ when questioned if she conducted any checks after 0700 hours, reported that at one point Mr. Parker had placed something over the cell's camera. Officer ████ explained that upon seeing that the camera had been obstructed, she asked a Secret Service officer to assist her in the cellblock. Officer ████ explained that upon approaching cell #3, she observed that Mr. Parker had placed his coat over the cell's door while he was using the toilet.

Officer ████ related that she then questioned Mr. Parker regarding the obstruction to the video camera and she related that Mr. Parker had told her that he placed something over the camera lens for privacy. Officer ████ instructed Mr. Parker to remove the item from the camera lens. Officer ████ stated that Mr. Parker removed the object from the camera lens as requested and removed his coat from the cell door and put his coat on.

Officer ████ explained that as things moved forward, she and Officer ████ responded back to the cellblock because they needed to fingerprint a prisoner (identified as Mr. ████████ being housed in cell #2. Officer ████ explained that Officer ████ was positioned closer to cell #3 when she heard her state, "Mr. Parker" a couple of times. Officer ████ stated that she and Officer ████ then removed Mr. ████ from cell #2 and escorted him into the fingerprinting room.

Officer ████ stated that she then walked back to cell #3 and observed that Mr. Parker was lying on his back. Officer ████ reported that it appeared that Mr. Parker was not breathing; therefore, she responded back to the fingerprint room and told Officer

████████ that they needed to secure Mr. ████ in a cell because Mr. Parker was not breathing.

Officer ████ reported that Officer ████ retrieved the cellblock keys and upon opening the cellblock door, she (Officer ████ performed a sternum rub trying to get a response from Mr. Parker.

Officer ████ stated that while Mr. Parker was being housed in the cellblock, she recalled that Detective ████ and another detective she didn't know entered the cellblock to interview Mr. Parker.

Officer ████ explained that neither of the two detectives advised her that Mr. Parker was in any medical distress. Officer ████ could not recall how long after the detectives left the cellblock area that the next cell check was conducted.

Follow-up Interview

On February 27, 2023, Agent ██ conducted a recorded interview of Officer ████ at the IAD. DC Police Union Representative ████ was also present. The following is a synopsis of the interview:

Officer ████ affirmed that her previous witness statement was accurate to the best of her knowledge, with a few clarifications. She was greatly impacted by the death of Mr. Parker and she clarified three points from her initial statement.

The physical checks are to be performed every 30 minutes rather than her previous statement of 15 minutes, which apply to a high-risk prisoner. On the morning of February 2, 2023, the station actually processed a total of four prisoners not three as she previously believed. She also confused the search performed by Officer ████ of Mr. ████ with that of Mr. Parker, which she did not witness. Lastly, Mr. ████ did comment about Mr. Parker but it was during the lifesaving efforts not before then. She has been an MPD member for 13 years. Her first six years were at the Fourth District and for the past seven years she has been assigned to the Second District. She was assigned to the station in February 2021.

Normally, at the start of her tour, she will meet with the previous tour's station crew to gather information and updates as well as perform an inspection of the cellblock. They discuss prisoners' status in the process work flow, review the relevant paperwork, and any matters in regard to the prisoners. She could not recall who the midnight members were that morning. The day work tour began with three prisoners in the cellblock, two males and one female.

On the morning of February 2, 2023, she recalled Sergeant ████ was the sergeant for station's day work tour. Sergeant ████ was detailed as their sergeant. She and Officer ████ were assigned to the cellblock as well as the station. Officers ████ and Jacques ████ were assigned to the station as well, but both were

limited-duty and unable to assist in the cellblock. Officer Skinner's usual assignment is the cellblock but due to his duty status he was in the station area. It was not clear if the limited-duty members handled or assisted with any of the station responsibilities that morning.

Once a prisoner has entered the cellblock, they are searched and their handcuffs are removed. The search of a prisoner in the cellblock is attended by two officers. One officer will conduct the search while the other covers and assists. She did not conduct any prisoner searches that day or witness Mr. Parker's search, but Officer ▆▆▆▆ may have. The prisoner may be allowed a phone call and will eventually be photographed and fingerprinted as part of their booking process.

None of the prisoners processed by her that morning were placed in the B.O.S.S. chair or subjected to a metal detecting wand scan. As far as she knew the chair was operational but was unaware where the wand was located. She had only read the orders related to RMS booking and cellblock processing, but not the order about prisoner searches.

She and Officer ▆▆▆▆ routinely work together and have developed a good rapport. Officer ▆▆▆▆ took lead that day in the searching of prisoners and she handled administrative tasks of the booking process. She must also perform customer service duties related to the station in addition to her cellblock duties. The station does not have nor operate by any unwritten rules or policies.

Prisoner checks are made every thirty minutes by walking into the cellblock and looking at the prisoners. That day, they were very busy with multiple prisoners and spent a long duration of time in the cellblock. The time spent in the cellblock would have included checking on the prisoners even if not recorded in the log. The log up until 09:08 hours was accurate as far as she recalled, but did not know why there were no log entries in the prisoner check book after that time. She did not know why Mr. Parker or the cellblock were not checked from 09:08 hours to 10:15 hours, when they arrived to escort Mr. ▆▆▆▆ for processing.

The only time the book is initialed and the block is not checked is when there are no prisoners. The CCTV system is used as one method to monitor the prisoners' status but never to replace the use of a physical check of the cellblock.

The last time Mr. Parker was checked upon was unknown because it was busy that morning and there were only two members able to work in the cellblock. Sergeant ▆▆▆▆ was not made aware of the need for additional help because it was common knowledge that there was insufficient staffing. The concerns about staffing and resources had been previously conveyed to Sergeant ▆▆▆▆ at some point prior to February 2, 2023. Officer ▆▆▆▆ had recently returned to full-duty and it was previously requested that a trained cellblock member assist. In December 2022, there were several days in which she worked alone on the cellblock.

▆▆▆▆

The computer in the cellblock's office was operable but was not used that day. None of the assigned cellblock members ever remain in the cellblock. They complete their necessary prisoner processing paperwork at their desks located in the main station area. As a result, they become pre-occupied with collateral station assignments while attending to prisoner related matters. Sergeant ███████ assisted with citizens, handled complaints, and approved reports. Her limited-duty status prevented her from handling any matters of the cellblock.

Sergeant ███████ is given updates about the prisoners throughout the tour, but has never checked to see if their cellblock inspections or prisoner searches are completed correctly. That morning, aside from Mr. ███████ self-injurious behavior, and Mr. Parker's death, there were no other notable issues to report to Sergeant ███████

Mr. Parker was compliant, seemed normal, conversed, and did not exhibit any signs that she needed to be concerned about. Given that she is a female, Mr. Parker's obscuring of the camera and the bars of the cell was typical behavior with male prisoners. Mr. Parker had been informed that a detective would come speak with him but Mr. Parker stated he was not interested. Detective ███ did visit Mr. Parker in the cellblock but she could not recall what time or for how long. Detective ███ did not advise anything of concern about Mr. Parker after his visit. If there was any indication that Mr. Parker was in duress, aid would have been given.

The need to be attentive to Mr. ███████ because of his mental health state, distracted from the other prisoners in the cellblock. The lack of adequate staffing for the station contributed to the lack of checks upon the prisoners that morning.

**Senior Police Officer** ███████                              **Sixth District**

On March 2, 2023, Agent ███ conducted a recorded interview of Senior Police Officer ███████ at the IAD. DC Police Union Representative ███████ was also present. The following is a synopsis of the interview: (Attachment 23)

On February 2, 2023, he was assigned as the prisoner transport officer with MPD vehicle 969. There was nothing found during the inspection of the vehicle at the start of his tour. There was a radio run for a prisoner transport at Randall Circle, which was the first for the day. Once on scene, Mr. Parker was presented to him and after a search was performed, Mr. Parker was loaded into the vehicle. Mr. Parker was pleasant during the interaction despite being under arrest. The CARFTF members did not provide any background information about Mr. Parker's underlying offenses. The drive to the Second District was uneventful and at no time did Mr. Parker express that he was sick, injured, or in need of medical care. Once at the Second District, Mr. Parker was turned over to cellblock members of the Second District.

At Randall Circle, he made a "cursory pat down" of Mr. Parker's pockets, his head, and any area where an item that could cause harm to others or Mr. Parker would be reasonably located. Mr. Parker's pockets were turned inside out and had obviously

been searched. For the past five years, he has been assigned to the prisoner transport vehicle and was well-versed in the searching or prisoners. While not able to recite the specifications of a search verbatim from the order, generally a search will require the search of all outer garments and pockets in an effort to locate any items of contraband or items that could cause harm to anyone. While searching Mr. Parker at the cellblock a small package was found in his pocket. The bag of tobacco was missed on two previous searches, one of which done right before Mr. Parker's transport and the other at the time of the arrest. The repetitive nature of searches was the reason the bag of tobacco was found because things may be missed in prior searches.

The searches performed on the street and at the Second District, while not perfect, were adequate. As a matter of practice he does not normally perform full-custody searches once at the cellblock. The members of the station have generally performed those. The Second District did not have a full duty station member to perform the search so he conducted the search for them when asked. The B.O.S.S. chair and metal detecting wand overview of Mr. Parker were not done. He did not know where the chair or wand were located in the Second District. There was no recollection of whether or not Mr. Parker's outer garments, jacket, hat, waistband, shoes, or socks were ever searched or removed during the field or full custody searches. It is believed Mr. Parker's legs were frisked over his jeans. In hindsight, a search of Mr. Parker's shoes should have been done, as well as he should have been placed in the B.O.S.S. chair.

**Senior Police Officer** ▮▮▮▮▮▮                    **Second District**

On February 2, 2023, Agent ▮▮▮ and Agent ▮▮ conducted a recorded interview with Senior Police Officer ▮▮▮ DC Police Union Chief Shop ▮▮▮▮ was also present. The following is a summary of the interview: **(Attachment 24)**

SPO ▮▮▮ worked the day work tour of duty from 05:00 hours to 13:30 hours. Ordinarily, he is assigned to the Second District's Cellblock, but he was in a limited duty status. His duty status relegated him to administrative duties in the station and he was not allowed to enter the cellblock. He did not interact with the prisoners that day. SPO ▮▮▮ entered into the cellblock after the emergency alarm for the cellblock began to sound. At the time, he believed another officer was in trouble and went to assist. SPO ▮▮▮ was never informed of or made aware of any prisoners that may have been in medical distress.

From SPO Skinner's desk, he has a view of the CCTV monitor, but never glanced at it during the tour. His understanding of his limited duties was that they did not include him being responsible for prisoner checks whether in-person or via the CCTV system.

**Ms.** ▮▮▮▮▮                    **Second District[19]**

On February 2, 2023, Agent ▮▮▮ conducted a recorded interview with civilian member, Ms. ▮▮▮ The following is a synopsis of the interview: **(Attachment 25)**

---

19 Since September 26, 2023, Ms. ▮▮▮ was converted to an MPD recruit.



Ms. ███ reported that she is the customer service representative for the Second District Station on the daywork tour of duty. Ms. ███ reported that she heard the station alarm sound but did not know why or what happened in the cellblock. Ms. ███ reported that she stayed in the station the entire time during the incident. Ms. ███ reported that she did not have contact with any of the prisoners in the cellblock.

**Detective** ███ ███                                                        **CARFTF**

On February 2, 2023, Agent ███ of the IAD conducted a recorded interview with Detective ███ DC Police Union Shop Steward David Carter was present for the interview. The following is a synopsis of the interview: **(Attachment 26)**

Detective ███ stated members of the CARFTF conducted a traffic stop on a vehicle occupied by Mr. Marquez Parker (Mr. Parker was wanted for an outstanding arrest warrant).

Detective ███ stated he was positioned on the passenger side of the vehicle and recalled Mr. Parker initially refused to exit. Detective ███ stated Detective ███ of the CARFTF opened the passenger door of the vehicle at which time Mr. Parker stepped out and laid on the ground. Detective ███ stated Mr. Parker was handcuffed without incident. Detective ███ indicated no use of force was used and he did not personally have contact with Mr. Parker.

**Sergeant** ███ ███                                                        **CARFTF**

On February 2, 2023, Agent ███ conducted a recorded interview with Sergeant ███ DC Police Union Shop Steward Carter was present for the interview. The following is a synopsis of the interview: **(Attachment 27)**

Sergeant ███ stated a traffic stop was conducted on a Dodge vehicle for a subject (Mr. Parker) wanted on an outstanding arrest warrant. Sergeant ███ stated he was positioned on the driver's side of the Dodge and ordered Mr. Parker several times to exit the vehicle but he refused. Mr. Parker stated he would not exit the driver's side but told the officers he would exit from the passenger side.

Sergeant ███ stated members of the CARFTF went to the passenger side of the Dodge at which time Mr. Parker exited the vehicle and was placed in handcuffs. Sergeant ███ stated he called for a wagon to have Mr. Parker transported to the Second District.

Sergeant ███ stated no use of force was reported to him and he did not observe any force himself. Sergeant ███ stated he had no further contact with Mr. Parker after he was transported from the scene.

Sergeant ███ stated a handgun was recovered from the vehicle which was turned over to the Second District Detective's Unit.

**Detective** ██████ ████    **CARFTF**

On February 2, 2023, Agent ██████ conducted a recorded interview with Detective ██████ DC Police Union Shop Steward Carter was present for the interview. The following is a synopsis of the interview: **(Attachment 28)**

Detective ██████ stated members of the CARFTF had conducted surveillance in Capitol Heights, Maryland, to observe Mr. Parker. The surveillance led the members to following Mr. Parker into Washington, DC, where he was stopped and arrested on Minnesota Avenue, Southeast, near the circle.

Detective ██████ stated during the stop, Mr. Parker was passive-aggressive and would not initially exit the vehicle. Mr. Parker eventually exited from the passenger side door and laid on the ground where members applied handcuffs to Mr. Parker.

Detective ██████ stated he was on the passenger side and assisted with holding Mr. Parker's hands while the handcuffs were applied. Detective ██████ stated Mr. Parker made an utterance regarding a handgun in the vehicle and stated it belonged to him and not his girlfriend.

Detective ██████ stated no use of force was used on Mr. Parker. Detective ██████ described Mr. Parker as acting normal and did not appear to be under the influence of anything.

**Detective** ██████ ███    **CARFTF**

On February 2, 2023, Agent ██████ conducted a recorded interview with Detective ██████ DC Police Union Shop Steward Carter was present for the interview. The following is a synopsis of the interview: **(Attachment 29)**

Detective ██ stated he was the assigned member of CARFTF for Mr. Parker's outstanding arrests warrant. Detective ██ stated the members had conducted surveillance on Mr. Parker and followed a vehicle he was potentially occupying. The members of CARFTF conducted a traffic stop at Randle Circle, Southeast.

Detective ██ stated Ms. ██████████ was the vehicle driver. Ms. ██████ was ordered to turn off the vehicle and she complied. Detective ██ stated all of the vehicle's window were tinted except the front windshield, which he looked through and positively identified Mr. Parker seated in the rear passenger seat.

