## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MARQUEZ ANTONIO JACKSON,** *et al.*, <br><br> *Plaintiffs*, <br><br> **v.** <br><br> **DISTRICT OF COLUMBIA,** *et al.*, <br><br> *Defendants*. | **Civil Action No. 25-cv-889 (DLF)** |

## DISTRICT DEFENDANTS' REPLY IN SUPPORT OF
## THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

### INTRODUCTION

Defendants District of Columbia (the District), Detective Oliver C. Lake, Officer Alicia Jenkins, Officer Lavida DeLozier, Sergeant Denise Jackson, Captain Tatjana Savoy, Sergeant Elizabth Wong, and Lieutenant Ronald Bridges (the District Defendants) file this reply in support of their motion to dismiss Plaintiffs' Complaint. Plaintiffs' opposition[1] largely misses the mark, in some places relying on case law that is inapplicable or does not support their position and other places failing to explain how the facts they allege, and restate over a lengthy background section, present a plausible claim for relief under the legal theories they pursue.

Plaintiffs' opposition is unavailing for the following reasons. *One*, they fail to demonstrate compliance with the notice requirements of D.C. Code § 12–309, reading in an exception to the six-month notice period for police reports that is not supported by the plain text of § 12–309 or

---

[1]    The District Defendants present this reply as if Plaintiffs intended to present the opposition on behalf of both Plaintiffs, Marquez Antonio Jackson and Jewel Parker. The docket entry indicates the response was filed by Jewel Parker, and the heading includes a singular version of "Plaintiff."

applicable case law, and improperly requesting relief through an opposition motion. *Two*, they disregard unequivocal guidance as to the proper plaintiff in wrongful death actions. *Three*, Plaintiffs' negligence, wrongful death, and survivorship claims—asserted separately—are duplicative. As a means to recover damages, predicate causes of action may be brought under the wrongful death and survivorship statute mechanisms for filing suit, but neither the Wrongful Death Act nor Survivor Act provide an independent basis of liability. *Four*, Plaintiffs' negligence claims—presented as ordinary, gross, and as it pertains to hiring, training, supervision, and retention—are broadly asserted against wide groups of Defendants, if not all, but who are alleged to have varying degrees of involvement in the underlying events. The proper party for any negligence claim is the District, not the Individual Defendants in their official and personal capacities. The gross negligence claim fails as a matter of law, and the negligent hiring, training, supervision, and retention claim is not supported by the facts. *Lastly*, Plaintiffs' constitutional claims, pursued under three or four amendments, are woefully packaged. To the extent Plaintiffs may possess *any* viable claim, it sounds in negligence alone. They do not allege facts that even approach the legal standard to sustain any due process or other constitutional violation.

## ARGUMENT

**I.**    **Plaintiffs' Failure to Timely Comply with D.C. Code § 12–309 Necessitates Dismissal of Their Tort Claims Against the District.**

Plaintiffs have failed to comply with the strict timing requirements in D.C. Code § 12–309, and their arguments to the contrary are unavailing. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss Pls.' Compl. [9] (Pls.' Opp'n). Plaintiffs contend the police report is an "exception" to the written notice requirement, Pls.' Opp'n at 18–19, whereas case law identifies it as an alternate form of written notice. *See Stone v. District of Columbia*, 237 F.2d 28, 29 n.4 (D.C. Cir. 1956) (*en banc*). *Accord Pitts v. District of Columbia*, 391 A.2d 803, 810 (D.C. 1978)

(describing the "police report alternative"). *See also Patrick v. District of Columbia*, 126 F.Supp.3d 132, 137 (D.D.C. 2015) (describing "the purpose of the police report alternative") and Pls.' Opp'n at 17 (citing *Miller v. Spencer*, 330 A.2d 250, 252 (D.C. 1974)). Plaintiffs further contend that the only requirements that need to be satisfied for the police report "exception" are "(1) a written report, (2) by the Metropolitan Police Department [that] (3) was prepared in the regular course of duty." *See* Pls.' Opp'n at 19. This theory, taken at face value, would mean that any written report, on any subject, in any case, and at any time prepared in the regular course of duty would be sufficient notice. Plaintiffs are wrong.

Indeed, the District of Columbia Court of Appeals agrees and has applied *at least* the same requirements to the contents of a police report as to those applicable to the written notice. *See Pitts v. District of Columbia*, 391 A.2d 803, 808 (D.C. 1978) (requiring police report to contain information as to time, place, cause, and circumstances of injury or damage to satisfy § 12–309). Under *Enders v. District of Columbia*, 4 A.3d 457, 468 (D.C. 2010), a litigant's timely written notice may be read in conjunction with a police report identified in the letter to provide the requisite content. But when considering the sufficiency of a police report standing alone, "section 12–309 permits notice by police report only when it 'covers all the requisite information, easily found in one place.'" *Patrick*, 126 F.Supp.3d at 137 (quoting *Jenkins v. District of Columbia*, 379 A.2d 1177, 1178 (D.C. 1977)). Even so, Plaintiffs now contend that the sole distinguishing factor between the two forms of notice is the six-month timing requirement, Pls.' Opp'n at 17–25, offering no case law to support this proposition.

The Court of Appeals offers guidance, in that it has routinely described § 12–309 generally in terms of its six-month notice window. *See, e.g.*, *District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995) (discussing § 12–309 as a whole). In *Dunmore*, the Court

described the "six-month clock [that] begins to run from the moment the plaintiff sustains the injury." *Id*. The Court of Appeals has also referred to § 12–309 as an "early warning to District officials" that was "specifically designed to avoid, as applied to the District, the pitfalls of the statute of limitations." *Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C. 1981). And the Court of Appeals has declined to apply the discovery rule to that statutory notice requirement, citing the possibility that such an application would make § 12–309 a nullity and therefore disregard the congressional intent. *See Dunmore*, 662 A.2d at 1360–61. It appears so collectively understood that the six-month requirement applies equally to a police report as to the written notice that no court has considered the question.