Detective ██ notified the members of CARFTF about the identification at which time Ms. ██████ was ordered to unlock the vehicle doors. Ms. ██████ and Mr. Parker both had their hands raised and Ms. ██████ did not initially comply with the order to unlock. Ms. ██████ eventually unlocked after she was convinced to do so. Sergeant ██████ opened the driver's rear door and ordered Mr. Parker to exit the vehicle. Mr. Parker refused to exit from the driver's side and made a comment about wanting to exit the

passenger door.

Detective ▮ opened the rear passenger door and applied one handcuff to Mr. Parker. Mr. Parker was ordered to exit the vehicle and lay on the ground which he complied with. Once on the ground Mr. Parker was fully handcuffed without incident. Detective ▮ stated Mr. Parker never complained of pain or injury. Mr. Parker did make a statement about a handgun in the glovebox that belonged to him and not his girlfriend. Mr. Parker was transported from the scene by members of the Sixth District.

Detective ▮ stated that during his investigation into the whereabouts of Mr. Parker, witnesses revealed Mr. Parker did not want to return to jail as he had "back-up time." Additionally, while on scene and prior to transport, Mr. Parker was compliant and cooperative. Mr. Parker had asked to kiss his girlfriend goodbye because he would never see her again.

**Officer** ▮                                    **U.S. Secret Service Uniformed Division**

On February 2, 2023, Agent ▮ conducted a recorded interview with United States Secret Service Uniformed Division (USSSUD) Officer ▮ The following is a synopsis of the interview: **(Attachment 30)**

Officer ▮ and his partner, Officer ▮ had transported a female arrestee from the White House complex to the Second District for processing. As best he could remember, they were the only USSSUD members present.

They were processing their prisoner's property in a closet next to the cellblock when an alarm suddenly sounded. He observed numerous MPD members enter the cellblock and overheard the members say, "A prisoner had collapsed." Officer ▮ never entered the cellblock to assist.

Approximately 30 to 60 minutes before the alarm, Officer ▮ was asked by a female MPD officer to escort her into the cellblock. She informed him that one of the arrestees (Mr. Parker) had obscured the camera in his cell. When he arrived at the cell he observed Mr. Parker standing between the cell door and toilet, and leaning or crouching over the toilet. Officer ▮ was unsure which direction Mr. Parker was facing at the time.

Mr. Parker explained he wanted privacy while he used the toilet and used toilet paper to cover the camera. Mr. Parker had also shoved his puffy jacket into bars of the cell door which partially obstructed the view from the hallway, but he was still visible. The female MPD member advised Mr. Parker he could not cover the camera, and both officers left the area. The interaction lasted about 20 to 30 seconds. Mr. Parker appeared compliant, rational, coherent, and not aggressive. Aside from his arrestee and Mr. Parker, Officer ▮ did not interact with the other arrestees.

Officer ████████████████                    **U.S. Secret Service Uniformed Division**

On February 2, 2023, Agent ███ conducted a recorded interview with USSSUD Officer ████████ The following is a summary of the interview: **(Attachment 31)**

Officer ████████ and her partner, Officer ████████ had transported a female arrestee from the White House complex to the Second District for processing.

They were processing their prisoner's property in a closet next to the cellblock when an alarm sounded. She then heard someone say, "Call the fireboard." She observed numerous MPD members enter the cellblock and heard an unknown MPD member say, "He is not conscious and not breathing." Officer ████████ believed the commotion was about an arrestee. She knew two male arrestees were in the cellblock in addition to their female arrestee.

## CIVILIAN WITNESS STATEMENTS

Mr. ████████
Date of Birth: ████████
No fixed address
████████

On February 2, 2023, Agent ████████ and Agent ███ conducted a recorded interview with Mr. ████████████ The following is synopsis of the interview: **(Attachment 32)**

*Note: Agents ████████ and ██ are trained Crisis Intervention Officers (CIO), and assessed that Mr. ████████ was a mental health consumer. Mr. ████████ timeline of the events are inconsistent with the CCTV footage and BWC footage.*

Mr. ████████ was placed into the large cell within the cellblock. Across from him in a separate cell was a male he believed was named ████████ He described "████████" as a black male, wearing colorful shoes, Ralph Lauren underwear, and several tattoos, one of which was on his stomach.[20] Mr. ████████ recalled "████████" being a drug dealer that he had previously purchased from at 2929 Benton Place, Northwest. "████████" allegedly sold Heroin, Fentanyl, and Methamphetamine and Mr. ████████ allegedly purchased from "████████" as recently as February 1, 2023. "████████" would sell drugs at the Maret School, the Residence Inn on 14th Street, Northwest, as well as the Hilton Garden Inn.

Mr. ████████ stated Major League Baseball player Bryce Harper was also involved with ████████ drug sales. Mr. ████████ felt certain Mr. Parker was named ████████ and remembered him because of his colorful shoes and distinct stomach tattoo. Mr. ████████ conversed with Mr. Parker. Mr. Parker allegedly told him he had swallowed drugs earlier that day and said he, "ballooned it." Mr. ████████ did not state what drug Mr. Parker may

---

20 This description is consistent with Mr. Parker's clothing and tattoos at the time of his death. Mr. ████ had a clear view of Mr. Parker from cell #1 once Mr. Parker was moved into the cellblock hallway during his medical treatment. Mr. Parker collapsed prior to Mr. ████ entering the Second District's cellblock at 09:08 hours, so the two men could not have interacted as described.



have ingested. Mr. Parker told Mr. ███ he would defecate the drugs he had ingested. Mr. ███ was able to smell Mr. Parker defecating.

Mr. Parker reportedly told Mr. ███ to call for help because of the drug use, then fell over. Mr. Parker reportedly told Mr. ███ he was having a heart attack and was short of breath. Mr. ███ called for a doctor, and believed the MPD members handled it well and did everything possible to save Mr. Parker.

**Ms. ███**

███
Capitol Heights, Maryland 20743

███

On February 6, 2023, Agents ███ and ███████ of the IAD conducted a recorded interview with Ms. ███ The following is a brief synopsis of the interview: **(Attachment 33)**

Ms. ███ stated she was not aware if Mr. Parker had any medical conditions and indicated Mr. Parker was not sick or feeling ill recently. Ms. ███ was asked if Mr. Parker was known to use any substances, which she replied, "No."

Ms. ███ was asked if Mr. Parker had taken any medication, which would affect his body, or system, which she replied, "No." Ms. ███ stated on February 2, 2023, she was on the way to work to be dropped off by Mr. Parker.

Ms. ███ stated Mr. Parker called her on February 2, 2023 (post arrest) and was asked if there was anything unusual about the phone call. Ms. ███ stated Mr. Parker told her, "I'm always going to see you. Remember his energy. This is just a shell." Ms. ███ stated, "Those are the words he said to me and that he would love me forever."

## PHYSICAL EVIDENCE

- Technicians from the Department of Forensic Sciences (DFS) responded to the scene and took photographs of the scene. DFS did not collect any items of physical evidence. Mr. Parker's clothing was recovered by the OCME.

- Card Access Event log for the Second District cellblock/station card readers

- Card Access Event logs for Sergeant Denise ███ Detective ███ Officer ███ and Officer ███ ███

- Copy of Second District Prisoner ledger **(Attachment 34)**

## DIGITAL/ELECTRONIC EVIDENCE

### Body Worn Camera (BWC) Review (Attachment 35)

**Officer** ▮▮▮▮▮▮▮                                    **Second District**

Officer ▮▮▮▮▮▮▮ captured three BWC videos in reference to this incident.

### Video 1

Start time: 08:01 hours
Run time: 31 minutes, 50 seconds

02:00 / 08:01:26:    Mr. Parker is escorted into the cellblock by Officer ▮▮▮▮▮▮
                     Officer ▮▮▮▮▮ searched through Mr. Parker's coat pockets and
                     locates a small bag that Mr. Parker identified as "funnel" and then
                     clarified is tobacco. Officer ▮▮▮▮▮ asks Mr. Parker if he is sick,
                     injured, or needs to go to the hospital. Mr. Parker shook his head
                     indicating no. Officer ▮▮▮▮▮ asked if he knows he is at the
                     Second District and Mr. Parker nodded his head yes.

04:00 / 08:03:26:    Mr. Parker stated the shackles are tight on his ankles.

04:22 / 08:03:50:    Officer ▮▮▮▮▮ escorted Mr. Parker to cell #3, and pats him down
                     at the cell entrance. Officer ▮▮▮▮▮ removed the shackles and
                     handcuffs from Mr. Parker's ankles. Officer ▮▮▮▮▮ asked Mr.
                     Parker if he is aware of his charges, and Mr. Parker stated it is for a
                     probation violation. Mr. Parker is placed in cell #3.

07:18 / 08:06:43:    Officer ▮▮▮▮▮ walked into the sally port to assist U.S. Secret
                     Service Uniformed Division personnel with loading a female
                     prisoner into their transport wagon.

13:43 / 08:13:09:    Officer ▮▮▮▮▮ made an entry in the cellblock logbook.

14:18 / 08:13:44:    Officer ▮▮▮▮▮ returned to cell #3. Mr. Parker asked how long it
                     will be until he can use a phone. Officer ▮▮▮▮▮ opened the cell
                     door and escorted Mr. Parker to the Livescan room/office.

16:50 / 08:16:15:    Mr. Parker used the phone in the cellblock office to place a call for
                     approximately 3 minutes. Most of the conversation cannot be
                     heard, but Mr. Parker is heard stating, "I want you to be strong,"
                     "I'm always gonna be with you," "My energy always gonna be with
                     you," and "You can't be weak, you always got to be strong."

20:20 / 08:19:46:    Officer ▮▮▮▮▮ took mug shots and fingerprints of Mr. Parker.

26:40 / 08:26:06:   Mr. Parker washed his hands and face in the cellblock bathroom and asks for toilet paper. Officer ████ provided Mr. Parker with a roll of toilet paper. Officer ████ escorted Mr. Parker back to cell #3.

## Video 2

Start time: 09:08 hours
Run time: 9 minutes, 47 seconds

02:00 / 09:08:25:   Officer ████ responded to the sallyport while officers escort a male prisoner inside.

08:20 / 09:14:44:   Officer ████ escorted the prisoner, Mr. ████ into cell #1 (to the right of cell #3). Officer ████ does not walk beyond cell #1 or make any statements regarding Mr. Parker.

## Video 3

Start time: 10:15 hours
Run time: 36 minutes, 26 seconds

02:15 / 10:15:41:   Officer ████ checked on and spoke with a female prisoner.

03:28 / 10:16:54:   Officer ████ spoke with Mr. ████

03:45 / 10:17:11:   Officer ████ exited the area of the cells and walked into the Livescan office.

12:23 / 10:25:49:   Officer ████ approached Mr. ████ cell and opened the cell door.

12:37 / 10:26:03:   Officer ████ looked into cell #3 where Mr. Parker was being housed. Mr. Parker was observed lying on his back on the floor with his head towards the cell wall and his feet towards the cell door. Officer ████ banged the cell doors keys on the bars of cell #3 and stated, "Hey, Marquez. Marquez."

12:51 / 10:26:17:   Officer ████ was overheard asking, "What's he doing?" and Officer ████ replied, "Just laying on the floor." Officer ████ then followed Mr. ████ as he walked to the fingerprinting room.

13:40 / 10:27:06:   Officer ████ entered the fingerprint room and was overheard stating to Officer ████ "He don't look good to me. Come on, let's put him up." Officers ████ and ████ and Mr. ████ exited the fingerprint room and began walking back towards the

cells.

13:56 / 10:27:23:    Officer ███████ approached and stopped at Mr. Parker's cell as Officer ███████ was placing Mr. ██████ back into his cell.

14:24 / 10:27:51:    Officer ██████ was overheard stating that she could not tell if Mr. Parker was breathing and to look at his chest. Officer ███████ opened the door to cell #3. Officer ██████ entered into the cell while stating, "Marquet. Marquet. Marquet."

14:50 / 10:28:16:    Officer ██████ bent down and performed a sternum rub on Mr. Parker while stating, "He is not breathing." Officer ████████ attempted to make notification over the Second District radio zone.

15:06 / 10:28:33:    As Officer ██████ continued to try and get a response from Mr. Parker, Officer ██████ ran to the window between the cellblock and station, and directed Officer ██████ to notify the DCFEMS. Officer ██████ then ran back towards the cells. Officer ██████ ran past her and activated an audible alarm.

15:20 / 10:28:48:    Officer ██████ notified the dispatcher that she needed DCFEMS to respond. Officer ██████ then began to shake Mr. Parker in an attempt to get a response from him.

15:41 / 10:29:07:    Officer ██████ exited the cell, ran out of the cellblock into the station and retrieved the AED. Upon retrieving the AED, Officer ██████ ran back into the cellblock. Mr. Parker was observed being removed from his cell and pulled into the hallway.

16:28 / 10:29:54:    Officer ██████ was observed administering Narcan to Mr. Parker.

16:49 / 10:30:15:    Chest compressions were initiated and Officer Fitch began placing the AED pads on Mr. Parker's chest.

17:24 / 10:30:50:    As Officer ██████ checked on the status of the DCFEMS, Officer Fitch activated the AED. Chest compressions were reinitiated and continued.

18:25 / 10:31:52:    As CPR was being administered, Officer ██████ exited the cellblock into the station and retrieved a one-way breathing mask.

19:09 / 10:32:35:    Officer ██████ placed the mask over Mr. Parker's face and began breathing air into the mask; CPR continued.

19:44 / 10:33:11:    The AED advised the members performing CPR that no shock was advised. Therefore, CPR was reinitiated and continued.

21:52 / 10:35:18:    As the members continued to administer CPR, the AED advised the members to stand clear to conduct an analysis. The AED then reported that no shock was advised. CPR was again reinitiated and continued.

23:26 / 10:36:52:    Members of the DCFEMS were advised of the situation as MPD members continued CPR.

24:08 / 10:37:34:    As MPD members continued CPR, the AED advised the members to stand clear while it conducted an analysis. The AED reported that no shock was advised and to continue with CPR.

25:03 / 10:38:29:    DCFEMS took over medical intervention as members of the MPD continued to administer CPR.

**Officer** ▮▮▮▮▮▮                                            **Second District**

Officer ▮▮▮▮ captured four relevant BWC videos in reference to this incident.

Video 1

Start time: 08:01 hours
Run time: 11 minutes, 50 seconds

02:22 / 08:04:07:    Officer ▮▮▮▮ is observed searching Mr. Parker in front of his cell. Mr. Parker's hands were handcuffed behind his back.

03:41 / 08:05:25:    Handcuffs and leg shackles were removed from Mr. Parker. Mr. Parker was placed inside cell #3.