Plaintiffs' reliance on *Stone* is misplaced; it supports the conclusion that the six-month period applies to both police reports and written notice. *See* 237 F.2d at 28. *Stone* considers a similarly worded predecessor to the current D.C. Code § 12–309. *See id*. at 29 n.1. There, the court considered the contents of a police report and a notice that "[e]ach occurred within the statutory period." *Id*. at 29. Both contained the same inaccuracy as to the location of the incident. *Id*. The court noted "the purpose of the statutory notice, which is to give the District timely information concerning a claim against it, so it may adequately prepare its defense." *Id*. The court declined to require a stricter standard for a police report than is required of the written notice requirement. *Id*. at 30. But the court did not conclude that the six-month statutory requirement does not also apply to a police report. Similarly, the partial dissent in *District of Columbia v. Bamidele*, 103 A.3d 516 (D.C. 2014), noted that certain Metropolitan Police Department (MPD) reports providing notice were "completed . . . well before the expiration of the six month time frame set forth in § 12–309." *Id.* at 532–33 (Reid, J., *concurring in part and dissenting in part*).

Plaintiffs contend that it would be unfair to hold police reports to the same six-month window required of written notice. Pls.' Opp'n at 22. But Plaintiffs are not reliant on the alternative form of notice—they can provide notice themselves. Plaintiffs then ask that this Court disregard the police report requirement altogether and apply an "actual notice" standard to the contents of the untimely police report. Pls.' Opp'n at 22–24. But the purpose of the report is to provide notice to District officials—the knowledge of a particular District employee is not imparted to the District generally.

Second, Plaintiffs improperly request relief in their opposition—seeking discovery to support their claims. Pls.' Opp'n at 25. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."). And D.C. Code § 12–309 is a "prerequisite to a suit against the District of Columbia 'because it represents a waiver of sovereign immunity.'" *Blocker-Burnette v. District of Columbia*, 730 F.Supp.2d 200, 203 (D.D.C. 2010) (quoting *Faison v. District of Columbia*, 664 F.Supp.2d 59, 68 (D.D.C. 2009)). Plaintiffs have not met this burden through their pleading, which relies on an untimely MPD report to meet this prerequisite. Accordingly, all common law claims against the District are properly dismissed at this stage.

## II.  Plaintiff Jewel Parker Lacks Standing and Is Not a Proper Party to this Suit.

Plaintiffs confuse the party entitled to receive damages following a successful lawsuit from the proper party to bring a claim as plaintiff. At the outset, Plaintiffs acknowledge that "the Survivorship Act allows the *decedent's estate to sue . . . .*" Pls.' Opp'n at 25 (emphasis added). Thus, Plaintiffs do not dispute that Ms. Parker is not a proper party to a Survival Action.

Plaintiffs contend the Wrongful Death Act allows a person as "next of kin" to recover damages and therefore that Ms. Parker should remain a party to the suit (because she alleges she can recover damages). *See* Pls.' Opp'n at 25–26. But Plaintiffs seek relief contrary to the plain

text of the statute, *see* D.C. Code § 16–2702 (describing proper party), and established case law, *see Estate of Manook v. Research Triangle Inst., Int'l & Unity Res. Grp., L.L.C.*, 693 F.Supp.2d 4, 17 (D.D.C. 2010) (citing *Group Health Ass'n. Inc. v. Gatlin,* 463 A.2d 700, 701 (D.C. 1983)) ("The right to bring a wrongful death action is conferred upon only one person, the personal representative, to the exclusion of all others"). *See also Rogers v. Ingersoll–Rand Co.*, 144 F.3d 841, 843 (D.C. Cir. 1998) ("When interpreting the common law of the District of Columbia, we follow the decisions of the District of Columbia Court of Appeals . . . ."). The term "personal representative" is strictly construed under District law "to mean only the decedent's executor or administrator." *Estate of Manook*, 693 F.Supp.2d at 17 (citing *Saunders v. Air Florida, Inc.*, 558 F.Supp. 1233, 1235 (D.D.C. 1983)).

Further guidance for the proper party in a Wrongful Death Act case is found in the Standardized Civil Jury Instructions for the District of Columbia, which describe the difference between the role of the actual plaintiff and the real parties in interest: "the Plaintiff represents certain designated beneficiaries." 1 Civil Jury Instructions for DC § 14.02 (2025). The "real parties" are represented by the plaintiff, who brings the action. Standard Instruction § 14.04 sets forth that the plaintiff seeks compensation for the next of kin, who have legal claims, although the personal representative is the plaintiff. As Plaintiff Parker asserts no factual basis to assert any claims in her own right nor does she contend she is the personal representative of the decedent's estate, she is properly dismissed from the lawsuit.

Finally, the question of whether Ms. Parker would be entitled to damages under the Wrongful Death Act is not one that the Court should decide at the pleadings stage based on limited, unverified allegations. Rather, any damages are distributed in accordance with D.C. Code § 16–2703. Nor, again, is Plaintiffs' request for relief properly the subject of an opposition

to a motion to dismiss. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion.").

**III.    Plaintiffs' Wrongful Death and Survivorship Claims Should Be Dismissed, and the Negligence Claims Are Duplicative and Proper Only Against the District (and Should Be Dismissed). Plaintiffs Do Not Plausibly Allege Negligence Against the Individual Defendants.**

   **A.    Plaintiffs' Wrongful Death and Survivorship Claims (Counts I–II) Should Be Dismissed.**

Plaintiff incorrectly contends that "Plaintiffs' negligence count can survive without the survivorship and wrongful death counts. . . ." Pls.' Opp'n at 29. Plaintiffs bring no claims in their own right; rather, they assert Ms. Parker and Mr. Jackson are entitled to damages under the Wrongful Death Act, and Mr. Jackson brings causes of action on behalf of the deceased's estate and as the estate's personal representative. *See* Pls.' Compl. ¶¶ 14–15 [1-1].