Video 2

Start time: 08:13 hours
Run time: 18 minutes, 5 seconds

01:00 / 08:14:36:    Officer ▮▮▮▮ escorted Mr. Parker to a phone where he made a call.

06:14 / 08:19:50:    Officer ▮▮▮▮ took Mr. Parker's mugshot. Mr. Parker appeared to be crying as he wiped away tears from his eyes.

07:38 / 08:21:13:    Officer ▮▮▮▮ took Mr. Parker's fingerprints.

▮▮▮▮▮▮

11:00 / 08:24:35:    Officer ███ advised Officer ███ that Detective ███ would be responding to the cellblock to interview Mr. Parker.

11:24 / 08:25:01:    Officer ███ informed Mr. Parker that a detective would be speaking to him soon. Officer ███ informed Mr. Parker that he was not obligated to speak to the detective. Mr. Parker said that he did not want to speak to any detectives.

13:20 / 08:26:56:    Mr. Parker asked for toilet paper for his cell. Officer ███ handed Mr. Parker a partially used roll from the bathroom adjacent to the cellblock and asked if it would be enough. Mr. Parker stated that he needed more. Officer ███ told him she would bring some to him. Officer ███ retrieved a full roll from the station and brought it to Mr. Parker's cell and exchanged it for the partially used roll.

13:53 / 08:27:31:    Mr. Parker was placed in his cell by Officer ███

## Video 3

Start time: 09:08 hours
Run time: 8 minutes, 3 seconds

07:05 / 09:15:07:    Officers ███ and ███ placed a prisoner, Mr. ███ in the cell next to Mr. Parker.

## Video 4

Start time: 10:23 hours
Run time: 26 minutes, 20 seconds

02:15 / 10:25:57:    Officers ███ and ███ removed a prisoner from the cell next to cell #3. Officer ███ looked into Mr. Parker's cell. Officer ███ tapped on the cell bars and stated, "Hey. Marquez. Marquez." Officer ███ asked, "What is he doing?" Officer ███ replied, "Lying on the floor." Mr. ███ exited his cell and walked with Officers ███ and ███ to the Livescan area.

03:24 / 10:27:08:    Officer ███ went to Mr. Parker's cell. Mr. Parker is observed lying face up the cell floor with his left arms outstretched. Officer ███ yelled, "Marquez. Marquez." Officer ███ then said, "Hey Delo [███ this doesn't look good to me."

03:34 / 10:27:25:    Officer's ███ and ███ placed the other prisoner back into his cell.



04:08 / 10:27:52:     Officer ███████ stood in front of Mr. Parker's cell and stated, "I can't tell if he is breathing." Officer ███████ opened the cell door. Officer ███████ shook Mr. Parker's chest with her right hand as she said his name. Officer ███████ stated, "He's not breathing." Officer ███████ activated her emergency alert tone over her radio and voiced a priority.

05:04 / 10:28:48:     Officer ███████ ran to the Livescan office and pushed the red emergency button on the wall. This triggered an audible alarm.

05:44 / 10:29:28:     Several officers entered the cellblock area and began life saving measures. Officer Fitch pulled Mr. Parker from the cell to the hallway. Officer Fitch administered NARCAN to Mr. Parker. An Officer began chest compressions at the direction of Sergeant ███████.

06:42 / 10:30:25:     Officer ███████ brought an AED to the scene. Once the AED was hooked up it advised to start CPR.  Officers resumed CPR. Multiple Officers switched off and on during the CPR process. The officers continued CPR until the arrival of DCFEMS.

13:23 / 10:37:07:     DCFEMS arrived inside the cellblock hallway and took over all life saving measures.

16:18 / 10:40:03:     Officer ███████ explained to Captain ███████ ███████ that Mr. Parker had used his coat and toilet paper to conceal himself from view of the cell camera. Officer ███████ observed this from the CCTV and went to check on Mr. Parker. Mr. Parker was sitting on the toilet using the bathroom. Officer ███████ explained that Mr. Parker had asked for water. Officer ███████ reported that she got him some water and "everything was fine." Officer ███████ explained that as she and Officer ███████ removed the other prisoner from the cell they saw that Mr. Parker was lying on the cell floor.

25:29 / 10:49:12:     Sergeant ███████ asked Officer ███████ what time Mr. Parker was brought to the station. Officer ███████ suggested they look in the logbook. Sergeant ███████ and Officer ███████ walked to the station window and began to go through the cellblock log book. Officer ███████ walked up to Sergeant ███████ and Officer ███████ and said, "Stop, let's go." Officers ███████ and ███████ walked out of the cellblock and outside of the station where Officers ███████ and ███████ deactivated their BWCs.

███████



Detective ███ ████                                                    **CARFTF**

Detective ███ captured one BWC recording related to this investigation:

Video 1

Start time: 06:42 hours
Run time: 25 minutes, 19 seconds

04:33 / 06:46:25:    DHS Agent ████ searched Mr. Parker. The search entailed
the removal of Mr. Parker's belt, laces, and items contained within
Mr. Parker's pant pockets. Mr. Parker's jacket, hooded sweater,
hat, or shoes do not appear to have been searched.

24:29 / 07:06:20:    SPO ████ searched Mr. Parker after he introduced himself.

Detective ███ ██                                                    **CARFTF**
Detective ███ had two BWC recordings relevant to this investigation:

Video 1

Start time: 06:43 hours
Run time: 2 minutes, 8 seconds

00:00 / 06:45:32:    Detective ███ was directing his flashlight in the direction of the
female driver while standing toward the front of the Durango that
was stopped.

00:30 / 06:43:54:    Detective ███ ran around the back of the vehicle and opened the
right rear passenger door.

00:31 / 06:43:56:    Detective ███ grabbed Mr. Parker's right wrist and placed one
handcuff around his right wrist.

00:39 / 06:44:04:    Mr. Parker stepped out of the vehicle.

00:42 / 06:44:06:    Detective ███ ordered Mr. Parker to "get on the ground." Mr.
Parker knelt down then laid down on his stomach on the ground
under his own power.

00:46 / 06:44:11:    Detective ███ completed the handcuffing of Mr. Parker.

01:07 / 06:44:31:    CARFTF members assisted Mr. Parker in sitting up with his back
leaning on the vehicle.

01:47 / 06:45:11:    Detective ███ placed leg shackles on Mr. Parker's ankles.

████

01:47 / 06:45:11:    Detective ███ placed leg shackles on Mr. Parker's ankles.

Video 2

Start time: 07:00
Run time: 4 minutes, 48 seconds

Detective Nasr's second video depicted the recovery of a gun from the vehicle that Mr. Parker had been inside. Mr. Parker could be seen standing independently.

**Detective ███ ███**                                    **CARFTF**

Detective ███ captured two BWC recordings relevant to this incident.

Video 1

Start time: 06:41 hours
Run time: 6 minutes, 13 seconds

02:02 / 06:41:59:    Detective ███ stopped his vehicle and exited. He walked around the vehicle and stood behind a U.S. Marshal. The vehicle Mr. Parker was inside of, a white Dodge Durango, was stopped in the street.

03:19 / 06:43:16:    Detective ███ returned to his vehicle and obtained a rifle from the passenger compartment.

03:51 / 06:43:48:    Detective ███ could be seen opening the right rear passenger door of the white SUV and guiding Mr. Parker out of the vehicle and onto the ground.

Video 2

Start time: 07:00 hours
Run time: 2 minutes, 30 seconds

Detective ███ second video depicted the recovery of a gun from the vehicle that Mr. Parker had been inside. Mr. Parker could be seen standing independently.

**SPO ███**                                    **Sixth District**

SPO ███ had one BWC recording related to this incident.

Start time: 06:57 hours
Run time: 1 hour, 8 minutes, 23 seconds

███

| | |
|---|---|
| 00:09:24 / 07:04:58: | Officer ███████ arrived on the scene and stopped the wagon. |
| 00:09:31 / 07:05:05: | Sergeant ███████ told Officer ███████ that Mr. Parker needed to be transported to the Second District. |
| 00:10:14 / 07:05:48: | Officer ███████ opened the outer rear door of the wagon. |
| 00:10:25 / 07:06:00: | Officer ███████ opened the inner door to the left side of the split wagon and raised the lap bar. |
| 00:10:48 / 07:06:23: | Officer ███████ advised Mr. Parker that he needed to search him again. Officer ███████ then searched Mr. Parker's outer clothing and patted down his person. |
| 00:11:32 / 07:07:06: | Mr. Parker stepped up and entered the transport area of the wagon. |
| 00:11:58 / 07:07:32: | Officer ███████ put the lap bar in place. |
| 00:12:15 / 07:07:50: | Officer ███████ loosened Mr. Parker's handcuffs at his request. |
| 00:13:34 / 07:09:08: | Officer ███████ put the lap bar back in place after Mr. Parker sat up. |
| 00:13:38 / 07:09:12: | Officer ███████ closed the doors of the wagon with Mr. Parker secured inside. |
| 00:14:08 / 07:09:42: | Officer ███████ entered the wagon and moved it a short distance to allow traffic to flow. |
| 00:14:38 / 07:10:12: | Officer ███████ notified the 6D Dispatcher that he was transporting Mr. Parker to 2D. |
| 00:15:00 / 07:10:34: | An unknown member of CARFTF asked Officer ███████ if he could open the back of the wagon because he needed to ask Mr. Parker some questions. |
| 00:15:21 / 07:10:55: | Officer ███████ opened the rear wagon doors. Mr. Parker had moved to the front of the wagon near the driver compartment. Officer ███████ stood by as the CARFTF member asked Mr. Parker identifying questions. Mr. Parker could be heard providing answers to the questions. |
| 00:19:08 / 07:14:42: | Officer ███████ closed the rear doors of the wagon with Mr. |

███████

Parker secured inside.

00:20:13 / 07:15:48:    Officer ████████ took the PD 256 (Booking form) from Detective ████ and entered the wagon.

00:21:41 / 07:17:15:    Officer ████████ left the scene and began to drive Mr. Parker to the Second District.

(Officer ████████ drove to the Second District for approximately 39 minutes.)

00:33:39 / 07:29:13:    Mr. Parker asked a question that was inaudible. Officer ████████ told Mr. Parker that he was taking him to 2D, because he was told to take him there.

00:57:08 / 07:52:42:    Mr. Parker asked an inaudible question. Officer ████ explained they were going to a police station in D.C.

01:00:39 / 07:56:13:    Officer ████████ arrived at 2D and waited in the wagon outside the sally port door.

01:01:18 / 07:56:52:    Officer ████████ drove into the sally port.

01:02:46 / 07:58:20:    Officer ████████ opened the outer rear doors of the wagon, but advised Mr. Parker to "hold tight" while awaiting the 2D staff.

01:04:56 / 08:00:30:    Officer ████████ opened the inner rear doors of the wagon.

01:05:03 / 08:00:37:    Mr. Parker stood and stepped down out of the wagon with Officer ████████ assistance.

01:05:25 / 08:00:59:    Officer ████████ conducted another search of Mr. Parker's jacket pockets.

01:05:32 / 08:01:06:    Mr. Parker and Officer ████████ entered the 2D cellblock. Officer ████████ conducted another search of Mr. Parker's pockets and jacket.

**Captain ████████**                                    **Second District**

Captain ████ captured one BWC recording related to this incident.

Start time: 10:34 hours
Run time: 1 hour, 43 minutes, 54 seconds

00:00:15 / 10:34:01:    Captain ████ entered into the cellblock and MPD

████████

members are actively doing resuscitation efforts.

00:03:03 / 10:36:49:    DCFEMS arrived at the cellblock.

00:10:09 / 10:43:56:    DCFEMS EMS team arrived to the cellblock.

00:11:38 / 10:45:24:    Sergeant ▇▇▇ asked Officer ▇▇▇ about Mr.
Parker's covering of the camera. Officer ▇▇▇ stated Mr.
Parker was fine and once she exited the cellblock, she could
see on the CCTV monitor that he had removed the paper
from the camera. Officer ▇▇▇ stated in the beginning, she
saw the camera covered and went into cellblock to speak
with Mr. Parker. (Captain ▇▇▇ walked away briefly while
on the phone but returned shortly) Officer ▇▇▇ stated Mr.
Parker explained he used the tissue to create privacy since
he wanted to use the bathroom in private. Officer ▇▇▇
sympathized with Mr. Parker but told him to remove the
paper from the camera which she stated Mr. Parker agreed
to do. (Captain ▇▇▇ walked away. The conversation
continued and was captured on Captain Savoy's BWC)

00:20:50 / 10:54:36:    Captain ▇▇▇ requested Sergeant ▇▇▇ stay with
Officers ▇▇▇ ▇▇▇ and ▇▇▇

00:23:59 / 10:57:46:    DC FEMS requested to know what time Mr. Parker entered
the cellblock or how long he had been in that state. They
determined Mr. Parker entered the cellblock at 08:00 hours.

00:25:09 / 10:58:55:    Detective ▇▇▇ waved to Captain ▇▇▇ to come over to
him and the two leave the station area to speak in the
hallway. Detective ▇▇▇ advised Captain ▇▇▇ of Agent
▇▇▇ identity and explained, "We tried to interview him.
He flat up ignored us." Captain ▇▇▇ asked if anything
seemed out of the ordinary. Detective ▇▇▇ replied,
(Detective ▇▇▇ raised his arms from his side as he
explained) "No, so he was ignoring us. I went in there.
I'm shaking him. (Detective ▇▇▇ demonstrated how he
shook Mr. Parker) Like bro you going to talk to me. You
going to talk to me? So I come back out and was like, when
was the last time you all spoke to him? They were like, 'We
just live scanned him.' He's actively ignoring us. He won't
talk to us." Detective ▇▇▇ continued and stated he asked
the station members to let him know when they go back into
the cell. (Captain ▇▇▇ interrupted to ask what time this
occurred.) Detective ▇▇▇ stated he created a supplement.
Captain ▇▇▇ terminated their conversation and told

▇▇▇

Detective ███ to standby for IAD.

00:27:09 / 11:00:55:    Agent ███ supplied his information to Captain ████
He explained that he is part of CARFTF and they brought
Mr. Parker to the Second District. He was simply there to
interview him in regard to the gun recovered during the
arrest. Until he and Detective ███ entered the cellblock, he
had not had previously interacted with Mr. Parker. Captain
███ asked Agent ███ what time his interaction
occurred and he replied, "Eight-ish." Detective ███
commented, "Like I said, I do remember because, right after
we told the station we are going to go downstairs and get the
supplement." Agent ███ commented, "It was not long
after he was brought in, but I don't. I think it was around
eight o' clock." Captain ███ asked, "Did you all put him in
the box and record him?" Detective ███ replied, "No, we
tried to come down here to get him to talk to us, to bring him
upstairs."

00:28:44 / 11:02:30:    Sergeant ███ reported to Captain ████ that Officers
███ and ███ found Mr. Parker. When the
emergency alarm was sounded, she, Officers ████
Brock, and Fitch responded to the cellblock.