Also, the Survivor and Wrongful Death Acts "do not create substantive rights but rather provide remedies for tortious conduct that results in death." *Wallace v. District of Columbia*, 685 F.Supp.2d 104, 113 (D.D.C. 2010). "Under both statutes, the plaintiff nonetheless needs a viable cause of action at the time of death." *Nelson v. Am. Nat. Red Cross*, 26 F.3d 193, 199 (D.C. Cir. 1994). The Survivor Act, D.C. § Code 12–101, provides that a cause of action that accrues prior to a person's death survives and may be brought by the legal representative of the deceased. *See Henson v. W.H.H. Trice & Co.*, 466 F.Supp.2d 187, 192 (D.D.C. 2006) ("[A]t common law, tort claims do not survive a plaintiff's death; however, the District of Columbia's survival statute permits legal representatives to bring tort claims on behalf of a decedent's estate").

Here, Plaintiffs plead separate claims for wrongful death, *see* Pls.' Compl. ¶¶ 125–33, and survivorship, *id*. ¶¶ 134–43, both of which lack an express reference to an underlying tort claim but that plead breaches of duties, proximate cause, and injury—all elements of common

law negligence. And in their Complaint, Plaintiffs do not allege any intentional tort. Rather, they plead three theories of negligence (ordinary, gross, and negligent supervision, training, hiring, and retention) and constitutional claims. *See generally* Pls.' Compl. As neither Count I (wrongful death) nor Count II (survivorship) are independent causes of action, both are properly dismissed.

Plaintiffs cannot bring any common law cause of action independent of the Survivor Act, as without it, the decedent's cause of action terminated upon his death. In their opposition, Plaintiffs allege their Wrongful Death Act and Survivor Act claims are not solely reliant on their negligence count but instead survive "connected to any count that demonstrates . . . a wrongful act or neglect." Pls.' Opp'n at 29. Therefore, to some extent, Plaintiffs seem to acknowledge that their Wrongful Death and Survivor Act claims to damages must assert claims arising under a predicate theory of liability. Plaintiffs' common law claims, therefore, are better interpreted as three negligence claims seeking damages under the two statutes, which provide for two types of damages:

> At base, a survival action is a negligence action pursued by the estate of the decedent victim—all that need be proven are the ordinary elements of negligence—whereas a wrongful death action is an action pursued by a survivor in his capacity as a victim himself, requiring proof of both the underlying negligence action as well as injury to the survivor.

*Burton v. United States*, 668 F.Supp.2d 86, 97 (D.D.C. 2009). But there is no independent Survivor Act or Wrongful Death Act basis for *liability*, and claims for damages for the decedent's pain and suffering, pre-death, must be asserted through the Survivor Act. *See Buruca v. District of Columbia*, 902 F.Supp.2d 75, 87 (D.D.C. 2012) (dismissing both as neither provide any substantive rights). Accordingly, both claims are properly dismissed.

**B.**      **Plaintiffs' Wrongful Death, Survivorship, and Negligence Claims Against the Individual Defendants Are Properly Asserted Against the District.**

Plaintiffs contend they sued each individual in his or her official and individual capacities—apparently for all claims, though Plaintiffs do not clarify in their opposition or their Complaint. *See* Pls.' Opp'n at 30. They do not provide factual support for their position—they merely allege their claims are cognizable in either capacity. *See id*. and *id*. n.2.

To establish their claims of individual capacity liability, Plaintiffs appear to rely on their contention that every officer on duty was "individually responsible for ensuring that the MPD's general orders, policies, and procedures were followed" and that every officer is "individually responsible for their own conduct." *Id*. But as Defendants cite to in their motion, a suit against an officer in his or her individual capacity for a common law tort cannot be maintained where there is no doubt that an officer's actions were performed within the scope of his authority. Plaintiffs plead no facts to suggest that any officer was acting outside the scope of his authority. And official capacity common law suits are against the individual in name only. If a negligence claim survives dismissal, the proper party to any negligence claim is the District.

**C.**      **Even Isolating the Individual Defendants' Conduct, Plaintiffs Do Not Assert Viable Claims Sounding in Negligence.**

Plaintiffs paint all individual District Defendants with the same broad brush as to their negligence claim. *See* Pls.' Compl. ¶¶ 189–97 (alleging the same duties and failures against all Individual Defendants). As previously argued in Defendants' motion, these conclusory allegations unsupported by a factual basis do not adequately state a claim against the Individual Defendants. Plaintiffs proceed much the same in their opposition to Defendants' motion, contending that every officer had the same duties to follow MPD general orders and conduct physical checks. *See* Pls.' Opp'n at 30. In their Complaint, however, the only factual allegations

asserted regarding physical checks were that Officers Delozier and Jenkins understood their job duties to include physically checking on detainees. *See* Pls.' Compl. ¶¶ 36–37. Plaintiffs also allege that there was "a duty to check at least every half hour under applicable policies," Pls.' Compl. ¶ 8, but do not specify to whom they are referring. Plaintiffs also make no allegations that any other named Defendant was personally responsible for this task.

Similarly, Plaintiffs contend "[e]very single officer failed to follow policy and monitor the CCTV footage for nearly two hours . . . ." Pls.' Opp'n at 32. But in their Complaint, Plaintiffs do not plead that it is MPD policy for each officer to personally monitor CCTV footage or that each officer had a duty to do so or how frequently any person is required to view prisoners via the CCTV monitors. *See generally* Pls.' Compl. Plaintiffs also contend that "[e]very single officer failed to follow policy and ensure that Mr. Parker's person and cell were adequately searched . . . ." Pls.' Opp'n at 32. But in their Complaint, Plaintiffs plead this alleged duty in a conclusory fashion, not particularized to any Defendant. *See* Pls.' Compl. ¶ 191(d). Indeed, Plaintiffs plead that a federal agent and John Doe officers conducted the allegedly deficient searches of Plaintiff. Pls.' Compl. ¶¶ 28, 31, 34, 38–39, 122. Plaintiffs contend that Officer Delozier conducted a pat-down after others had performed searches. *Id*. ¶ 40. Plaintiffs do not plead any facts that could be interpreted as an *opportunity* for any individual District Defendant, other than Officer Delozier, to have conducted a search before Mr. Parker was placed in the cell, let alone any personal obligation for them to have done so. *See generally* Pls.' Compl. Nor do they plead Officer Delozier had an obligation to do so during the "pat down." And Plaintiffs' other failure-to-search allegations have no causal connection to the claimed injuries, such as failure to use the "B.O.S.S. chair and metal detector." *See, e.g.*, Pls.' Compl. ¶¶ 191(d), 194(a). Plaintiffs do not plead that an unfound metal object contributed to Mr. Parker's death.