00:29:03 / 11:02:49:    Captain ███ informed Captain ███ that the Detective
███ and Agent ███ were related to Mr. Parker's arrest.
Captain ███ stated she was unaware and thought they
were simply present to assist after the alarm. He informed
Captain ███ that Detective ███ and Agent ███ would
need to remain on-scene because they had interacted with
Mr. Parker.

00:30:26 / 11:04:12:    DC FEMS Firefighter Lieutenant informed Captain ████
that in the next seven minutes they would have completed
30 minutes of CPR and "call it."

00:41:03 / 11:14:49:    Captain ███ asked if Agent ███ could stay. Agent
███ shook his head side to side and said, "No. I have to
leave. If you need anything give me a buzz."

**Captain ██████**                                                  **Second District**

Captain ███ captured one BWC recording related to this incident.

Start time: 10:29 hours
Run time: 43 minutes, 54 seconds



00:33 / 10:29:49:   Captain ███ activated her BWC and entered the station area.
Officer ███ is overheard saying "Not conscious, not breathing."

04:47 / 10:34:03:   Detective ███ and Special Agent ███ are standing outside of
the cellblock. Detective ███ asked Captain ███ "Which prisoner
is it?" She replied that she was unsure.

09:25 / 10:38:41:   Captain ███ asked Officer ███ what happened. Officer
███ stated, "I am not sure. ███ and ███ I think went in
the back. I think ███ said someone had to go to the bathroom.
The next thing I know, the two of us were sitting out here and yelled
███ call board."

10:45 / 10:40:01:   Captain ███ asked Officer ███ what happened. She replied,
"He asked us for some water. He asked us for a phone call. He was
using the bathroom so he put toilet paper up to the camera so I
came back there to check on him. He had his coat up to the cell
and paper up to the camera. We came back, I came back I checked
on (inaudible)... to make sure nothing was going on. He was good.
He was using the bathroom. Ok fine, he asked for some water got
him some water. (Officer ███ pointed down the cellblock
hallway) Then we were coming back here to print this guy (Mr.
███ right here. My partner looked in and I saw the way she
looked and I looked over. She thought he was just sleeping. She
said he was laying on the floor so I went, she was here (pointing to
the cellblock office), and I went. I was like no he doesn't look I don't
think his chest is moving." Captain ███ asked if he was found
lying on the ground and Officer ███ responded in the affirmative
by nodding her head up and down.

16:40 / 10:45:56:   Officer ███ was speaking Sergeant ███ at the cellblock
window. She stated, "I came back out. By the time I came back out
and looked at the camera he had taken it down. He was good.
Sergeant ███ asked, "So you were just doing your rounds?"
Officer ███ nodded yes and stated, "So, we came back here
because it was time for... (Captain ███ walked away).

17:37 / 10:46:53:   Sergeant ███ asked Officer ███ if there was anything
else in the cell door. She nodded no and that he asked for a cup of
water.

20:01 / 10:49:17:   Sergeant ███ and Officer ███ were at the cellblock window
and appeared to be looking at the arrest book. Someone told
Officer ███ she pressed the cellblock alarm at 10:29 hours.



Officer ███ and Officer ███ stepped out of the cellblock and out of view.

31:46 / 11:01:02:    Officer ███ stated she was not ok when asked by Captain ███ She stated she was waiting for a union representative to come. Sergeant ███ was standing off to the side.

33:33 / 11:02:50:    Captain ███ informed Captain ███ that the Detective ███ and Agent ███ had interaction with Mr. Parker. Captain ███ told Captain ███ that Detective ███ would need to be held at the scene because of his involvement.

35:03 / 11:04:19:    DCFEMS Firefighter Lieutenant reported they would cease CPR after seven more minutes because they would have reached a 30 minute cutoff period.

35:40 / 11:04:56:    Captain ███ asked Detective ███ was he alright. He replied, "Nah."

39:11 / 11:08:27:    DCFEMS advised Doctor ███ of UMC pronounced the decedent at 11:08 hours.

39:49 / 11:09:06:    Officer ███ asked Detective ███ what happened and he responded, "I don't know" They continue speaking after the Captain ███ walked away. (The remainder of the conversation was not captured on BWC)

## Closed Circuit Television Cameras (CCTV) Review (Attachment 36)

Footage from the below Second District CCTV cameras between 07:53 hours and 11:15 hours was obtained and uploaded to Evidence.com. The CCTV cameras do not record audio. The below times note the video's marker time and not the actual time.

## 2D Cell 3 CCTV

00:05:17:    Mr. Parker was placed in cell #3 by Officer ███

00:13:59:    Mr. Parker is removed by MPD from cell #3 (to make a phone call and Livescan).

00:26:50:    Mr. Parker returned to cell #3.

00:28:33:    Mr. Parker bent down, and appeared unsteady upon standing up.

00:28:51:    Mr. Parker removed his jacket and hung it on the cell bars.

00:32:34:    Mr. Parker covered the camera inside the cell #3 with toilet tissue.

00:36:17:    Mr. Parker removed the toilet tissue from the camera.

00:36:57:    Mr. Parker took his clothing down from the cell's bars then put his jacket and sweatshirt back on.

00:39:19:    Mr. Parker appeared unsteady standing, began scratching and rubbing hands/wrists.

00:40:36:    Unsteadiness caused Mr. Parker to lean on bunk beds.

00:40:55:    Mr. Parker collapsed. His right foot remains in view of camera as it hung from the lower bunk. Mr.

00:41:23:    Mr. Parker's right foot moved side to side as it hung from the lower bunk. His right foot/leg started to slide down farther down the bunk along the edge. The heel of his right foot appear to be held in place by the lower bunk's raised edge as it leaned to the left.

00:42:21:    Mr. Parker is discovered by Detective ███ and ATF Agent ███████ Detective ███ knocked on cell's door and Mr. Parker's right foot/leg moved slightly side to side.

00:43:27:    Detective ███ entered cell and attempted to wake Mr. Parker by shaking his right foot. It is unclear if Mr. Parker was moving his leg in conjunction with Detective ███ movements, but there is no pronounced response. Mr. Parker's right foot/leg remained on the bunk's edge. Detective ███ and Agent ███████ remained outside of the cell as they observed Mr. Parker.

00:44:59:    Detective ███ entered cell for a second time and grabbed Mr. Parker's right foot/leg from the bunk's edge. Detective ███ appeared to place Mr. Parker's right foot/leg on the floor and shook it his right foot/leg again. It is unclear if Mr. Parker is moving in conjunction with Detective ███ movements. There was no pronounced response from Mr. Parker. Mr. Parker's right foot moved slightly after Detective ███ backed away.

00:45:23:    Detective ███ let go of Mr. Parker's right foot/leg. Mr. Parker's right foot/leg moved slightly over the next two minutes (00:47:33).

00:45:36:    Detective ███ closed the cell door and walked back to the cellblock vestibule.

02:26:32:    Officer ███████ was at cell #3, and appeared to call out to Mr. Parker.
02:26:12:    Officer ███████ left cell #3.

02:26:59:    Officer ▮▮▮ returned with the key, opened the door and began a physical assessment.

02:28:28:    Officer ▮▮▮ transmitted on her radio.

02:29:00:    Additional officers appeared and repositioned Mr. Parker into the cellblock hallway. Mr. Parker was checked for a pulse and for breathing, CPR commenced. The members alternated chest compressions and breaths.

02:42:14:    DCFEMS arrived and assumed medical responsibilities.

<u>2D Cell Hallway CCTV</u>

00:00:57:    Mr. Parker was brought into the intake area and searched.

00:03:35:    Mr. Parker was escorted into the cellblock hallway by Officer ▮▮▮ Officer ▮▮▮ entered the hallway and removed Mr. Parker's shackles.

00:05:02:    The handcuffs were removed from Mr. Parker, he entered cell #3 and Officer ▮▮▮ closed the cell door and left the hallway.

00:13:21:    Officer ▮▮▮ entered the cellblock area and spoke with Mr. Parker through the cell door.

00:13:34:    Officer ▮▮▮ left the cellblock hallway

00:13:43:    Officer ▮▮▮ returned to the cellblock area.

00:13:56:    Officer ▮▮▮ opened Mr. Parker's cell. Mr. Parker walked out of the cell and into the cellblock hallway with Officer ▮▮▮ Officer ▮▮▮ escorted Mr. Parker to be live scanned.

00:25:21:    Mr. Parker walked toward the cellblock hallway before being directed to the intake area.

00:26:40:    Mr. Parker walked into the cellblock hallway with Officer ▮▮▮ and entered the cell.

00:26:59:    Officer ▮▮▮ entered the cellblock hallway holding toilet paper. Officer ▮▮▮ then handed the object to Mr. Parker and the object was given back to Officer ▮▮▮ Officer ▮▮▮ closed the cell door and left the area.

00:27:29:    Officer ▮▮▮ returned to the cellblock hallway with a white object in her hand. The object was handed to Mr. Parker and Officer ▮▮▮ left the

hand. The object was handed to Mr. Parker and Officer ▓▓▓▓ left the area.

00:28:20:    Officer ▓▓▓▓ returned to the cellblock hallway and spoke to another prisoner in cell #1. The other prisoner was escorted from their cell and taken to the intake area.

00:32:12:    Mr. Parker placed his coat inside the bars of the cell, causing them to protrude from the cell.

00:35:11:    Officers ▓▓▓▓ and USSSUD officer entered the cellblock hallway and looked into the cell.

00:35:27:    Officers ▓▓▓▓ and USSSUD officer left the cellblock area.

00:36:49:    Mr. Parker removed the items from the bars of the cell.

00:39:05:    Officer ▓▓▓▓ walked into the cellblock hallway carrying a cup in each hand, which she placed on Mr. Parker's cell. Officer ▓▓▓▓ left the cellblock hallway area.

00:42:12:    Detective ▓▓▓▓ and Agent ▓▓▓▓ walked into the cellblock hallway.
             Detective ▓▓▓▓ tried to make contact with Mr. Parker.

00:42:24:    Detective ▓▓▓▓ knocked on cell #3.

00:43:21:    Detective ▓▓▓▓ unlocked the cell door and opened it. Detective ▓▓▓▓ leaned into the cell but it was unclear in the footage what action he took.

00:43:47:    Detective ▓▓▓▓ stood upright with the cell door open. Detective ▓▓▓▓ spoke with Agent ▓▓▓▓

00:44:55:    Detective ▓▓▓▓ entered the cell and bent over. This footage did not capture what actions the detective was taking due to the bars of the cell obscuring the view.

00:45:23:    Detective ▓▓▓▓ stood up and backed out of the cell.

00:45:36:    Detective ▓▓▓▓ closed the door to the cell.

00:45:45:    Detective ▓▓▓▓ and Agent ▓▓▓▓ left the cellblock area.

00:47:23:    Agent ▓▓▓▓ returned to the cellblock area. Agent ▓▓▓▓ looked into Mr. Parker's cell and left the cellblock area.

01:14:28:    Officers ▓▓▓▓ and ▓▓▓▓ escorted Mr. ▓▓▓▓ down the

▓▓▓▓                                                          Page 59 of 77

01:15:39:    Officers ███ and ███ leave the cellblock hallway.

02:16:28:    Officer ███ entered the cellblock hallway and stood outside the first cell while Officer ███ stood at the entrance to the hallway.

02:25:26:    Officers ███ opened the first cell door and then peered into Mr. Parker's cell. Officers ███ and ███ escorted the male from the first cell to the Livescan area.

02:26:34:    Officer ███ returned to Mr. Parker's cell and peered into the cell.

02:26:46:    Officer ███ walked across the intake area and returned with Officer ███ and Mr. ███ Mr. ███ is secured inside the first cell.

02:27:37:    Officer ███ opened the door to Mr. Parker's cell. Officer ███ appeared to use her MPD radio while Officer ███ was inside the cell with Mr. Parker.

02:28:55:    Multiple MPD members arrived in the cellblock hallway.

02:29:16:    Mr. Parker was moved into the hallway where officers began CPR.

02:36:30:    DCFEMS arrived and took over medical aid to Mr. Parker.

## 2D Cellblock Intake CCTV

00:00:50:    Officer ███ escorted Mr. Parker into the intake area from the sally port. Mr. Parker was handcuffed with his hands in the back. Officers ███ and ███ search Mr. Parker.

00:03:25:    Officer ███ escorted Mr. Parker into the cellblock hallway.

00:14:03:    Officer ███ escorted Mr. Parker from the cellblock hallway into the Livescan area.

00:20:50:    Officer ███ was fingerprinting Mr. Parker on the Livescan machine.

00:25:15:    Officer ███ escorted Mr. Parker to the bathroom in the intake area.

00:26:30:    Officer ███ provided Mr. Parker with a roll of toilet paper and escorted him to the cellblock hallway.

00:42:07:    Detective ███ and Agent ███ entered the intake area from the station and proceeded to the cellblock hallway.

00:45:47:    Detective ███ and Agent ███ entered the intake area from the

cellblock hallway. Detective ▆▆ looked into the Livescan area before standing at the window leading to the station.

00:47:22:    Agent ▆▆ walked to the cellblock hallway.

00:47:27:    Detective ▆▆ opened the door leading to the station as Agent ▆▆ exited the cellblock hallway. Detective ▆▆ and Agent ▆▆ exited the cellblock.

01:14:25:    Officers escorted Mr. ▆▆ down the cellblock hallway.

01:15:37:    Officers returned to the intake area.

02:16:26:    Officers ▆▆ and ▆▆ entered the cellblock hallway.

02:16:51:    Officers ▆▆ and ▆▆ exited the cellblock hallway and entered the Livescan area.

02:25:18:    Officers ▆▆ and ▆▆ entered the cellblock hallway.

02:26:00:    Officers ▆▆ and ▆▆ exited the cellblock hallway with Mr. ▆▆ Officer ▆▆ escorted Mr. ▆▆ into the Livescan area. Officer ▆▆ reentered the cellblock hallway.

02:26:47:    Officer ▆▆ entered the intake area and walked to the Livescan area. Officer ▆▆ then walked back into the cellblock hallway followed by Officer ▆▆ and Mr. ▆▆

02:28:10:    Officer ▆▆ entered the intake area and appeared to speak with someone through the window to the station area. Officer ▆▆ went back down the cellblock hallway.

02:28:22:    Officer ▆▆ entered the intake area and then went back to the cellblock hallway.

02:28:45:    Officers ▆▆ and ▆▆ opened the door to the station as multiple MPD members rushed through the intake area from the station into the cellblock hallway.

02:36:25:    FEMS arrived in the intake area.

## 2D Cell #4 CCTV

00:12:09:    Officer ▆▆ handed Mr. Parker some wipes in his cell.

00:13:21:    Mr. Parker fell to the ground.

00:15:16:    Detective ▮ and Agent ▮ entered the cellblock.

00:16:26:    Detective ▮ opened cell #3, entered, and appeared to shake Mr. Parker.

00:18:44:    Detective ▮ and Agent ▮ left the cellblock.