Plaintiffs' allegations against Detective Lake centers on his alleged mistaken interpretation of Mr. Parker's lying on the floor of his cell. *See* Pls.' Opp'n at 32. But Plaintiffs do not allege that Detective Lake observed Mr. Parker in obvious distress and failed to provide medical attention—just that Detective Lake shook Mr. Parker's foot twice, received no response, *id.*, and "believed Mr. Parker was asleep," Pls.' Compl. ¶ 123(o). Plaintiffs' Complaint provides facts that suggest this interpretation was reasonable, not negligent, given an autopsy report that notes "Mr. Parker would likely have presented as being sleepy." *Id.* ¶ 93.

Plaintiffs' contentions in support of their negligence claims against the four supervisors, Pls.' Opp'n at 30–31, mirror those alleged in support of their negligent supervision allegations, briefed *infra*. For example, Plaintiffs contend "higher-level officers [are] responsible for ensuring their subordinates act appropriately," Pls.' Opp'n at 30, and that "failures travel up the line of command," *id.* at 30–31. These allegations are better understood as pled under the theory of negligent training, supervision, retention, and hiring or as an attempt to improperly plead vicarious liability. In particular, as to Captain Savoy and Sergeant Wong, Plaintiffs assert they were both "responsible individually for ensuring that the policies were followed." *Id.* at 31. They go so far as to contend that this included responsibility to "conduct the checks themselves." *Id.* But factual support for this allegation is not pled; it is alleged only in a conclusory manner. *See* Pls.' Compl. ¶ 191(c) (listing generally duty to "conduct[] adequate and timely inspections of cellblocks and physical checks of prisoners to ensure prisoner safety and well-being"). The allegations against Lieutenant Bridges likewise rely solely on his supervisory role, not on any alleged negligence as it relates to his conduct toward the decedent. *See* Pls.' Opp'n at 31. The limited factual landscape alleged against these three defendants does not support a claim for

negligence. Even as to Sergeant Jackson, Plaintiffs focus on her supervisory capacity, not any direct wrongdoings toward Mr. Parker.

IV.    **Plaintiffs' Remaining Common Law Claims, Consisting of Variations of Negligence, Fare No Better.**

      A.    **Plaintiffs Fail to State a Gross Negligence Claim.**

Plaintiffs confusingly contend that the District's assertion that gross negligence is not a stand-alone claim is a "distinction as to form not function." Pls.' Opp'n at 34. At this stage, the contours of Plaintiffs' Complaint sets the stage for all further proceedings, and thus, dismissal of a *non-existent claim* under these circumstances is proper.

Plaintiffs point to *Atkinson v. District of Columbia*, 281 A.3d 568, 571 (D.C. 2022), and *Tillery v. District of Columbia*, 227 A.3d 147, 151 (D.C. 2020), for the proposition that gross negligence may be asserted as a stand-alone cause of action. And, in the limited circumstances presented in those cases, it is. Both concern motor vehicle collisions involving an emergency vehicle on an emergency run. In the District of Columbia, the District is not liable for ordinary negligence in such cases. D.C. Code § 2–412 ("[I]n the case of a claim arising out of the operation of an emergency vehicle on an emergency run the District shall be liable only for gross negligence"). Plaintiffs irrelevantly cite *Atkinson* for the proposition of how gross negligence may be proven under D.C. Code § 2–412, but the case offers no guidance to the Court here. The holdings in *Atkinson* and *Tillery* are simply inapplicable to Plaintiffs' allegations as they concern claims brought under D.C. Code § 2–412. The Court should not permit Plaintiffs to extrapolate from that statutory provision to create new degrees of negligence that do not exist under common law. Given that Plaintiffs' claims are duplicative, that no statutory law allows this Court to consider Plaintiffs' claim, and that there is no basis for a claim of gross negligence under common law, this claim is properly dismissed.

12

**B.** **No Factual Basis to Support Negligent Hiring, Training, Supervision, and Retention Claims.**

Plaintiffs' claims against individual supervisors Defendant Sergeant Jackson, Defendant Captain Savoy, and Defendant Sergeant Wong[2] should not survive, because they are not employers of any employees. And Plaintiffs' claims against the District do not survive as they are properly dismissed under D.C. Code § 12–309, because the claim is not well-pled, and because no underlying tortious act can be proven.

Supervisor is not synonymous with employer. Plaintiffs set forth no factual allegations in their Complaint to support the contention that any of these supervisors are "employers" or that the individuals they supervised constituted their own "employees" under common law. *See* Pls.' Opp'n at 38 (referring to "their employees"). Instead, they sidestep the question—other than also referring to the District's employees. *See id.* (discussing "the District through its employees"). But the employer and employee elements are necessary under common law. *See* Defs.' Mot. to Dismiss Pls.' Compl. at 25 (discussing elements of common law claims for negligent hiring, training, supervision and retention) (Defs.' MTD). *See also* Pls.' Opp'n at 35 (discussing elements for negligent training or supervision).