## Office of Unified Communications (OUC) Review (Attachment 37)

The OUC provided the recordings from the Second District Main Radio Zone and the Second District TAC Channel. Below is a summary of relevant transmissions:

### 2D Main Radio Zone

40:41:    Officer ▮ raises the dispatcher. Officer ▮ is heard saying, "Marquez, Marquez," in the background. The dispatcher does not acknowledge Officer ▮ and instead acknowledges another unit who raised the dispatcher after Officer ▮.

40:55:    Officer ▮ raises the dispatcher in a more urgent tone. The dispatcher scolds her for yelling and advises her to transmit her message. A unit steps over Officer ▮ next transmission. Another unit advises that the station may have a priority and for all available units to respond.

41:20:    Captain ▮ (Cruiser 200) advises everything is under control.

41:40:    Captain ▮ advises they have a prisoner having trouble breathing, and requests DCFEMS to respond to the cellblock. The dispatcher asks if the prisoner is male or female, Captain ▮ advises her to standby.

42:07:    Officer ▮ asks if DCFEMS is in route. The dispatcher asks for more information about the prisoner. Officer ▮ advises it is a male prisoner, who is unconscious and not breathing.

42:27:    Officer ▮ advises CPR and AED use are in progress. Cruiser 200 advises the prisoner is a black male, approximately 35-40 years of age, and CPR is being performed. The dispatcher advises she is notifying DCFEMS.

### 2D TAC Channel

No relevant transmissions.

## DISCREPANCIES AND CLARIFICATIONS

**What was the cause and manner of Mr. Parker's death?**

The OCME determined that Mr. Parker's death was accidental due to the "Combined toxic effects of Cocaine, Fentanyl, Fluorofentanyl, and Heroin." There is no visual evidence to rely upon that would explain how exactly Mr. Parker was able to ingest the substances, when exactly that occurred, or how long afterwards death resulted.

In her IAD interview, Doctor ███ explained that based on the metabolites or "half-life" of certain substances it could be discerned how recently someone had ingested them prior to his death.

In the instance of Cocaine ingestion, the chemistry panel would show the substance is present, but the point at which it would be lethal will vary by person. Therefore, Cocaine was listed as a contributing factor in Mr. Parker's death.

Doctor ███ further explained that 6-Acetylmorphine, a Heroin metabolite, was present in Mr. Parker's blood, which would occur approximately two to six minutes after ingestion and be present for up to an hour in the bloodstream before converting again in a live person. The 6-Acetylmorphine had not converted into another substance at the time Mr. Parker died indicating he ingested Heroin within a little over an hour prior to his death. Doctor ███ could not state specifically how Mr. Parker ingested the opioids; however, based on the CCTV footage showing the onset of Mr. Parker's unsteadiness and eventual collapse, she believed he was experiencing the effects of opioid intoxication. (2D Cell 3 CCTV, 00:40:56) Mr. Parker's stomach did not reveal the presence of any unusual items or pill fragments. Mr. Parker was not found with drug paraphernalia or unexplained marks to his body. Doctor ███ cited two methods for quick absorption of opioids into the bloodstream, rectal and nasal administration. OCME did not conduct swabs of Mr. Parker's orifices for the presence of any substance.

The OCME noted Mr. Parker's only physical trauma was attributed to lifesaving efforts. Doctor ███ further stated that opioid reversing substances such as Narcan were developed to counteract Heroin, but given the more potent nature of Fentanyl the reversal does not always happen. It is undetermined if the administration of Narcan would have stopped Mr. Parker's overdose.

By the accounts of every member that interacted with Mr. Parker prior to his collapse, he appeared well and interacted normally. It was after Mr. Parker covered the CCTV camera and made use of the cell's toilet, that he collapsed. The OCME's findings do not absolve the members' failures to follow policy in regard to checking on prisoners in MPD custody; however, it is unclear if the outcome would have been any different had they done so.

**Detective ▇▇ duties and responsibilities as an MPD member:**

In the analysis of Detective ▇▇ actions, the BWC and CCTV footage, his training records, the MPD's training curriculum and the various witness statements were reviewed. There are objective moments in the timeline of this incident. First, BWC footage from Mr. Parker's arrest showed that he was arrested without reportable force. Upon examination by the OCME, Mr. Parker's only physical trauma was related to the administration of CPR. Second, BWC and CCTV footage support that Mr. Parker was communicative, moved freely under his own power for nearly two hours while in police custody, and did not appear to be in any type of medical distress nor did he express a need for medical attention prior to his collapse. Third, Mr. Parker was housed by himself while in police custody, which resulted in his collapse being unwitnessed. The CCTV cameras for the Second District's cellblock were not being monitored at the moment Mr. Parker collapsed. Fourth, Mr. Parker had ingested opioids at least one hour prior to his death; however, the ingestion was not captured on BWC or CCTV footage or witnessed due to his covering the cell's CCTV camera. Additionally, Detective ▇▇ completed an RMS case at 09:15 hours detailing his and Agent ▇▇ interaction with Mr. Parker prior to Mr. Parker's discovery in his cell at 10:27 hours.

The BWC and CCTV footage showed that Mr. Parker had interacted with multiple members of law enforcement in the hours and minutes prior to his collapse. He appeared well and did not express that he needed medical attention when Officer ▇▇ last spoke with him at 08:34 hours. Officer ▇▇ was the last person to have a conversation with Mr. Parker. Doctor ▇▇ believed the unsteadiness Mr. Parker exhibited at 08:39 hours, several minutes after Officer ▇▇ walked away, was the onset of his opioid overdose. Detective ▇▇ never interacted with Mr. Parker prior to visiting him in the cellblock at 08:41 hours.

After Mr. Parker collapsed, only the lower portion of his right leg was visible to the CCTV camera within his cell. The CCTV footage did not record sound. Mr. Parker's right foot moved slightly after Detective ▇▇ arrived and knocked on the cell's door. Detective ▇▇ explained in his IAD interview that he called out to Mr. Parker and Mr. Parker moved his entire body. When Mr. Parker did not wake, Detective ▇▇ entered the cell and tried to rouse him by shaking Mr. Parker's leg. Detective ▇▇ explained that Mr. Parker did not wake, but pulled his own leg away. It is unclear from the CCTV footage if Mr. Parker moved his leg in combination with Detective ▇▇ movement or on his own.

Detective ▇▇ exited the cell and he along with Agent ▇▇ appeared to observe Mr. Parker from the corridor. When Detective ▇▇ re-entered the cell, he lifted Mr. Parker's right leg from the lower bunk's edge and placed it on the floor. Detective ▇▇ attempted to rouse Mr. Parker a second time by shaking Mr. Parker's leg more vigorously for several seconds. It is unclear from the CCTV footage what movements, if any, Mr. Parker made on his own. Detective ▇▇ did not recall touching Mr. Parker more than once. Detective ▇▇ and Agent ▇▇ spent nearly four minutes with Mr. Parker before they left, which was nearly six minutes after his collapse. Mr. Parker's right foot is



observed in the CCTV footage making small movements for approximately two minutes after Detective ▇ and Agent ▇ left cell #3, but does not show substantial movement from Mr. Parker. The CCTV footage supported that neither Detective ▇ nor Agent ▇ used reportable force on Mr. Parker or that he suffered any physical trauma in their presence.

Detective ▇ stated in his IAD interview as well as his case note that Mr. Parker was breathing since his chest was rising and falling, consistent with breathing. Detective ▇ stated he did not initiate CPR or other medical intervention because Mr. Parker was breathing and moving. At no point did Mr. Parker ever become conscious[21] despite Detective ▇ efforts to rouse him. Detective ▇ was adamant in his belief that Mr. Parker was either asleep or feigning sleep to ignore them. There is no BWC footage of Mr. Parker in this state and the CCTV footage is unable to provide clarity about this.

Doctor ▇ stated in her IAD interview that Mr. Parker would have appeared very drowsy or sleepy from the opioids and if he had spoken his speech likely would have been slurred. Doctor ▇ further explained that the Cocaine in Mr. Parker's system may have had some counter effect to the opioids which would have caused Mr. Parker to not appear to be suffering from an opioid overdose. This is consistent with Detective ▇ description of Mr. Parker and Doctor ▇ stated that what was described was plausible in the given time span.

The Metropolitan Police Academy (MPA) provided Detective ▇ Recruit Officer Training and Certification Program (ROTP) transcript, his most recent Professional Development Training (PDT) history and the accompanying PowerPoint and American Heart Association (AHA) modules for CPR/First Aid/TECC, which were presented for professional development training (PDT) in 2022. **(Attachment 38)** Detective ▇ last attended CPR/First Aid recertification on April 27, 2022, and Tactical Emergency Casualty Care (TECC) refresher training on September 23, 2022. During his ROTP in 2005, Detective ▇ attended two hours of "First Responders 2005," which he successfully completed. In 2005, MPA instructed recruit officers with material from *First Responder* (7th Edition) authored by ▇▇▇ ▇ ▇ ▇ and ▇▇▇▇▇ which had been published in 2005.

These combined trainings instructed members on how to treat and care for visibly injured persons, people with traumatic injuries, or people that are unresponsive, not breathing, and without a pulse, which would require the initiation of CPR and use of an automated external defibrillator (AED). In the AHA's training module for the adult "Out-of-Hospital Chain of Survival," it instructed that a care provider must first recognize that a person is in cardiac arrest as represented by a lack of consciousness as well as abnormal breathing. Next, check for responsiveness by tapping and shouting. If there is no response, activate the emergency response system. After that, check for breathing by watching the chest for rise and fall as well as check for a pulse. PowerPoint slides 8, 9, and 53 of the TECC instruction material provide specific instruction on how to check for responsiveness and monitoring a patient's mental state in the following manner:

---

21 As defined by Merriam-Webster's Dictionary, Conscious: 1: having mental faculties not dulled by sleep, faintness, or stupor.

*Alert* the patient is responsive and interactive, check if patient will respond to *Verbal* stimuli, check if patient will respond to *Painful* stimuli, and their level of *Unresponsiveness* to any stimulus (AVPU). The MPA in their curriculum review outlined the instructed response according to AHA guidelines for an unresponsive person (unconscious and not breathing), which is to activate the emergency response system, obtain or request an AED, and begin CPR. The MPA was not able to draw a conclusion as to whether Detective ▇▇ acted within the curriculum. **(See Attachment 38)**

Administration of first aid or medical treatment is governed in part by several MPD General Orders (G.O.):

According to G.O. 201.26 (Duties, Responsibilities and Conduct of Members of the Department) Part V, D, 1, d:

"All members shall:

d. When a prisoner is unconscious from any cause, members should immediately try to restore consciousness and call for an ambulance. An unconscious person shall not be placed in a cell but shall be immediately transported to a medical facility for examination by a doctor."

According to G.O. 307.02 (Naloxone Program) Part II, D, 1 & 2:

"D. Use

1. Naloxone-equipped members shall use naloxone only on affected persons or department canines believed to be suffering from an opioid overdose.
2. Naloxone-equipped members who have reason to believe that an affected person or department canine is suffering from an opioid overdose shall proceed as follows:
a. Notify the Office of Unified Communications (OUC) to request Fire and Emergency Medical Services (FEMS) response to provide emergency medical treatment.
b. Perform first responder treatment consistent with training. Remove the nasal spray device from its outer protective packaging and insert tip of the device into either of the subject's nostrils and press the plunger firmly. Additional doses should be administered, in accordance with training, if needed before FEMS arrives. c. When the subject begins returning to consciousness, notify the subject that naloxone was administered and that they might feel pain or withdrawal symptoms. d. Upon arrival of FEMS, report the subject's symptoms and all actions taken to facilitate appropriate emergency medical attention. e. Distribute the DBH overdose pocket card to the subject"

According to G.O. 307.03 (Automated External Defibrillator (AED)) Part II, C:

"C. Administering the AED

CPR/AED certified members shall prepare to apply the AED on persons who are unconscious/unresponsive and who are not breathing normally, as soon as practical. Early chest compressions and application of the AED is potentially lifesaving. Members shall:

1. If multiple responders are available, one member should provide uninterrupted chest compressions while the AED is being prepared for use.
2. Minimize interruptions in chest compressions. All interruptions in CPR shall be as short as possible and no greater than 10 seconds.
3. Remove any medication patches on the chest and wipe off any residue.
4. Apply AED pads directly to the person's chest as shown on the pad packaging. Members shall not place the AED pads over cardiac pacemakers or internal defibrillators (usually located in the upper left quadrant of the patient's chest).
5. Turn on AED and follow the voice prompts.
6. Stop chest compressions and clear the patient for rhythm analysis. Ensure no one touches the person while the AED performs its analysis.
7. If it indicates "shock advised," continue chest compressions while the AED is charging.
   a. Once the AED is charged, stop compressions and assertively state "I'm clear - everyone clear" and visualize that no one—including him or herself—is in contact with the person;
   b. Defibrillate by depressing the shock button;
   c. Once the shock is delivered, immediately resume chest compressions; and
   d. After two minutes of chest compressions, check for a pulse, repeat AED rhythm analysis, defibrillate if prompted to do so by the AED, and repeat these steps of rhythm analysis and defibrillation every two minutes.
8. If it indicates "no shock advised," immediately resume chest compressions for two minutes and then repeat AED rhythm analysis.
9. Upon arrival of DCFEMS, be guided by their direction. For continuity of medical care, the AED, connector, and pads will remain with the subject, unless otherwise directed by the paramedics."

According to G.O. 308.04 (Interacting with Mental Health Consumers) Part IV, A:

"IV. REGULATIONS

A. Members shall transport mental health consumers who are in MPD custody and who complain of illness or injury to a hospital in accordance with GO-PCA-502.07 (Medical Treatment and Hospitalization for Prisoners)."

According to G.O. 502.01 (Transportation and Searches of Prisoners) Part IV, D:

"D. Members shall transport arrestees/prisoners who complain of illness or injury to a hospital in accordance with GO-PCA-502.07 (Medical Treatment and Hospitalization of Prisoners)."

According to G.O. 502.07 (Medical Treatment and Hospitalization of Prisoners) Part 1 & III, A & Part IV A, 1, a through b:

### "I. POLICY

It is the policy of the Metropolitan Police Department (MPD) to provide prisoners who have sustained an injury or report an illness with timely medical care to ensure their safety and well being.

### III. REGULATIONS

A. Members shall transport prisoners who complain of illness or injury to a hospital in accordance with the procedures outlined in this order.

### IV. PROCEDURES

A. Need for Medical Treatment

Members shall immediately notify an official and request appropriate medical assistance when they become aware that a prisoner is injured or reporting an illness.
1. Members who suspect, observe, or have knowledge that an individual has swallowed drugs shall immediately contact the Office of Unified Communication (OUC) to request an ambulance transport for the individual to the nearest hospital.
a. Members shall not attempt to retrieve items swallowed by individuals.
b. In cases of drug ingestion where no medical treatment is recommended by the hospital and the prisoner is medically cleared, the prisoner shall be considered "AT RISK" when placed in a holding cell and observed no less than every ten (10) minutes."