Plaintiffs cite to *Moore*, which is not binding on this court, and *Johnson*, an unpublished opinion that is also merely persuasive authority, as examples where similar claims were raised against individual supervisors. Neither case confronted the question of whether a supervisor may be considered their supervisee's employer. The order cited in *Johnson* is an order on the District's motion to dismiss, not an adjudication on the merits. *Johnson v. District of Columbia*, No. 22-cv-3167 (JEB), 2023 WL 2770392, at *8 (D.D.C. Apr. 4, 2023). And although

---

[2]    Despite Plaintiffs' lengthy discussion of his conduct, Lieutenant Bridges is not named in this claim.

Defendants do not concede that *Johnson* was correctly decided, there the supervisor named individually was the Chief of Police for the Metropolitan Police Department, not a lower-level District employee. And *Moore* was similarly not an adjudication on the merits; the case later settled. *See* Consent Mot. to Dismiss Claims With Prejudice [36], *Moore, et al. v. District of Columbia, et al.*, No. 12-cv-00490 (BAH) (June 8, 2015).

Further, Plaintiffs point to the "strict hierarchical structure of a police department" and the "extensive authority and command such individuals hold over those lower in the ranks," as support for why supervisory individuals should be held liable under this common law claim, Pls.' Opp'n at 36, but they failed to plead either in their Complaint. Even if they did, Plaintiffs still cannot overcome the fact that supervisors are not "employers."

Plaintiffs' allegations of new facts in their opposition that they do not plead in their Complaint should be disregarded. In their opposition, they allege that Defendants Lieutenant Bridges, Captain Savoy, and Sergeant Wong would have been "well aware that [Sergeant Jackson] had never worked in a station or cellblock during her previous years . . . ." Pls.' Opp'n at 37. *See also id.* at 36 (contending these three defendants knew Sergeant Jackson had never been given any applicable training). But the Complaint does not allege these individuals possessed actual knowledge of a deficiency in Sergeant Jackson's training. Instead, Plaintiffs plead that Sergeant Jackson lacked specific training: that she "had never worked in a station or cellblock in her previous years with the department and she had never received any specific training in either of those areas." Pls.' Compl. ¶ 97. It is not a reasonable inference to draw from Plaintiffs' Complaint that every supervisor at MPD knows the background, training, and work history of every individual MPD employs. Nor can Sergeant Jackson's alleged deficient conduct

14

on the day of incident, *see* Pls.' Opp'n at 37, substitute for her employer's requisite prior knowledge that she has behaved incompetently, as is required to sustain a claim under this tort.

Plaintiffs also assume that Defendants Lieutenant Bridges, Captain Savoy, Sergeant Wong, and Sergeant Jackson were responsible to ensure Sergeant Jackson was "properly" trained. *See* Pls.' Opp'n at 37. But even the District is immune to suits as to the establishment of policy, yet here Plaintiffs appear to contend that lower-level supervisors can somehow be held liable for the discretionary function of establishing policy, not just conducting or training on it. Under sovereign immunity, the District "is immune from suit in tort if the act complained of was committed in the exercise of a discretionary function." *District of Columbia v. Pace*, 498 A.2d 226, 228 (D.C. 1985) (citing *Wade v. District of Columbia*, 310 A.2d 857, 860 (D.C. 1985) (*en banc*)). "[D]iscretionary acts involve the formulation of policy, while ministerial acts involve the execution of policy." *Nealon v. District of Columbia*, 669 A.2d 685, 690 (D.C. 1995) (citation omitted). Personal deliberation, decision, and judgment make up discretionary acts while ministerial acts involve little or no judgment; "mere obedience to orders or performance of a duty in which the municipal employee has little or no choice." *Id.* (quotations, citations, and brackets omitted). A decision as to the extent of training with which to provide employees is discretionary. *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) (holding that "decisions concerning the hiring, training, and supervising of . . . employees are discretionary in nature . . . .").

Plaintiffs contend that *Tulin* sets forth the proposition that the "the requisite knowledge standard can be met through a failure to inquire." Pls.' Opp'n at 38 (missing pin cite) (apparently referring to the requirement that an employer "knew or should have known its employee behaved in a dangerous or otherwise incompetent manner"). In *Tulin*, the Court of Appeals considered

whether a new trial was warranted for the District under a theory of negligent supervision of the arresting officer. *District of Columbia v. Tulin*, 994 A.2d 788, 794 (D.C. 2010). The jury was instructed that, to establish a cause of action for negligent supervision, the plaintiff must show the employer's knowledge, actual or constructive, of its employee's dangerous behavior and the employer's failure to adequately supervise the employee. *Id*. *Tulin* also discussed the negligent supervision definition in the RESTATEMENT (SECOND) OF AGENCY § 213. *Id*. at 795. But *Tulin*, does not stand for the proposition that employees may be held liable as "employers" under a theory of negligent supervision. And the inquiry lacking in *Tulin* involved the supervisors' alleged failure to ask about the circumstances of a collision to the arresting officer (who herself did not witness the collision) before permitting that officer to make an arrest for reckless driving. *Id.* at 796. The claim for negligent supervision was brought and upheld against the District, *not* against the supervisors who allegedly were deficient in their supervision.

Plaintiffs continue to stretch the facts of the Complaint, now asserting that Sergeant Jackson "failed to inquire as to whether her subordinates were properly following policies . . . ." Pls.' Opp'n at 38 (omitting citation to record). "Inquire" and "inquiry" do not appear in their Complaint. *See generally* Pls.' Compl. And the Complaint is not based on this supposed "inquiry" basis; rather, Plaintiffs rely on conclusory allegations regarding "pattern or practice" of tortious conduct, Pls.' Compl. ¶ 222; "previously committed violations," *id*. ¶¶ 213, 216; "lack of training," *id*. ¶ 217; and an allegation that "Defendants knew or should have known that its supervision and training was inadequate," *id.* ¶ 221. Plaintiffs allege no obvious incompetence that Sergeant Jackson confronted and failed to address; rather, Plaintiffs essentially contend that Sergeant Jackson did not micromanage her subordinates, through inquiries as to the specific tasks they undertook, over the course of a few hours. Pls.' Opp'n at 38. Plaintiffs allege these

subordinates ate at their desks, Pls.' Opp'n at 38 (citing Pls.' Compl. ¶ 62), and that this,

somehow, imparts knowledge onto Sergeant Jackson, that they were *incompetent* and she should

have immediately—apparently—trained these individuals. The failure to inquire in *Tulin* as to

the specific basis for an arrest before approving it is a far cry from the types of inquiries

Plaintiffs allege Sergeant Jackson was required to make here. *See* Pls.' Opp'n at 38 ("Defendant

Sergeant Jackson failed to inquire as to whether her subordinates were properly following

policies . . . .").