According to G.O. 901.07 (Use of Force) Part II, A, 9, a through b:

"9. When force is used, members shall promptly conduct a visual and verbal check of the subject, to include checking vital signs when appropriate, to determine the need for medical care.
a. When a subject is injured, complains of pain, or demonstrates life-threatening symptoms, members shall immediately summon medical assistance and render first aid



consistent with the member's training as soon as safe and practical. Injured subjects shall be treated with dignity and respect and shall be properly cared for while awaiting the arrival of emergency medical personnel. Members may use discretion in handcuffing subjects who are suffering from life-threatening injuries and are clearly incapacitated. Whenever possible, un-cuffed subjects should be guarded by two members.
b. Members shall closely monitor subjects against whom force was used for signs that they require medical assistance, including but not limited to, subjects that are believed to be pregnant, children, elderly, or physically frail."

With the exception of G.O. 201.26, the other orders address a person in an obvious need of medical assistance whether requested or immediately obvious. In the case of using force, a member is compelled to perform an assessment of the subject of force. It has been clearly established that Mr. Parker never expressed a need for medical attention, was not subjected to reportable physical force, and was asked if he needed medical assistance upon entering the cellblock, which he refused. Mr. Parker was not observed or known to have ingested opioids until his autopsy, which would have required the administration of an opioid reversing medication such as Naloxone. Based on the accounts of Detective ▮▮▮ and Agent ▮▮▮ as well as the assessment of Doctor ▮▮▮ Mr. Parker's opioid overdose may not have been visibly apparent to anyone in the very onset which was nearly two hours prior the observations of Officers ▮▮▮ and ▮▮▮ There is no direct evidence that Mr. Parker was unresponsive per AHA guidelines, which is without a pulse and not breathing at the time Detective ▮▮▮ interacted with him or when he last observed him. Detective ▮▮▮ never considered any alternative explanation to his observation of Mr. Parker's behavior and thus did not perform additional checks upon Mr. Parker.

In accordance with the established training for CPR/First Aid/TECC, Detective ▮▮▮ was required to rouse an unconscious person and had the necessary training. The focal point of these trainings are for people known to have suffered or reported to be in medical distress. The degree to which a member believes a person is sleeping is entirely subjective. Detective ▮▮▮ believed Mr. Parker was sleeping, a form of unconsciousness. Detective ▮▮▮ tried to rouse Mr. Parker twice, watched for an observed chest rise and fall, and did a physical observation of Mr. Parker's body as trained. It was reasonable for Detective ▮▮▮ and Agent ▮▮▮ to believe Mr. Parker was asleep or ignoring them. Based on the Detective ▮▮▮ stated observations, the need for further medical care was not immediately apparent.

Irrespective of Detective ▮▮▮ observations or reasoning, when Mr. Parker did not wake Detective ▮▮▮ was required by policy to summon an ambulance after first attempting to restore consciousness to Mr. Parker. Detective ▮▮▮ relied too heavily on his visual observations and did not consider other possibilities, which caused him to stop short of summoning an ambulance. There is no evidence that Detective ▮▮▮ was

indifferent or malicious in his interaction with Mr. Parker. Detective ████ stated that Agent ████ also reportedly agreed with the belief Mr. Parker was sleeping or ignoring them since Mr. Parker was breathing normally, moving, and without physical trauma. Detective ████ had been told before entering the cellblock that Mr. Parker had expressed his refusal to speak with detectives and after his interaction was told that Mr. Parker had been cooperative and active. These other pieces of information should have been of concern to Detective ████ given the brief period of time between these contrasting interactions and descriptions of Mr. Parker.

Prior to February 2, 2023, Detective ████ had never met Mr. Parker and did not participate in his criminal investigation. Every action taken by Detective ████ after his interaction with Mr. Parker suggested that he believed Mr. Parker was alive before he left. Detective ████ spoke to Officer ████ after he visited with Mr. Parker and asked that he be contacted later before Mr. Parker was moved to another facility. Detective ████ titled his RMS case note as a first attempt then notated his efforts and observations which suggested that Mr. Parker was alive. There is no evidence to refute Detective ████ statements or any reason to doubt his or Agent ████ veracity. Detective ████ explanation of his visit with Mr. Parker has remained consistent.

There is no evidence that establishes Detective ████ knew Mr. Parker was in medical distress and purposefully neglected his duty to provide medical care for Mr. Parker. Detective ████ assessed Mr. Parker and erred in his belief about Mr. Parker's state. Detective ████ could have used more prudence in assessing Mr. Parker's well-being.

**Was there sufficient staffing in the cellblock on February 2, 2023?**

Yes. While each element's cellblock and capacity vary in size, the number of personnel is situation specific. The related special orders require that at least one member trained in the ability to use the Livescan device be present, to which there were two. The related order for searching prisoners requires two members be present, which there were. The cellblock had minimum staffing of two members. In addition, the station had a designated civilian customer service representative, Ms. ████ who was working and capable of handling citizen related matters within her purview. Sergeant ████ Officer ████ and SPO ████ while not full duty, were not precluded from interacting with the public and performing tasks unrelated to the cellblock in the station customer service area. SPO ████ was able to handle the administrative aspects of prisoner booking which could have allowed either Officers ████ or ████ to remain present in the cellblock. That day, there was a sergeant, four officers, and one civilian staffing the Second District's station/cellblock areas.

**Were the searches conducted of Mr. Parker sufficient or within policy?**

No. At least three searches of Mr. Parker were required up until his placement into a cell at the Second District. The members that placed Mr. Parker under arrest should have conducted a field search. A second field search should have been conducted by SPO

Per General Order 502.01, Part III, 6 & 8, define the following:

> "6. Field Search -- The removal and search of coats, jackets, shoes, and all extraneous layers of clothing down to a single layer of outer clothing (e.g., jeans, pants, shirt, dress) and the manipulation of clothing (e.g., running fingers under waistbands, including underwear, pulling them away from the body, pulling bra elastic away from the body) to facilitate the search of the suspect and the garments he/she is wearing, in accordance with Part V.B.1 of this order.

> 8. Full Custody Search -- A comprehensive search, conducted in the processing area at the station or Juvenile Processing Center (JPC) that includes all elements of the field search with the addition of a wand search and a B.O.S.S. chair search in accordance with Part V.B.2-3 of this order."



Mr. Parker's initial on-scene field search was completed by a federal member of CARFTF who was not subject to MPD's policies on searches. SPO ███████ arrived to the scene and initiated a search of Mr. Parker. SPO ██████ BWC ( ██████ BWC, 00:09:24, 07:04:58) captured his search of Mr. Parker, which entailed the patting, but not the entering of Mr. Parker's outer jacket pockets and rear pant pockets. Mr. Parker's front pant pockets were turned inside-out and already visible so they were not searched. SPO ███████ inserted his hands into the front pocket of Mr. Parker's hooded sweater and rubbed his right hand across the rear Mr. Parker's jacket to frisk underneath. SPO ███████ used both hands to frisk Mr. Parker's left leg. Lastly, he felt the top of Mr. Parker's hat. All items of Mr. Parker's clothing remained on his body.

Once at the Second District, SPO ███████ initiated another search of Mr. Parker. ( ██████ BWC, 01:05:23, 08:00:57) SPO ██████ searched the pockets of Mr. Parker's outer coat and the pockets of his hooded sweater. SPO ███████ located a small brown plastic bag in the left front pocket of the hooded sweater. The search continued with the search of the front and rear pockets of Mr. Parker's pants.

Officer ██████ was present for the search of Mr. Parker in the Second District cellblock. She spoke with Mr. Parker, but did not search him along with SPO ██████ or complete the B.O.S.S. chair and metal detector wand portions of the full custody search. Officer ██████ did pat down Mr. Parker's jacket and upper body before she placed him into the cell. ( ██████ BWC Video 1, 04:22, 08:03:50)

In their respective IAD interviews, SPO ██████ and Officer ██████ did not fully explain what field and full custody searches were. SPO ██████ stated he was unaware of the location of the B.O.S.S. chair or wand in the Second District, while Officer ██████ knew that neither had been completed. SPO ██████ offered that his searches were not perfect, but adequate. Officer ██████ stated her usual practice of collecting the prisoner from the vehicle and handling all of the cellblock/ station's duties for searching were interrupted because SPO ██████ had already entered the cellblock and commenced a search. When Office ██████ started fingerprinting Mr.

Parker she glanced over at the B.O.S.S. chair and reasoned that the booking process was too far along to go back and complete that task.

The searches by SPO ████ captured on BWC footage, were not in alignment with the policy guidelines and not adequate. While it is understandable that Officer ████ had a personal practice while operating the cellblock, she had the ultimate responsibility to ensure those in her custody are adequately and more importantly properly searched. Her reasoning falls because she was aware that Mr. Parker was not searched as he should have been. Though Officer ████ did not recall SPO ████ search she was still present and should have ensured the search was completed correctly.

## TRANSCRIPTIONS

On March 21, 2023 and December 11, 2023, Agent ██ submitted a request for transcription of the relevant audio to Diversified Reporting Services. A portion of the transcriptions were received by the IAD May 9, 2023, and the remainder on January 22, 2024, all will be provided on the report DVD.

## REVIEW BY THE UNITED STATES ATTORNEY'S OFFICE/ REVERSE GARRITY

The roles of Detective ██ and Agent ██ in the circumstances of Mr. Parker's in-custody death were referred to the USAO for review. On February 2, 2023, Commander John Knutsen of the IAD authorized reverse-Garrity for Officers ████ and ████ as well as Sergeant ████ since their related misconduct was deemed to be administrative in nature. On October 10, 2023, AUSA Truscott forwarded a Letter of Declination which informed the IAD that the USAO declined criminal prosecution of the Detective ██ and Agent ██ (See Attachment 8)

## CURRICULUM REVIEW

On November 20, 2023, Agent ██ sent a Curriculum Review request to the MPA pertaining to the actions undertaken by Detective ██ during this incident. Officer Carolyn Totaro of the MPA stated the following verbatim: (See Attachment 38)

### Introduction:

This is a curriculum review and not a tactical analysis. This curriculum review is based upon information provided by the Internal Affairs Division at the time of request, and does not draw any conclusions relative to any findings or recommendations. I have reviewed the provided CCTV camera footage and I have read the synopsis provided by IAD concerning the incident on February 2, 2023, which occurred at the Metropolitan Police Department's 2nd Police District cellblock, located at 3320 Idaho Ave, NW.

The CCTV footage and synopsis support that a male arrestee/decedent was housed in the 2nd District cellblock and appeared to be in the cell alone at the time of the incident. While in the secured cellblock room, the arrestee/decedent used provided toilet paper to

place over the CCTV camera. Moments later, the toilet paper appeared to have fallen showing the arrestee/decedent standing and putting his jacket on. Shortly afterwards, the arrestee/decedent fell backwards. CCTV cameras show two plainclothes members approaching the arrestee/decedent's cell door and gaining entry.

**Related Instruction:**

Regarding basic life support, the Metropolitan Police Academy instructs members every two years, under the American Heart Association, that persons who are unresponsive (unconscious and not breathing) are to activate the emergency response system and get an Automated External Defibrillator (AED) to the scene. Members are taught that while the emergency response is activated to begin CPR with 5 cycles of 30 compressions and two breaths, on an unconscious person. Members are also taught that if the persons are observing agonal breathing, that they may repeat the same process with the emergency response system and begin CPR in the same.

Regarding general instruction, the Metropolitan Police Academy's Recruit Training Program's Block 6.2 lesson plan (Handling Prisoners), members are taught that if a member suspects, observes, or otherwise has knowledge that an individual has swallowed drugs, an ambulance must be requested through OUC. Additionally, members a taught that if an injured or ill prisoner needs immediate medical care, the on-scene member must relay this over the radio to the Office of Unified Communications (OUC).

From a review of the CCTV footage and synopsis provided, no conclusion could be made whether or not the members acted within the curriculum.

## SUMMARY AND CONCLUSIONS

Based upon the evidence obtained during this investigation, the following facts have been established:

- On February 2, 2023, approximately 06:43 hours, CARFTF members apprehended and arrested Mr. Parker for a felony warrant.

- Mr. Parker was searched by a member of CARFTF, DHS Agent ▮▮▮▮

- An MPD prisoner transport vehicle was operated by SPO ▮▮▮▮ who transported Mr. Parker to the Second District.

- Captain ▮▮▮▮▮ was the Second District Watch Commander and failed to conduct a cellblock inspection at the start of the day work tour.

- Detective ▮▮ volunteered to conduct the recorded interrogation of Mr. Parker.

- Sergeant ███████ Officer ███████ and Officer ███████ were each assigned to the cellblock.

- SPO ███████ arrived with Mr. Parker at the Second District at 07:56 hours; they were accepted into the Second District cellblock by Officer ███████

- An additional search was conducted; however, they failed to follow protocol to include the use of the B.O.S.S. chair or metal detector to search Mr. Parker.

- Approximately 08:32 hours, Mr. Parker obscured his cell's door and CCTV camera, which was noticed and challenged by Officer ███████ Mr. Parker explained he obscured the cell door and camera to provide him with privacy while he used the in-cell toilet.

- Approximately 08:36 hours, Mr. Parker removed the items obscuring the cell door and camera.

- Approximately 08:39 hours, Mr. Parker was visibly unsteady on his feet as he stood in his cell. He eventually collapsed, which went unobserved.

- Approximately 08:41 hours, Detective ███████ and Agent ███████ entered the Second District's cellblock and observed Mr. Parker in an unconscious state on the floor of the cell.

- Detective ███████ knocked on the cell door and called out to Mr. Parker. Mr. Parker never awoke or became alert.

- Detective ███████ entered Mr. Parker's cell on two occasions and shook Mr. Parker's right foot/leg which did not awake or restore consciousness to Mr. Parker.

- Detective ███████ did not request medical assistance as required by policy before Mr. Parker's consciousness was restored.

- Approximately 08:44 hours, Detective ███████ secured the cell leaving Mr. Parker on the floor of cell #3, and returned to the cellblock vestibule with Agent ███████

- While at the vestibule window, Detective ███████ spoke with Officer ███████ Neither Detective ███████ nor Agent ███████ relayed information to the station members or the station supervisor about Mr. Parker's physical state. Detective ███████ and Agent ███████ exited the cellblock approximately 08:46 hours.

- Approximately 09:08 hours, Officers ███████ and ███████ entered the cellblock to process and secure a separate prisoner, but did not make a physical check of Mr. Parker in the adjoining cell.

- Approximately 09:08 hours, Officers ▮▮▮ and ▮▮▮ entered the cellblock to process and secure a separate prisoner, but did not make a physical check of Mr. Parker in the adjoining cell.

- Approximately 09:15 hours, Detective ▮▮ composed an RMS case note about the interaction with Mr. Parker, which described Mr. Parker was alive, asleep, uncooperative and not responsive.