      Caselaw has historically limited the application of this tort to employers and only in

limited circumstances. *See Curry v. Giant Food Co. of the District of Columbia*, 522 A.2d 1283,

1289–90 (D.C. 1987) (discussing

> cases where the offending employees have clearly acted beyond the
> scope of their authority, *e.g.,* an armed gardener shooting and
> wounding a trespasser, or watchmen stealing merchandise from the
> storeroom of their employer's client, it is of course proper to show
> in actions where recovery is sought against the employers of the
> tortfeasors, that when such employers failed to give precautionary
> instructions or were lax in supervision, they should not be allowed
> to escape responsibility for the acts of their servants.

(citations omitted)). The D.C. Circuit has reasoned that "[i]n order to prevail on a negligent

retention claim, plaintiffs must first prove that [the officer] was negligent and must then prove

the additional element of negligent retention." *Rogala v. District of Columbia*, 161 F.3d 44, 56

n.9 (D.C. Cir. 1998). The D.C. Circuit raised "serious reservations" about the district court's

denial of a motion to dismiss a negligent hiring claim where the employer admitted agency.

*Burkhart*, 112 F.3d at 1216 (citing *Hackett v. WMATA*, 736 F.Supp. 8 (D.D.C. 1990)).

      *Wesby* similarly concerned a tort claim for damages against the District based on

negligent supervision that required underlying tortious conduct. *Wesby v. District of Columbia*,

393 F.Supp.3d 34, 39 (D.D.C. 2019).[3] There, the Court distinguished *Tulin*, which "involved a motorist's unlawful arrest by an officer who, the jury had found, believed in good faith that her conduct was lawful," even though false arrest was later found. *Wesby*, 393 F.Supp.3d at 40 n.5.

Plaintiffs do not meaningfully address Defendants' argument that this claim is not well-pled and rife with conclusions; the entirety of Plaintiffs' Opposition in support of this claim contains only one citation to their Complaint. *See* Pls.' Opp'n at 38. And many of those conclusions are ignored by Plaintiffs altogether. In particular, as to their negligent retention or hiring claims, Plaintiffs assert no arguments to support these claims against any defendant. *See* Pls.' Opp'n at 34–39. Instead, Plaintiffs set forth, in a footnote, an explanation of their insufficient allegations on the grounds that they were unable to obtain documentation pre-suit. In so doing, they concede the deficits of their pleading on this count. *See Patrick*, 179 F.Supp.3d at 89 (citing *Haight v. O'Bannon*, 102 F.Supp.3d 179, 182 (D.D.C. 2015)) ("[B]y arguing that he requires discovery at the motion-to-dismiss stage, [the plaintiff] essentially concedes that his allegations against the District are based on speculation"). Plaintiffs' negligent retention and hiring claims are based on speculation, not well pled, and should be dismissed.

These claims are properly dismissed against all named Defendants to the claim.

**V.     Plaintiffs Do Not Counter Defendants' Arguments to Dismiss § 1983 Claims.**

In attempting to clarify their constitutional claims, Plaintiffs render them even murkier and do not rebut the District's arguments for dismissal, such as that Plaintiffs have not alleged misconduct that surpasses a threshold of negligence. *See* Defs.' MTD at 27 (citing § 1983 cases

---

[3]     *Adhered to on denial of reconsideration*, 502 F. Supp. 3d 136 (D.D.C. 2020), *aff'd sub nom. Theodore Wesby, et al., Appellants Antoinette Colbert, As Personal Representative of the Estate of Ethelbert D. Louis, Appellee v. District of Columbia, et al., Appellees*, 20-7117, 2021 WL 5262578 (D.C. Cir. Nov. 9, 2021).

explaining liability requires deliberate indifference of government actor). Plaintiffs clarify that they allege three claims under the Fourteenth, Fourth, and Eighth Amendments, *see* Pls.' Opp'n at 39—and acknowledge the Fourteenth Amendment claim is properly presented against the District Defendants under the Fifth, *see id.* at 42. Besides to offer their claims arise within a "jail conditions" context, *see id.* at 40, Plaintiffs do not explain how they present a claim under any of the three constitutional provisions. The Fourth and Eighth Amendments are not applicable, *see* Defs.' MTD at 29–30, and Plaintiffs fail to sufficiently counter the District's due process arguments, *see id.* at 26–29.

### A.    Plaintiffs' Fifth or Eighth Amendment Claims

Plaintiffs first argue the constitutional claims "generally arise from Defendants' failure to provide medical care and failure to protect a detainee in their care." Pls.' Opp'n at 40. Restating ¶ 170 of their Complaint, they say Defendants failed to properly seize any contraband on Mr. Parker's person, failed to identify him as a high-risk prisoner, failed to respond when Mr. Parker covered the CCTV in the cell, failed to conduct the requisite physical checks of detainees, and Det. Lake failed to properly respond to finding Mr. Parker unconscious. *See id.* However, they do not sufficiently connect these allegations to the governing standard of law. Instead, they seek to avert dismissal by stating they have factually stated *some* § 1983 claim, and it would be premature for the Court to dismiss any claims before discovery. *See id.* at 42–43.

Plaintiffs cite a number of cases that are distinct from the facts they have alleged. For *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239 (1983), they ignore the detainee there was injured while being apprehended by police. *Id.* at 244. As included in the language Plaintiffs quote in their brief, *see* Pls.' Opp'n at 40, *Revere* speaks to the "*injured* detainee's" right to medical treatment, which is distinguishable from the present matter, where Plaintiffs allege Mr.