- In his IAD interview, Detective ▮▮ explained he believed Mr. Parker was asleep or ignoring him through passive-aggressiveness since he had recently been cooperative with the station members. Since Mr. Parker moved slightly, pulled his leg and was breathing, he had no reason to believe Mr. Parker was in medical distress.

- The card reader and CCTV evidence showed that no MPD member entered the cellblock from 09:21 hours to 10:15 hours, until Officers ▮▮▮ and ▮▮▮ retrieved a separate prisoner.

- Approximately 10:25 hours, Officer ▮▮▮ noticed that Mr. Parker was unresponsive on the floor of cell #3 and alerted Officer ▮▮▮

- Sergeant Denise ▮▮▮ did not ensure that protocols were followed, specifically a full-custody search of Mr. Parker and a physical check of the cellblock had not been made for 54 minutes or upon Mr. Parker for one hour and thirty-six minutes.

- Officer ▮▮▮ and ▮▮▮ immediately requested DCFEMS for Mr. Parker and additional MPD members responded to the cellblock to attempt to resuscitate Mr. Parker.

- Mr. Parker was pronounced deceased at 11:08 hours inside of the Second District's cellblock.

- On April 27, 2023, the OCME forwarded the completed autopsy report, to include the toxicology report, to the MPD. Doctor ▮▮▮ determined Mr. Parker's cause of death to be the result of, "Combined toxic effects of Cocaine, Fentanyl, Fluorofentanyl, and Heroin." Mr. Parker's manner of death was ruled an accident. Doctor ▮▮▮ determined Mr. Parker had ingested Heroin as recently as one hour prior to his death in a manner which was quickly absorbed and caused his collapse within minutes. She further conveyed that Mr. Parker may not have appeared to be suffering from an opioid overdose and that Detective ▮▮▮ observations as described were plausible given how recent to Mr. Parker's collapse Detective ▮▮ observed him.

## FINDINGS

It is recommended that the allegation that Detective ███████ engaged in prohibited conduct, as enumerated in General Order 120.21 Part IV, Attachment A, 16, "Failure to obey orders or directives issued by the Chief of Police," be classified as **SUSTAINED**. This misconduct is further defined as:

- Violation of General Order 201.26 (Duties, Responsibilities and Conduct of Members of the Department) Part V, D, 1, d, which states, in part: "All members shall: d. When a prisoner is unconscious from any cause, members should immediately try to restore consciousness and call for an ambulance. An unconscious person shall not be placed in a cell but shall be immediately transported to a medical facility for examination by a doctor."

    - Specifically, on February 2, 2023, Detective ███ was not able to restore consciousness to Mr. Parker, a prisoner in MPD custody, and did not summon an ambulance to ensure he was immediately transported to a medical facility for examination by a doctor.

## MISCELLANEOUS

On February 2, 2023, Agent David ███████ of the IAD generated Incident Summary (IS) numbers in this case. In accordance with the Metropolitan Police Department Commencement of Discipline and Command Staff Appointment Act of 2014, the **90th business day** in this case is **February 21, 2024**. However, in accordance with the Comprehensive Policing and Justice Reform Amendment Act of 2022, the commencement of discipline timelines established by the Metropolitan Police Department Commencement of Discipline and Command Staff Appointment Act of 2014 no longer apply.

*Gregory Hill*

Agent
Internal Affairs Division

## ATTACHMENTS

1) Second District CID roll call
2) RMS report for CCN 22-107181
3) RMS Case Note authored by Detective ▮▮ for CCN 22-107-181
4) Second District Card Access Logs
5) RMS report for CCN 23-017-894 and PD120 Death Report
6) Incident Summary Sheet
7) PD77 for Detective ▮▮
8) USAO Notification
9) PD42s (Injury or Illness Report) for the involved members
10) PD 854 of Autopsy and completed OCME Autopsy Report
11) PD854 Next of Kin notification
12) PD854 Interview of Detective ▮▮
13) ATF provided redacted copy of ATF Agent ▮▮ Report of Investigation
14) PD854 Interview of Captain ▮▮
15) PD854 Interview of Captain ▮▮
16) PD854 Interview of Lieutenant ▮▮
17) PD854 Interview of Senior Sergeant ▮▮
18) PD854 Interview of Detective ▮▮
19) PD854 Interview of Lieutenant ▮▮
20) PD854 Interview of Sergeant Denise ▮▮
21) PD854 Interview of Officer ▮▮
22) PD854 Interview of Officer ▮▮
23) PD854 Interview of Senior Police Officer ▮▮
24) PD854 Interview of Senior Police Officer ▮▮
25) PD854 Interview of Civilian ▮▮
26) PD854 Interview of Detective ▮▮
27) PD854 Interview of Sergeant ▮▮
28) PD854 Interview of Detective ▮▮
29) PD854 Interview of Detective ▮▮
30) PD854 Interview of USSSUD Officer ▮▮
31) PD854 Interview of USSUD Officer ▮▮
32) PD854 Interview of Mr. ▮▮
33) PD854 Interview of Ms. ▮▮
34) Copy of Second District Prisoner ledger
35) PD854 BWC Review
36) PD854 CCTV Review
37) PD854 OUC Review
38) MPA Curriculum Review, training material and Detective ▮▮ training record

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Marquez Antonio Jackson, et al.
_____
Plaintiff

vs.

Case Number    2025-CAB-000601

Lt. Ronald Bridges
_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kristen M. Mack
_____
Name of Plaintiff's Attorney

2514 North Charles Street
_____
Address
Baltimore, MD 21218

(301) 461-1040
_____
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date _____ February 3, 2025

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828를 전화주십시요     የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
                                    Demandante

        contra

                                                Número de Caso: _____

_____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

        Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

        A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                                _SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

                                Por: _____

_____
Dirección                                                   Subsecretario

_____
                                Fecha _____

_____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화주십시요         የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

        IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

        Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Marquez Antonio Jackson, et al.
_____
                                    Plaintiff

                vs.

                                              Case Number    2025-CAB-000601

District of Columbia
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kristen M. Mack
_____
Name of Plaintiff's Attorney

2514 North Charles Street
_____
Address
Baltimore, MD 21218

(301) 461-1040
_____
Telephone

_Clerk of the Court_

By _____
                        Deputy Clerk

Date _____
                        February 3, 2025

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오       የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
                                    Demandante
            contra
                                                    Número de Caso: _____

_____
                                    Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                            _SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

                                    Por: _____

_____
Dirección                                           Subsecretario

_____
                                    Fecha _____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을원하시면(202) 879-4828 로전화해주십시오        የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

Superior Court of the District of Columbia
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Marquez Antonio Jackson, et al.
_____
Plaintiff

vs.                                          Case Number    2025-CAB-000601

Officer Lavida Delozier
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kristen M. Mack
_____
Name of Plaintiff's Attorney

2514 North Charles Street
_____
Address
Baltimore, MD 21218

(301) 461-1040
_____
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date _____  February 3, 2025

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828를 전화주십시요       የትርጉም እርዳታ ከፈለጉ (202) 879-4828  ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                    Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
                                                    Demandante
         contra
                                                                      Número de Caso: _____

_____
                                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                                    _SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

                                        Por: _____
_____                    Subsecretario
Dirección

_____     Fecha _____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화주십시오         የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Marquez Antonio Jackson, et al.
_____
                                                    Plaintiff
                    vs.                                                          Case Number    2025-CAB-000601

Officer John Doe #1
_____
                                                    Defendant

### SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kristen M. Mack
_____
Name of Plaintiff's Attorney                                    Clerk of the Court

2514 North Charles Street
_____
Address                                                  By _____
Baltimore, MD 21218                                                              Deputy Clerk

(301) 461-1040
_____
Telephone                                                Date _____February 3, 2025_____
如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화주십시오    ፣ዳ'ክርፐ' ታርト로 ለማግኘት (202) 879-4828 ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                          Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
                                    Demandante

              contra

                                              Número de Caso: _____

_____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                              _SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

                              Por: _____

_____
Dirección                                          Subsecretario

_____
                              Fecha _____

_____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을필요하시면 (202) 879-4828 로전화해주십시요         የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Marquez Antonio Jackson, et al.
_____
                                    Plaintiff

vs.                                              Case Number    2025-CAB-000601

Sergeant Denise Jackson
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kristen M. Mack
_____
Name of Plaintiff's Attorney

2514 North Charles Street
_____
Address
Baltimore, MD 21218

(301) 461-1040
_____
Telephone

Clerk of the Court

By _____
                          Deputy Clerk

Date _____ February 3, 2025

如需翻译,请打电话 (202) 879-4828       Veuillez appeler au (202) 879-4828 pour une traduction       Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주세요        የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                                           Super. Ct. Civ. R. 4




**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
                                    Demandante

              contra

                                                        Número de Caso: _____

_____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

        Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

        A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                        _SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

                                   Por: _____

_____
Dirección                                                Subsecretario

_____
                                   Fecha _____

_____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을원하시면(202) 879-4828 로전화해주십시오        የtranslation ትርጉም ለማግኘት  (202) 879-4828  ይደውሉ

        IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

        Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Marquez Antonio Jackson, et al.
_____
Plaintiff

vs.

Officer Alicia Jenkins
_____
Defendant

Case Number   2025-CAB-000601

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kristen M. Mack
_____
Name of Plaintiff's Attorney

2514 North Charles Street
_____
Address
Baltimore, MD 21218

(301) 461-1040
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date _____ February 3, 2025

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시요       የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español




**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____

Demandante

contra

Número de Caso: _____

_____

Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____
Nombre del abogado del Demandante

_____
Dirección

_____
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: _____

Subsecretario

Fecha _____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828 로 전화주십시오     የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Marquez Antonio Jackson, et al.
_____
                                        Plaintiff

                    vs.                                    Case Number   2025-CAB-000601

Detective Oliver Lake
_____
                                        Defendant

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kristen M. Mack
_____                    _Clerk of the Court_
Name of Plaintiff's Attorney

2514 North Charles Street
_____          By _____
Address
Baltimore, MD 21218                                                    Deputy Clerk

(301) 461-1040
_____          Date        February 3, 2025
Telephone
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화주세요    ኢትዮጵያ፣ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

                    See reverse side for Spanish translation
                    Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                    Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
                                    Demandante

              contra

                                                      Número de Caso: _____

_____
                                    Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                              *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                    Por: _____

_____
Dirección                                              Subsecretario

_____
                                    Fecha _____

_____
Teléfono
如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을원하시면 (202) 879-4828 로 전화해주십시요     የምናፈርገን ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Marquez Antonio Jackson, et al.
_____
                                      Plaintiff

                    vs.

Captain Tatjana Savoy
_____          Case Number    2025-CAB-000601
                                      Defendant

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kristen M. Mack
_____
Name of Plaintiff's Attorney

2514 North Charles Street
_____
Address
Baltimore, MD 21218

(301) 461-1040
_____
Telephone

                                      _Clerk of the Court_

                                      By _____
                                                    Deputy Clerk

                                      Date _____ February 3, 2025

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주세요    ያማርኛ ትርጉም ለማግኘት (202) 879-4828    ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                      Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
                              Demandante

        contra

                              Número de Caso: _____

_____
                              Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                        _SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

                              Por: _____
_____
Dirección                              Subsecretario

_____
                              Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을원하시면(202)879-4828로전화해주십시오      የማtrጉም ትርጉም ለማግኘት (202) 879-4828  ይደውሉ።

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                        Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Marquez Antonio Jackson, et al.
_____
                                                    Plaintiff

                        vs.                                                Case Number    2025-CAB-000601

Sergeant Elizabeth Wong
_____
                                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kristen M. Mack
_____
Name of Plaintiff's Attorney

2514 North Charles Street
_____
Address
Baltimore, MD 21218

(301) 461-1040
_____
Telephone

_Clerk of the Court_

By _____
                                    Deputy Clerk

Date            February 3, 2025

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주세요    ታስፈልግ ትርጉም ለማግኘት (202) 879-4828   ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                                    Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

Por: _____

_____
Dirección                                              Subsecretario

_____
Fecha _____

_____
Teléfono
如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을원하시면(202) 879-4828로전화해주십시오    የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

eFiled
3/5/2025 3:13:03 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

### Civil Division

| | |
|---|---|
| Marquez Antonio Jackson, et al | : |
| **Plaintiffs** | : |
| | : |
| **Vs.** | : Case No.2025 CAB-000601 |
| | : |
| **District of Columbia** | : |
| **Defendant** | : |
| | : |

## AFFIDAVIT OF SERVICE BY PRIVATE PROCESS

I, Konstantinos Tsirikos, having been duly authorized to effect service in the above-captioned case, state that I am over the age of eighteen, and not a party to the aforementioned action.

Recipient:        Lt. Ronald Bridges
                3320 Idaho Ave, NW
                Washington, DC 200016

Documents served:    Summons
                Complaint and Jury Demand
                Initial Order
                Civil-Division-Civil Actions Branch Information Sheet
                Notice to Court (Praecipe) Attaching Exhibit 1 to Plaintiff's
Complaint
                Exhibit
                Plaintiff's First Set of Interrogatories to Defendant District of
Colombia
                Plaintiff's First Set of Requests for Production of Documents to
Defendant District of Columbia

Service was effected Thursday, February 27th, 2025, at 1:33 p.m. by hand-delivering the documents to Captain Ronald Bridges, Badge # C-151, personally, at his office with the MPD Special Operations Division, located at 2850 New York Ave, NE, Washington, DC 20002.

**I declare under penalty of perjury that the foregoing is true and correct.**
**Executed on March 3, 2025.**
Date: 3-3-25

_____
                        Konstantinos Tsirikos, Affiant

C/o J&M Delivery, Inc
P.O. Box 34097
Bethesda, MD 20827
301.530.5999

eFiled
3/5/2025 3:13:03 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

Civil Division

Marquez Antonio Jackson, et al                        :
    Plaintiffs                                                  :
                                                                  :
                                                                  :
    Vs.                                                        : Case No.2025 CAB-000601
                                                                  :
District of Columbia                                        :
    Defendant                                              :
                                                                  :

## AFFIDAVIT OF SERVICE BY PRIVATE PROCESS

    I, Konstantinos Tsirikos, having been duly authorized to effect service in the above-captioned case, state that I am over the age of eighteen, and not a party to the aforementioned action.

Recipient:      Officer Lavida DeLozier
                3320 Idaho Ave, NW
                Washington, DC 200016

Documents served:    Summons
                        Complaint and Jury Demand
                        Initial Order
                        Civil-Division-Civil Actions Branch Information Sheet
                        Notice to Court (Praecipe) Attaching Exhibit 1 to Plaintiff's
Complaint
                        Exhibit
                        Plaintiff's First Set of Interrogatories to Defendant District of
Colombia
                        Plaintiff's First Set of Requests for Production of Documents to
Defendant District of Columbia

    Service was effected Monday, February 24th, 2025, at 2:25 p.m. by hand-delivering the documents to Sergeant Elizabeth Wong, Badge #S-948, personally, at her office with the MPD Second District Station located at 3320 Idaho Ave, NW, Washington, DC 20016. Sgt Wong stated that she is authorized to accept service on behalf of Officer Lavida DeLozier.