Parker injured himself after he was detained, *see generally* Pls.' Compl. The U.S. Supreme Court expressly passed on defining any "due process obligation to pretrial detainees or to other persons in [the municipality's] care who require medical attention." *Revere*, 463 U.S. at 244.

Similarly, *Hardy v. District of Columbia*, 601 F.Supp.2d 182 (D.D.C. 2009), a prisoner assault case, reiterates a two-part standard on a failure-to-protect claim that Plaintiffs cannot meet even under the Fifth Amendment[4] and within the context of these facts. "For a prisoner to succeed on a failure-to-protect claim, he must show (1) 'that he is incarcerated under conditions posing a substantial risk of serious harm' and (2) that a prison official acted with 'deliberate indifference' to protect the prisoner from that harm." *Hardy*, 601 F.Supp.2d at 189 (quoting *Farmer v. Brennan*, 511 U.S. 825, 934 (1994)). Contrary to *Hardy*, where Plaintiffs alleged ample facts pertaining to inadequate security, overcrowding, abandoned security posts, and violence by other inmates, to include a similar scalding attack by one of the same assailants, that preceded the events at issue, Plaintiffs present no facts that give rise to an inference of conditions posing a substantial risk of serious harm, nor Defendants' subjective knowledge of any risk that was disregarded. *See Hardy*, 601 F.Supp.2d at 189 (requiring the government actor to be aware of facts from which a substantial risk of serious harm could be inferred, plus drawing that inference). Plaintiffs do not allege any of the Defendants were aware of a substantial risk of serious harm, requiring any Fifth Amendment claim for failure to protect be dismissed.

Plaintiffs then cite a collection of cases purporting to support their constitutional claims as able to withstand Defendants' motion because Plaintiffs allege "objectively unreasonable" detention conditions. *See* Pls.' Opp'n at 40–41. *Banks v. Booth*, 468 F.Supp.3d 101 (D.D.C.

---

[4]     Plaintiffs' Eighth Amendment claims were dismissed because it "did not protect [them] as pretrial detainees." *Hardy v. District of Columbia*, 601 F.Supp.2d 182, 192 (D.D.C. 2009).

2020), before the Court on a request for injunctive relief, grants Plaintiffs relief only after a "showing that the Defendants knew or should have known that the jail conditions posed an excessive risk to their health and intentionally or recklessly failed to act." *Id.* at 111. *Banks* involved jail conditions during the global COVID-19 pandemic, *see id.* at 113 (acknowledging "unprecedented challenge" of COVID-19 and continuing "[t]here does not appear to be any dispute that Defendants are aware of the threat that COVID-19 poses to the health of Plaintiffs"), whereas the conditions of Mr. Parker's confinement were self-created, not publicly known, and temporally limited, *see, e.g.*, Pls.' Compl. ¶ 123 (setting forth timeline of relevant events, starting with Mr. Parker's arrival and culminating hours later). It is unclear how Plaintiffs seek to meet even the two-part *Banks* due process standard, as they do not argue it.

### B.    Plaintiffs' Fourth or Fifth Amendment Claims

Plaintiffs then devote considerable discussion theorizing as to whether Plaintiffs' claims arise under the Fourth, Fifth, or Fourteenth Amendments, *see* Pls.' Opp'n at 41–42, leaving out any analysis of why they believe they allege facts to satisfy either means to recover. Plaintiffs' reference to *Graham v. Connor*, *see id.* at 41, is inapposite: *Graham* centered on the question of the proper standard to analyze an alleged use of excessive force, an allegation absent in this case. *Graham*, 490 U.S. 386, 388 (1989). *Lombardo* similarly involved an allegation of excessive force. *See Lombardo v. City of St. Louis, Missouri*, 594 U.S. 464, 466 n.2 (2021) ("We need not address whether the Fourth or Fourteenth Amendment provides the proper basis for a claim of excessive force against a pretrial detainee in Gilbert's position"). *Jalloh* contained an allegation of excessive force during an arrest and a claim that the defendants failed to provide him medical assistance during the use of force. *See Jalloh v. Underwood*, 464 F.Supp.3d 125, 127–28 (D.D.C. 2020). The Court identified, and eventually passed on, the "unsettled" question of whether the

Fourth Amendment, which governs excessive force claims, *could* also govern an arrestee's claim that authorities failed to provide medical assistance under the Fourth Amendment. *See id.* at 130. Yet Plaintiffs contend, absent more, that this Court should nonetheless permit their Fourth Amendment claim to proceed as is. Pls.' Opp'n at 41.

Regardless of how Plaintiffs' claim is best presented, they fail to counter the District's arguments for dismissal nor argue their hand-picked standard. In substantively opposing the District's motion on this point, Plaintiffs merely offer they "need only plead that Mr. Parker was subjected to objectively unreasonable prison conditions," *see* Pls.' Opp'n at 43, but they do not explain how Mr. Parker's conditions were objectively unreasonable. They allege he was placed in a cell by himself with the handcuffs and shackles removed, *see* Pls.' Compl. ¶ 40; allowed to make a phone call to his partner, *see id.* ¶ 44; allowed to use the restroom, *see id.* ¶ 58; and monitored by in-person checks and through CCTV, which he at one point obscured and was promptly directed to correct, *see id.* ¶¶ 57–59. Plaintiffs do not allege Mr. Parker was subjected to physical harm by any officer(s) or peer detainees, as in *Hardy*, nor that he was exposed to an exceptionally high risk of illness amid a pandemic, as in *Banks*. Plaintiffs make no argument as to how Defendants knew or should have known the jail conditions—whatever they were—posed an excessive risk to Mr. Parker's health, nor how Defendants intentionally or recklessly failed to act thereon. In fact, Plaintiffs have not identified *any* issue with jail conditions to avert dismissal. Their claim is predicated on Defendants' purported failure to stop Mr. Parker from harming his own self with drugs that he transported into the station on his own person.