    **I declare under penalty of perjury that the foregoing is true and correct.**
**Executed on March 3, 2025.**
Date:  3-3-25

                                      Konstantinos Tsirikos, Affiant

C/o J&M Delivery, Inc
P.O. Box 34097
Bethesda, MD 20827
301.530.5999

eFiled
3/5/2025 3:13:03 PM
Superior Court
of the District of Columbia

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**

MARQUEZ ANTONIO JACKSON, *et al.*,

    *Plaintiffs,*

    v.

DISTRICT OF COLUMBIA, *et al.*

    *Defendants.*

Case No. 2025-CAB-000601

Associate Judge Ebony M. Scott

## AFFIDAVIT OF SERVICE

I, Kristen Mack, hereby certify that I am over the age of eighteen years and not a party to this action. Pursuant to Rule 4 of the Superior Court Rules of Civil Procedure for the District of Columbia, on March 4, 2025, service of process was made upon Defendant District of Columbia by emailing a copy of the Complaint and Jury Demand, Writ of Summons, Civil Information Sheet, Initial Order, Notice to Court (Praecipe) Attaching Exhibit 1 to Plaintiffs' Complaint, Plaintiff's First Set of Interrogatories to Defendant District of Columbia, Plaintiff's First Set of Request for Production of Documents to Defendant District of Columbia, and Certificate Regarding Discovery to the Office of the Attorney General at oagserviceofprocess@dc.gov. Receipt was confirmed via email on March 4, 2025.

I DO SOLEMNLY DECLARE AND AFFIRM under the penalties of perjury and upon personal knowledge that the contents of the foregoing are true and correct.

Respectfully submitted,

*/s/ Kristen Mack*

Kristen Mack (Bar No. 90008006)
HANSEL LAW, P.C.
2514 North Charles Street
Baltimore, MD 21218
Tel: (301) 461-1040
Fax: (443) 451-8606
kmack@hansellaw.com

eFiled
3/5/2025 3:13:03 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

### Civil Division

|  |  |
|---|---|
| Marquez Antonio Jackson, et al | : |
| **Plaintiffs** | : |
|  | : |
| Vs. | : Case No.2025 CAB-000601 |
|  | : |
| District of Columbia | : |
| **Defendant** | : |
|  | : |

### AFFIDAVIT OF SERVICE BY PRIVATE PROCESS

I, Konstantinos Tsirikos, having been duly authorized to effect service in the above-captioned case, state that I am over the age of eighteen, and not a party to the aforementioned action.

Recipient:    Sergeant Denise Jackson
              3320 Idaho Ave, NW
              Washington, DC 200016

Documents served:   Summons
                    Complaint and Jury Demand
                    Initial Order
                    Civil-Division-Civil Actions Branch Information Sheet
                    Notice to Court (Praecipe) Attaching Exhibit 1 to Plaintiff's
                    Complaint
                    Exhibit
                    Plaintiff's First Set of Interrogatories to Defendant District of
                    Colombia
                    Plaintiff's First Set of Requests for Production of Documents to
                    Defendant District of Columbia

Service was effected Tuesday, February 25th, 2025, at 12:04 a.m. by hand-delivering the documents to Sgt Denise Jackson, personally, at her office with the MPD Sixth District Station located at 5002 Hayes St, NE, Washington, DC 20019.

**I declare under penalty of perjury that the foregoing is true and correct.**
**Executed on March 3, 2025.**
Date: 3-3-25

_____
Konstantinos Tsirikos, Affiant

C/o J&M Delivery, Inc
P.O. Box 34097
Bethesda, MD 20827
301.530.5999

eFiled
3/5/2025 3:13:03 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

### Civil Division

Marquez Antonio Jackson, et al     :
    **Plaintiffs**     :
    :
     Vs.     : **Case No.2025 CAB-000601**
    :
District of Columbia     :
    **Defendant**     :
    :

### AFFIDAVIT OF SERVICE BY PRIVATE PROCESS

I, Konstantinos Tsirikos, having been duly authorized to effect service in the above-captioned case, state that I am over the age of eighteen, and not a party to the aforementioned action.

Recipient:     Officer Alicia Jenkins
          3320 Idaho Ave, NW
          Washington, DC 200016

Documents served:     Summons
                 Complaint and Jury Demand
                 Initial Order
                 Civil-Division-Civil Actions Branch Information Sheet
                 Notice to Court (Praecipe) Attaching Exhibit 1 to Plaintiff's
Complaint
                 Exhibit
                 Plaintiff's First Set of Interrogatories to Defendant District of
Colombia
                 Plaintiff's First Set of Requests for Production of Documents to
Defendant District of Columbia

Service was effected Monday, February 24th, 2025, at 2:25 p.m. by hand-delivering the documents to Sergeant Elizabeth Wong, Badge #S-948, personally, at her office with the MPD Second District Station located at 3320 Idaho Ave, NW, Washington, DC 20016. Sgt Wong stated that she is authorized to accept service on behalf of Officer Alicia Jenkins.

**I declare under penalty of perjury that the foregoing is true and correct. Executed on March 3, 2025.**
Date: 3-3-25

                                             Konstantinos Tsirikos, Affiant

C/o J&M Delivery, Inc
P.O. Box 34097
Bethesda, MD 20827
301.530.5999

eFiled
3/5/2025 3:13:03 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

### Civil Division

|  |  |
|---|---|
| Marquez Antonio Jackson, et al | : |
| **Plaintiffs** | : |
|  | : |
| **Vs.** | : Case No.2025 CAB-000601 |
|  | : |
| District of Columbia | : |
| **Defendant** | : |
|  | : |

### AFFIDAVIT OF SERVICE BY PRIVATE PROCESS

I, Konstantinos Tsirikos, having been duly authorized to effect service in the above-captioned case, state that I am over the age of eighteen, and not a party to the aforementioned action.

Recipient:     Detective Oliver C. Lake
              3320 Idaho Ave, NW
              Washington, DC 200016

Documents served:    Summons
                    Complaint and Jury Demand
                    Initial Order
                    Civil-Division-Civil Actions Branch Information Sheet
                    Notice to Court (Praecipe) Attaching Exhibit 1 to Plaintiff's
Complaint
                    Exhibit
                    Plaintiff's First Set of Interrogatories to Defendant District of
Colombia
                    Plaintiff's First Set of Requests for Production of Documents to
Defendant District of Columbia

Service was effected Wednesday, February 26th, 2025, at 10:35 p.m. by hand-delivering the documents to Det. Oliver C. Lake, Badge # D21577, personally, at his office with the MPD Second District Station located at 3320 Idaho Ave, NW, Washington, DC 20016.

**I declare under penalty of perjury that the foregoing is true and correct. Executed on March 3, 2025.**
Date:  3-3-25

Konstantinos Tsirikos, Affiant

C/o J&M Delivery, Inc
P.O. Box 34097
Bethesda, MD 20827
301.530.5999

eFiled
3/5/2025 3:13:03 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

### Civil Division

| | |
|---|---|
| Marquez Antonio Jackson, et al | : |
|     Plaintiffs | : |
| | : |
|       Vs. | : Case No.2025 CAB-000601 |
| | : |
| District of Columbia | : |
|     Defendant | : |
| | : |

### AFFIDAVIT OF SERVICE BY PRIVATE PROCESS

I, Konstantinos Tsirikos, having been duly authorized to effect service in the above-captioned case, state that I am over the age of eighteen, and not a party to the aforementioned action.

Recipient:    Captain Tatjana Savoy
            3320 Idaho Ave, NW
            Washington, DC 200016

Documents served:   Summons
                   Complaint and Jury Demand
                   Initial Order
                   Civil-Division-Civil Actions Branch Information Sheet
                   Notice to Court (Praecipe) Attaching Exhibit 1 to Plaintiff's
Complaint
                   Exhibit
                   Plaintiff's First Set of Interrogatories to Defendant District of
Colombia
                   Plaintiff's First Set of Requests for Production of Documents to
Defendant District of Columbia

Service was effected Monday, February 24th, 2025, at 2:25 p.m. by hand-delivering the documents to Sergeant Elizabeth Wong, Badge #S-948, personally, at her office with the MPD Second District Station located at 3320 Idaho Ave, NW, Washington, DC 20016. Sgt. Wong stated that she is authorized to accept service on behalf of Captain Tatjana Savoy.

**I declare under penalty of perjury that the foregoing is true and correct. Executed on March 3, 2025.**
Date: 3-3-25

                                               Konstantinos Tsirikos, Affiant

C/o J&M Delivery, Inc
P.O. Box 34097
Bethesda, MD 20827
301.530.5999

eFiled
3/5/2025 3:13:03 PM
Superior Court
of the District of Columbia

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | |
|---|---|
| Marquez Antonio Jackson, et al | : |
| **Plaintiffs** | : |
| | : |
| | : |
| **Vs.** | : Case No.2025 CAB-000601 |
| | : |
| District of Columbia | : |
| **Defendant** | : |
| | : |

## AFFIDAVIT OF SERVICE BY PRIVATE PROCESS

I, Konstantinos Tsirikos, having been duly authorized to effect service in the above-captioned case, state that I am over the age of eighteen, and not a party to the aforementioned action.

Recipient:     Sergeant Elizabeth Wong
                     3320 Idaho Ave, NW
                     Washington, DC 200016

Documents served:     Summons
                                 Complaint and Jury Demand
                                 Initial Order
                                 Civil-Division-Civil Actions Branch Information Sheet
                                 Notice to Court (Praecipe) Attaching Exhibit 1 to Plaintiff's
Complaint
                                 Exhibit
                                 Plaintiff's First Set of Interrogatories to Defendant District of
Colombia
                                 Plaintiff's First Set of Requests for Production of Documents to
Defendant District of Columbia

Service was effected Monday, February 24th, 2025, at 2:25 p.m. by hand-delivering the documents to Sergeant Elizabeth Wong, Badge #S-948, personally, at her office with the MPD Second District Station located at 3320 Idaho Ave, NW, Washington, DC 20016.

**I declare under penalty of perjury that the foregoing is true and correct.**
**Executed on March 3, 2025.**
Date: 3-3-25

_____
Konstantinos Tsirikos, Affiant

C/o J&M Delivery, Inc
P.O. Box 34097
Bethesda, MD 20827
301.530.5999



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Ronald Bridges
3320 Idaho Avenue NW
Washington DC  20016

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**    Marquez Antonio Parker et al. v. District of Columbia et al.

**To:**    Ronald Bridges                **Case Number:**    2025-CAB-000601

**NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE**

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/16/2025** at **9:30 AM** in **Remote Courtroom 219.**

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

Accessibility and Language Access Information for Superior Court

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ እናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲሲ ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

District of Columbia
c/o Mayor and Office of the Attorney General
400 6th Street NW
Washington DC  20001

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   Marquez Antonio Parker et al. v. District of Columbia et al.

**To:**   District of Columbia            **Case Number:**    2025-CAB-000601

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE
Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/16/2025** at **9:30 AM** in **Remote Courtroom 219.**

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

Accessibility and Language Access Information for Superior Court

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ እናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲሲ ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Lavida Delozier
3320 Idaho Avenue NW
Washington DC  20016

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   Marquez Antonio Parker et al. v. District of Columbia et al.

**To:**   Lavida Delozier                                    **Case Number:**    2025-CAB-000601

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/16/2025** at **9:30 AM** in **Remote Courtroom 219.**

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice.  For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመሄብኘት መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

John Doe #1
3320 Idaho Avenue NW
Washington DC  20016

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   Marquez Antonio Parker et al. v. District of Columbia et al.

**To:**   John Doe #1                                    **Case Number:**   2025-CAB-000601

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/16/2025** at **9:30 AM** in **Remote Courtroom 219.**

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

    Link: dccourts.webex.com/meet/ctb219

    Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
    Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice.  For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፦**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ እናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Denise Jackson
3320 Idaho Avenue NW
Washington DC  20016

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**    Marquez Antonio Parker et al. v. District of Columbia et al.

**To:**   Denise Jackson                                    **Case Number:**    2025-CAB-000601

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/16/2025** at **9:30 AM** in **Remote Courtroom 219.**

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

Link: dccourts.webex.com/meet/ctb219

Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

Accessibility and Language Access Information for Superior Court

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice.  For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ለልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ እናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Alicia Jenkins
3320 Idaho Avenue NW
Washington DC  20016

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   Marquez Antonio Parker et al. v. District of Columbia et al.

**To:**   Alicia Jenkins                                       **Case Number:**   2025-CAB-000601

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/16/2025** at **9:30 AM** in **Remote Courtroom 219**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice.  For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ እናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Oliver C. Lake
3320 Idaho Avenue NW
Washington DC  20016

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   Marquez Antonio Parker et al. v. District of Columbia et al.

**To:**   Oliver C. Lake                    **Case Number:**    2025-CAB-000601

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/16/2025** at **9:30 AM** in **Remote Courtroom 219.**

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

Accessibility and Language Access Information for Superior Court

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice.  For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፦**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ እናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በማኅብ�ትን መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Kristen Marie Mack
HANSEL LAW PC
2514 N Charles Street
Baltimore MD  21218

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   Marquez Antonio Parker et al. v. District of Columbia et al.

**To:**   Kristen Marie Mack                          **Case Number:**   2025-CAB-000601

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/16/2025** at **9:30 AM** in **Remote Courtroom 219.**

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

Accessibility and Language Access Information for Superior Court

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Kristen Marie Mack
HANSEL LAW PC
2514 N Charles Street
Baltimore MD  21218

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   Marquez Antonio Parker et al. v. District of Columbia et al.

**To:**   Kristen Marie Mack                    **Case Number:**    2025-CAB-000601

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/16/2025** at **9:30 AM** in **Remote Courtroom 219.**

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice.  For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Tatjana Savoy
3320 Idaho Avenue NW
Washington DC  20016

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   Marquez Antonio Parker et al. v. District of Columbia et al.

**To:**   Tatjana Savoy                          **Case Number:**   2025-CAB-000601

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/16/2025** at **9:30 AM** in **Remote Courtroom 219.**

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.


**Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice.  For more information, visit https://www.dccourts.gov/language-access.


Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.


**Servicios de interpretación y traducción:**


Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.


El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.


**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**


የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ለልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ እና/ት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።


የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Elizabeth Wong
3320 Idaho Avenue NW
Washington DC  20016

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   Marquez Antonio Parker et al. v. District of Columbia et al.

**To:**   Elizabeth Wong                               **Case Number:**    2025-CAB-000601

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **05/16/2025** at **9:30 AM** in **Remote Courtroom 219.**

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፦**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ እናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመሄብኘት መስጠት ይችላሉ።