Acknowledging Plaintiffs' claims need not necessarily be textbook precise to withstand a Rule 12(b)(6) motion to dismiss, *see, e.g.*, Pls.' Opp'n at 42 n.5 (admitting Eighth Amendment claim presented as "belt-and-suspenders count to protect Plaintiffs' interests in the event of a

change in the law"), Plaintiffs must present factual allegations, not legal conclusions, sufficient to state a claim for relief that is plausible on its face. They have failed to do so.

**B.**    **Plaintiffs' § 1983 Claims of Supervisory Liability**

Plaintiffs contend that supervisory liability may lie under § 1983, without reference to what constitutional amendment Plaintiffs rely on or through reference to facts or claims pled in their Complaint. *See* Pls.' Opp'n at 43–45. Nonetheless, Plaintiffs agree that the "duty to supervise" in a constitutional sense, requires not merely *foreseeable* harm, but *highly likely* harm given the circumstances of the case. *Id.* at 44 (quoting *Shaw v. District of Columbia*, 944 F.Supp.2d. 43, 60–61 (D.D.C. 2013)). Plaintiffs make no attempt to contend that any individual supervisor's failure to supervise his or her subordinates in a particular way made it *highly likely* that a constitutional harm would result, nor that they pled facts in support of this type of claim. *See* Pls.' Opp'n at 44. Merely being an alleged wrongdoer's supervisor is not enough. *Shaw*, 944 F.Supp.2d at 62. Rather than plead that Sergeant Jackson, Captain Savoy, Sergeant Wong, and Lieutenant Bridges approved, condoned, or even turned a blind eye to particular conduct, Plaintiffs contend that Sergeant Jackson failed to actively ensure other officers followed all policies and procedures. In their Complaint, Plaintiffs allege that Lieutenant Bridges merely assigned Sergeant Jackson to the position that day. Pls.' Compl. ¶ 112.

Plaintiffs discuss a theory of "deliberate indifference" as a basis for liability based on an alleged failure to train. Pls.' Opp'n at 44-45 (citing *Hardy*, 601 F.Supp.2d at 190). Plaintiffs also cite *Jones v. Ritter*, which concerned an allegation of municipal liability under § 1983 based on a failure to train. 587 F.Supp.2d 152, 157 (D.D.C. 2008). But Plaintiffs' pleading is deficient to support a deliberate indifference theory of liability for the individual supervisory defendants under § 1983 for reasons similar to those found in the discussion of common law negligent

training. "[D]eliberate indifference requires the official to have subjective knowledge of the substantial risk of harm, [so] the D.C. Circuit has held that supervisory liability cannot be applied absent any allegation that the supervisors in question had actual or constructive knowledge of past transgressions or that the supervisors were responsible for or aware of clearly deficient training." *Hardy*, 601 F.Supp.2d at 191 (citations and internal quotation marks omitted). Plaintiffs make no allegations of Sergeant Jackson, Captain Savoy, Sergeant Wong, and Lieutenant Bridges' knowledge of any past transgressions of those they supervised or that they knew of any deficient training. And the only contention that Plaintiffs make regarding Lieutenant Bridges' actions relates to his assignment of her to a position despite Sergeant Jackson's alleged lack of training. But, as discussed above, Plaintiffs do not plead that Lieutenant Bridges knew she lacked the allegedly requisite training; they simply allege that she lacked it in their Complaint, by contrast to the arguments made in their opposition. For these reasons, Plaintiffs' unpled theory of "deliberate indifference" cannot avoid dismissal of the § 1983 claims against these supervisors.

**D.     Plaintiffs Agree, No Claim for Municipal Liability is Presented and Thus Official Capacity § 1983 Claims Are Properly Dismissed.**

Plaintiffs agree that they do not assert a *Monell* claim for liability against the District. Pls.' Opp'n at 45. Therefore, no § 1983 claim should remain against any Individual Defendant in their official capacity. Plaintiffs contend that they have brought claims against all Individual Defendants in both their official and individual capacities. *See* Pls.' Opp'n at 30 and *id.* n.2. But "for constitutional claims, 'a section 1983 suit for damages against municipal officials in their official capacities is . . . equivalent to a suit against the municipality itself.'" *Gebretsadike v. District of Columbia*, No. 23-cv-03198 (RCL), 2024 WL 3291744, at *5 (D.D.C. July 3, 2024) (quoting *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996)). Thus, as

Plaintiffs concede they do not assert a § 1983 claim against the District, all official capacity § 1983 claims against the Individual Defendants are properly dismissed.

## CONCLUSION

For the foregoing reasons and the reasons identified in the District Defendants' motion to dismiss, the Court should grant the motion and dismiss Plaintiffs' Complaint.

Date: May 9, 2025                               Respectfully submitted,

                                                BRIAN L. SCHWALB
                                                Attorney General for the District of Columbia

                                                CHAD COPELAND
                                                Deputy Attorney General
                                                Civil Litigation Division

                                                */s/ Fernando Amarillas*
                                                FERNANDO AMARILLAS [974858]
                                                Assistant Deputy Attorney General
                                                Civil Litigation Division

                                                */s/ Jessica Krupke*
                                                JESSICA KRUPKE [1019967]
                                                PATRICK DUPREY [90030521]
                                                Assistant Attorneys General
                                                Civil Litigation Division, Section I
                                                400 6th Street, NW
                                                Washington, D.C. 20001
                                                (202) 805-7562
                                                (202) 957-2861
                                                jessica.krupke@dc.gov
                                                patrick.duprey@dc.gov

                                                ***Counsel for Defendants District of Columbia, Det. Oliver C. Lake, Officer Alicia Jenkins, Officer Lavida DeLozier, Sgt. Denise Jackson, Capt. Tatjana Savoy, Sgt. Elizabeth Wong, and Lt. Ronald Bridges***